# EXHIBIT 1

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

| | |
|---|---|
| JESSICA GOBER,<br>　　　　　　Appellant, | DOCKET NUMBER<br>DA-0752-25-0740-I-1 |
| v. | |
| DEPARTMENT OF COMMERCE,<br>　　　　　Agency. | DATE: March 10, 2025 |

---

**THIS DOCUMENT CONTAINS IMPORTANT INFORMATION ABOUT THIS APPEAL AND ITS PROCESSING.  PLEASE READ THE ENTIRE DOCUMENT CAREFULLY.**

---

### ACKNOWLEDGMENT ORDER

This office has received the appellant's appeal.  I am the administrative judge assigned to this appeal.  I **ORDER** the parties to follow the procedures set out in the separate notices below.  If any party fails to follow my orders or the Board's regulations, I may impose sanctions pursuant to 5 C.F.R. § 1201.43.

### NOTICE TO THE APPELLANT

#### JURISDICTION

The Board may not have jurisdiction over the action being appealed. Jurisdiction is the authority of the Board to make decisions about legal matters. The Board does not have jurisdiction over all matters that are alleged to be unfair or incorrect. *See also Miller v. Department of Homeland Security*, 111 M.S.P.R. 325, 332-33 (2009).  This order explains the burdens that an appellant must show to establish Board jurisdiction over an appeal such as this one.  The Board must dismiss the appeal if it does not have jurisdiction over the action being appealed. **The parties must follow the deadlines set forth in this Order below.**

By law, "adverse actions" are subject to Board review.  5 U.S.C. § 7512. "Adverse actions" are defined under 5 U.S.C. chapter 75 to include a removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay, and a furlough of less than 30 days.  *Id.*  Only an "employee" as defined by 5 U.S.C. § 7511(a)(1) can appeal an adverse action to the Board.  *See Bryant v. Department of the Army*, 2022 MSPB 1, ¶ 8.

The appellant has the burden of proving by preponderant evidence[1] that the Board has jurisdiction over their appeal.  5 C.F.R. § 1201.56(b)(2)(i)(A).  For an appellant to have a right to a hearing, they must first make nonfrivolous allegations that, if proven, would establish Board jurisdiction.  *See Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1344 (Fed. Cir. 2006).  If these requirements are met and the appellant timely requested a hearing, I will schedule a hearing.  If a hearing was not requested, the appellant has 10 calendar days from the date of this Order to file a written request for one.  If a hearing is not timely requested, the appellant waives their right to one.  In that event, the appellant and the agency will be given an opportunity to make written submissions before the record on the appeal closes.

An individual's right to appeal an adverse action to the Board is evaluated based on the applicable statutes and regulations and differs depending on the appointment type (competitive service or excepted service) from which the individual was terminated.

## Competitive Service Appointments

### *Statutory Bases for Jurisdiction*

There are two ways for an individual in the competitive service to show that they are an "employee" with a statutory right to appeal an adverse action to the

---

[1] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

Board. *McCormick v. Department of the Air Force*, 307 F.3d 1339, 1341-42 (Fed. Cir. 2002).

First, an "employee" includes an individual "who is not serving a probationary or trial period under an initial appointment." 5 U.S.C. § 7511(a)(1)(A)(i). An appellant who has not served the entire probationary period in their current appointment may nonetheless establish that they have completed the required probationary period and so is no longer a probationer, by "tacking" on prior civilian Federal service to the current appointment. An appellant may tack prior service when: (1) the prior service was rendered immediately preceding the probationary appointment; (2) it was performed in the same agency; (3) it was performed in the same line of work[2] (determined by the employee's actual duties and responsibilities); and (4) it was completed with no more than one break in service that does not exceed 30 days. *Ellefson v. Department of the Army*, 98 M.S.P.R. 191, ¶ 16 (2005); 5 C.F.R. § 315.802(b).

Second, an "employee" includes someone "who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less." 5 U.S.C. § 7511(a)(1)(A)(ii). "Current continuous" employment is defined as a "period of employment or service immediately preceding an adverse action without a break in Federal civilian employment of a workday." 5 C.F.R. § 752.402. For individuals in the competitive service, such service need not be in the same agency or in the same or similar positions to qualify.[3] *See Ellefson*, 98 M.S.P.R. 191, ¶ 14.

---

[2] "Same line of work" is akin to "similar positions." *See Mathis v. U.S. Postal Service*, 865 F.2d 232, 234 (Fed. Cir. 1988). "Similar positions" means positions in which the duties performed are similar in nature and character and require substantially the same or similar qualifications, so that the incumbent could be interchanged between the positions without significant training or undue interruption to the work. 5 C.F.R. § 752.402. To meet the "similar positions" test, the person must "occupy positions that involve related or comparable work that requires the same or similar skills." *Mathis*, 865 F.2d at 234. The Board has held that two positions are similar "if experience in a position demonstrates the knowledge, skills, and abilities required to perform the work of the other job." *Shobe v. U.S. Postal Service*, 5 M.S.P.R. 466, 471 (1981).

### *Regulatory Bases for Jurisdiction*

An individual in the competitive service who does not qualify as an "employee" with statutory Board adverse action appeal rights may have a

The regulatory right to appeal based on pre-appointment conduct or partisan political reasons or marital status does **not** apply to excepted service positions, *see Barrand v. Department of Veterans Affairs*, 112 M.S.P.R. 210, ¶ 13 (2009), **unless** the individual was terminated within one year after an appointment made under the Veterans Readjustment Act (VRA), *see* 38 U.S.C. § 4214(b)(1)(E); *Ellis v. Department of the Treasury*, 81 M.S.P.R. 6, ¶ 5 (1999); 5 C.F.R. § 307.104.

## Other Sources of Board Jurisdiction

### Veterans Employment Opportunities Act of 1998 (VEOA)

Individuals with veterans' preference, who assert that an agency has violated their rights under any statute or regulation relating to veterans' preference, have a right to file a complaint with the Secretary of Labor. If the Secretary is unable to resolve the individual's complaint within 60 days, they may file an appeal of the alleged violation with the Board. *See* 5 U.S.C. § 3330a(d). Exhaustion of the DOL complaint process is **required** to establish Board jurisdiction over an appeal brought under VEOA. *See Abrahamsen v. Department of Veterans Affairs*, 94 M.S.P.R. 377, 379 (2003), *citing Campion v. Merit Systems Protection Board*, 326 F.3d 1210, 1213, 1215 (Fed. Cir. 2003).

### Uniformed Service Employment and Reemployment Rights Act (USERRA)

Individuals who have performed duty or had an obligation to perform duty in a uniformed service of the United States may have the right to appeal to the Board based on a claim that the agency denied them initial employment, reemployment, retention, promotion, or any benefit of employment and that the denial was due to the performance of duty or obligation to perform duty in the uniformed service. *Swidecki v. Department of Commerce,* 113 M.S.P.R. 168 (2010).

---

[8] An independent establishment means: "(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and (2) the Government Accountability Office." 5 U.S.C. § 104.

### *Individual Right of Action (IRA) Appeal*

An individual who believes an agency has taken a personnel action in reprisal for activity protected by 5 U.S.C. § 2302(b)(8) or (b)(9) (whistleblowing) may have a right to appeal to the Board. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371-72 (Fed. Cir. 2001); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, 304 (2002). If the action is not otherwise directly appealable to the Board, *see* 5 C.F.R. § 1201.3(a), an individual must first establish that they exhausted their administrative remedies before the Office of Special Counsel (OSC) by proving that they filed a reprisal complaint with OSC and then waited until 120 days passed, or that they filed a reprisal complaint with OSC, and OSC notified the appellant that it was terminating its investigation. 5 U.S.C. § 1214(a) (3).

### **Deadlines**

I **ORDER** the appellant to file, within **10 calendar days** of the date of this Order, evidence or argument to establish why this appeal should not be dismissed for lack of a nonfrivolous allegation of jurisdiction. If the appellant does so, they will be given the opportunity to prove by preponderant evidence that the Board has jurisdiction over the appeal. The appellant should include in their response information about their prior civilian service, if any, with the Federal government (i.e., what positions were held; when they were held; and how did each position end); the appointment types of the prior and current positions (i.e., competitive or excepted service; temporary, term, or permanent); and whether they were serving a probationary or trial period and, if so, their bases for appealing this action to the Board.

**The agency must file a response on the issue of jurisdiction within 20 calendar days of the date of this Order.** This is the final date for the receipt of submissions by the parties. No evidence or argument received after that date will be accepted on the issue of jurisdiction unless accompanied by information

showing that it is new and material evidence which was not available before the record closed. Notwithstanding the close of the record, however, pursuant to 5 C.F.R. § 1201.59(c), a party must be allowed to respond to new evidence or argument submitted by the other party just before the close of the record.

## DESIGNATION OF REPRESENTATIVE

The appellant may name a representative. If the appellant already has a representative, they must complete a "Designation of Representative" form and file it with the Board and with the agency within 10 calendar days of the date of this Order unless they have included their representative's name, address, telephone number, and email address in their appeal. If a representative has filed the appeal for the appellant and the appellant has not personally signed the appeal or submitted a signed "Designation of Representative" form, the appellant also must file a signed form with the Board and with the agency within 10 calendar days of the date of this Order. If the appellant names a representative after receiving this Order, the appellant must complete a "Designation of Representative" form and file it with the Board and the agency **immediately** after obtaining the representative. The "Designation of Representative" form is available on the Board's website at https://www.mspb.gov/appeals/forms.htm. If registered as an e-filer (see information below), the appellant can use e-Appeal to file a "Designation of Representative" or to notify the Board of a change in contact information. A "Designation of Representative" form is included with this Order.

Appellants representing themselves do not need to submit a designation of representative. The choice of representative must not result in a conflict of interest for the organization or person chosen. Each party must make all arrangements for representation. **The Board does not designate a representative for any party to this appeal**. Despite the designation of representative, the parties remain personally responsible for prosecuting the case in a timely manner. The appellant must **immediately** notify the Board and the agency in writing of changes in the

name, address, telephone number, or email address of their designated representative.

## GENERAL INSTRUCTIONS

**MANDATORY ELECTRONIC FILING FOR AGENCIES AND ATTORNEYS**

The Board requires all pleadings filed by agencies and attorneys who represent appellants in Board proceedings to be electronically filed (e-filed) using the Board's e-Appeal system at https://e-appeal.mspb.gov/. This requirement applies to all pleadings in all adjudicatory proceedings before the Board unless specifically excluded by 5 C.F.R. § 1201.14(d). **Agencies and attorneys representing appellants in Board proceedings must register with e-Appeal as e-filers.** For additional instructions on e-filing, read the section below of this Acknowledgment Order titled "Pleadings Submitted via e-Appeal," and the Board's regulations at 5 C.F.R. § 1201.14.

## DISCOVERY

Discovery is the procedure a party may use to learn of any facts, documents, or other evidence that the other party has that may be helpful to their case. Because discovery on the issue of jurisdiction is likely not necessary in this type of appeal, all discovery deadlines are **STAYED** pending further order from the Board. If the appellant makes a nonfrivolous allegation of Board jurisdiction over this appeal, I will issue an order setting deadlines related to discovery. If a party desires to engage in discovery on the issue of jurisdiction, they must first file a request with me within 20 days of the date of this Order.

## RESPONSE TO MOTIONS

The appellant may file a response or objection to any motion filed by the agency. Unless otherwise specified by me or the Board's regulations, a response or objection must be filed with this office and served upon the agency within 10 calendar days of the date that appears on the agency's certificate of service. I will reject any untimely response or objection unless good cause is shown for the

delay in filing. **Note that if, prior to the close of the record, a party fails to object to any of my written or verbal rulings, the party may be precluded from challenging that ruling on petition for review or cross-petition for review.**

### FILING PLEADINGS WITH THE MSPB

A "pleading" is any written submission setting out claims, allegations, arguments, or evidence. Pleadings include briefs, motions, petitions, attachments, and responses. 5 C.F.R. § 1201.4(b). Pleadings can be filed via postal mail, facsimile (fax), commercial or personal delivery, or by electronic filing (e-filing) via e-Appeal. Pursuant to 5 C.F.R. §§ 1201.14 and 1201.26, pleadings filed with the Board must meet the following requirements:

(1) All pleadings must be legible and either printed on 8½-inch by 11-inch paper or formatted so that they will print on 8½-inch by 11-inch paper.

(2) All pleadings must be filed by the date set by me or the Board's regulations. The date of filing is the date your submission is postmarked, faxed, the date of electronic submission if you e-file, or the date of receipt if you personally deliver it to the Board's regional office. Extensions of filing dates will only be granted if requested in writing and if good cause is shown. **A continuance of a hearing date will be granted only if requested in accordance with the Board's regulation at 5 C.F.R. § 1201.51(c), which requires an affidavit or sworn statement, and if you are able to show extraordinary circumstances.**

(3) You must serve upon opposing parties and their representatives one copy of each pleading and all documents submitted with it. You may do so by e-Appeal, postal mail, facsimile, or commercial or personal delivery. A certificate of service stating how and when service was made must accompany each pleading. If you register as an e-filer, a certificate of service will be prepared **automatically** as part of pleadings you file electronically. E-appeal automatically serves e-filed pleadings on other registered e-filers. E-Appeal will indicate whether a pleading must also be served by non-electronic means and will construct a certificate of service to be used to serve the pleading. Pleadings that are not e-filed must be accompanied by a certificate of service stating (a) the names and addresses of the parties served; (b) the manner of service (postal mail, fax, or commercial or personal delivery); and (c) the date of service. If you are not a registered e-filer, a case parties list with the names and addresses of the parties who currently must be served in this case is included with this Order. The attached certificate of service constitutes a model that you may

follow in preparing your own certificate of service. **The Board may reject a submission without a certificate of service.**

### Pleadings Submitted in Hardcopy

When a pleading submitted by postal mail, fax, commercial or personal delivery includes three or more documentary attachments, the attachments should be "tabbed." A "tab" is a dividing page (8½-inch by 11-inch paper, no portion of which should extend beyond the normal 8½-inch width of the paper), and which contains a description or label. Each page of the submission should be sequentially numbered, and the attachments should be preceded by a table of contents describing each attachment and indicating the page on which it starts. The page numbers should be placed in the bottom right-hand margin of each page. Special instructions for preparing the agency's response to the appeal under 5 C.F.R. § 1201.25 are included below.

**Paper pleadings and attachments may not contain binders, folders, staples, paper clips, or notes adhered to pages. Such items will be removed and not included in the record, or the filing may be rejected.** Documents may not be submitted on an electronic media storage device such as a Compact Disc (CD), Digital Video Disc (DVD), or flash drive. 5 C.F.R. § 1201.26(b).

### Pleadings Submitted via e-Appeal

All pleadings submitted using e-Appeal must comply with the Board's regulations at 5 C.F.R. § 1201.14. Electronic bookmarks and tables of contents take the place of physical "tabs" in pleadings filed by traditional means. E-filed pleadings must contain bookmarks for all supporting documents, and the bookmarks must be named pursuant to requirements set forth in e-Appeal policies posted to the Board's website and include information such as a brief descriptive label with dates (e.g., "Oct. 1, 2021 – Notice of Termination"). Bookmarks may be specified using e-Appeal or by uploading the supporting documents in the form of one or more PDF files that are already bookmarked. 5 C.F.R. § 1201.14(h)(2).

Regardless of whether it is uploaded or entered online, each pleading submitted using e-Appeal will be assembled into a single PDF document, which will include all electronic attachments, and will contain sequential page numbers. E-filers need not manually paginate their pleadings and attachments.

Pleadings submitted using e-Appeal are subject to a file size limit. E-filers are encouraged to scan documents in black and white and to adjust settings to reduce file size. If what would otherwise be a single pleading must be broken into multiple pleadings because of the size limit, each should contain the same descriptive title, together with a "Part" designation in parentheses (e.g., "Agency File (Part A)" and "Agency File (Part B)").

For more information about e-filing, read the Board's regulation at 5 C.F.R. § 1201.14, or visit e-Appeal (https://e-appeal.mspb.gov/).

## REGULATIONS

For more detailed information on these procedures, refer to the Board's regulations in 5 C.F.R. part 1201. The regulations are available for review in agency personnel offices, law libraries, some large public libraries, and at the Board's website (http://www.mspb.gov).

## NOTICE TO THE AGENCY/INTERVENOR

### AGENCY RESPONSE

I **ORDER** the agency to read, comply with, and/or respond to all portions of the "Notice to the Appellant" which are applicable to it. I also **ORDER** the agency to serve me, the appellant, and the appellant's representative (if applicable), with the material listed on the enclosed schedule and any other information required by 5 C.F.R. § 1201.25 within **20 calendar days** of the date of this Order.

### DESIGNATION OF REPRESENTATIVE

The agency must designate a representative. I **ORDER** the agency to file the name, address, telephone number, and email address of the person authorized to act for the agency using e-Appeal's "Designation of Representative" pleading within

20 calendar days of the date of this Order. The representative must have authority to settle this appeal or be able to directly reach someone with that authority on short notice.

## NOTICE TO THE PARTIES

### SETTLEMENT

The Board strongly encourages the settlement of the appeals that come before it. Even where discussions between the parties do not result in settlement, they often help to define the issues and assist the parties in agreeing to stipulations. I therefore urge the parties to contact each other to discuss the possibility of settlement as early in this proceeding as possible. I am available to assist in the discussions. The parties should discuss concrete, specific settlement proposals unless either party concludes in good faith that no compromise of any kind is possible. They must also be prepared to discuss with me the status of any settlement discussions. *See* 5 C.F.R. § 1201.41(b)(12) (the administrative judge is authorized to "[h]old prehearing conferences for the settlement and simplification of issues").

If the parties agree to settle this appeal, and to enter the agreement into the record, the Board will retain the authority to enforce its terms. However, if they do not enter the agreement into the record, the Board will have no authority to enforce the agreement.

15

FOR THE BOARD:

*Joel T. Alexander*

_____

Joel T. Alexander
Chief Administrative Judge
Dallas Regional Office
1100 Commerce Street Room 620
Dallas, TX 75242
Phone: (214) 767-0555
Fax:    (214) 767-0102
V/TDD

Enclosures

## MSPB SCHEDULE 315
## REQUIREMENTS FOR SUBMITTING AGENCY FILE
## VIA E-APPEAL

**The Agency File must be submitted via e-Appeal. The requirements of 5 C.F.R. § 1201.14 apply.**

### General Information

All evidence submitted will be disclosed to the parties. Therefore, no classified document can be received in evidence unless accompanied by a statement that it is declassified and that full disclosure is permitted.

### Materials Required to be Submitted Electronically

The agency file does not have to be paginated. E-Appeal will automatically paginate the submission.

To serve a paper copy of the agency file on a party who is not an e-filer, the agency should print out a paper copy of its e-file submission from e-Appeal. It will be paginated and will be identical to the electronic copy in the e-Appeal case record.

The agency file must be organized as described below. Failure to do so may result in rejection of the submission.

**Tab 1.** A narrative response to the appeal and all material issues raised by the appellant.

- Specify the nature of the appellant's appointment and its commencement and termination dates;
- indicate whether the appellant was entitled to any credit for prior service;
- indicate if there was a break in service from the prior service to the current appointment and, if so, how long the break lasted; and
- address the issue of the Board's jurisdiction.

**Tab 2.** Except for U.S. Postal Service cases, a statement whether the appellant is covered by a collective bargaining agreement (CBA) and whether that agreement covers the action being appealed.

> [If so, provide an electronic copy of the applicable CBA provision(s) and state whether the appellant has grieved the action. If the appellant has, submit an electronic copy of the grievance and indicate the date it was filed.]

**Tab 3.**    A statement whether the appellant has filed a formal complaint of discrimination on the action being appealed.

> [If so, indicate its current status, provide an electronic copy of the complaint, indicate the date the complaint was filed, and the agency's final decision, if any.]

**Tab 4.**    Electronic copies of all other documents, which are relevant and material to this appeal.

> [Provide an electronic copy of the notice of proposed action and response, if any, the decision letter, and the SF-50's (or other notifications of action) for the appellant's appointment and termination and for any prior service, if relevant.  If a supervisory probationary period is involved, then provide documentation, which placed the appellant into and removed the appellant from the supervisory/management position]

Documents in tab 4 must be arranged in reverse chronological order, with the most recently dated document listed first (4a) and the oldest document listed last.  Each document must be bookmarked and labeled, preferably by alphabet, and must include a brief description of the document with a date (e.g., "4a - May 10, 2023 – Termination SF-50"; "4b - May 10, 2023 – Notice of Probationary Termination"; and "4c - Jan. 4, 2023 – Appointment SF-50").  Do not include a copy of the appellant's initial appeal in the agency response file.  It is already in the Board's appeal file.

18

OMB No. 3124-0017, Exp. 09/30/2026

## PART 4 - Designation of Representative

Has an individual or organization agreed to represent you in this proceeding before the Board? (You may designate a representative at any time. However, it is unlikely that the appeals process will be delayed for reasons related to obtaining or maintaining representation. Moreover, you must promptly notify the Board in writing of any change in representation.)

(   ) Yes (*complete the information below and sign*)          (   ) No

**DESIGNATION:**

"I hereby designate _____ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board."

| Representative's address (*number and street, city, state and ZIP code*) | Representative's telephone numbers (*include area code*) and email address |
|---|---|
| Address: | Office: |
| | Fax:                    Other: |
| City: | |
| State:            ZIP Code: | Email Address: |

### SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

_____          _____
Appellant's Signature                    Date (MM/DD/YYYY)

MSPB Form 185, Page 7 (Rev. 09/23)
5 C.F.R. parts 1201, 1208, and 1209

## PRIVACY ACT STATEMENT

**AUTHORITY:** The Merit Systems Protection Board (MSPB) may hear appeals of Federal agency actions only when it has been authorized to do so by law, rule, or regulation. 5 U.S.C. § 7701(a); 5 U.S.C. § 1204.

**PRINCIPAL PURPOSE(S):** The information being collected during the course of processing this appeal is for the primary purposes of adjudicating an appeal filed pursuant to the above authorities, rendering MSPB decisions in these matters, and enabling case parties to have access to MSPB's electronic filing system. Additionally, some information about the appeal or case is used in depersonalized form for statistical purposes.

**ROUTINE USE(S):** The information being collected during the course of processing this appeal may be shared outside of MSPB as generally permitted under 5 U.S.C. § 552a(b) of the Privacy Act of 1974, as amended. This includes sharing the information as necessary and authorized by routine uses published in MSPB/GOVT – 1 Appeals and Case Records, 77 Fed. Reg. 65206 (Oct. 25, 2012), and upon written request, by agreement, or as required by law. Decisions of the Merit Systems Protection Board are available to the public under the provisions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and are posted to MSPB's public website. Other documents from individual appeal and case files may also be made available as required by FOIA.

**DISCLOSURE:** The disclosure of information being collected during the course of processing this appeal is voluntary; however, failure to provide the information requested may delay or prevent the proper docketing of a matter and/or the adjudication of a matter, which could result in the dismissal or delay of your appeal or matter, and/or prevent access to MSPB's e-Appeal system.

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### NOTICE

### SUSPENDED APPEAL PROCEDURE

Both the appellant and the agency are entitled to have this appeal adjudicated as quickly as possible, usually within 120 days. *See* 5 U.S.C. § 7702(a)(1). In some situations, however, the parties or the administrative judge may conclude that more time than is routinely provided should be granted. Therefore, the administrative judge may issue an order suspending the processing of an appeal for up to 30 days. The administrative judge may grant a second order suspending the processing of an appeal for up to an additional 30 days. No case may be suspended for more than a total of 60 days under these procedures. *See* 5 C.F.R. § 1201.28.

Should the parties contact the administrative judge during the period of suspension for assistance, and if the administrative judge's involvement is likely to be extensive, the administrative judge will notify the parties that it will be necessary to terminate the suspension and return the case to standard processing.

## NOTICE

## ALTERNATIVE DISPUTE RESOLUTION

In an effort to provide alternatives to the regulatory adjudication process, the Board offers the parties to the cases several dispute resolution options. This notice explains those possibilities so that you can consider them and discuss them with the administrative judge before you decide how to proceed. All options are cost free. Resolving your case with the assistance of a professional who will guide the parties through the process offers the best chance of reaching a resolution that benefits both parties. Accordingly, the Board encourages you to be always open to such a resolution.

## THE MEDIATION APPEALS PROGRAM

The Mediation Appeals Program (MAP) is a voluntary, confidential process in which the parties meet with an experienced mediator in a non-litigious, non-adversarial setting. Even more than other available settlement options, MAP encourages the parties to approach settlement with an open mind and to consider possible resolutions that may not be available in the adjudication process. Both parties must agree to mediation, and the Board must concur that it could be beneficial, given the circumstances of the case and of the parties. Because the case will be outside the normal adjudication process while it is in MAP, your agreement to mediate requires that you be ready to proceed to mediation without delay, and that you be willing to finalize any settlement you may reach expeditiously. Cases should normally not spend more than 45 days in MAP.

The mediator will meet with the parties and facilitate discussions between them to find common grounds on which to resolve the case. Mediations may be done in-person, virtually, or by telephone. If the efforts to resolve the case do not result in a settlement, the mediator will have no input into the adjudication of the case. Nonetheless, the parties will likely return to adjudication with a better understanding of what is important to them and to the other party, which often helps them reach a settlement during the adjudicatory process. MAP is further described online at https://www.mspb.gov/appeals/mediationappeals.htm.

If you have other questions regarding MAP, discuss them with the administrative judge, or you may contact the MAP coordinator at regionaloperations@mspb.gov.

## THE SETTLEMENT JUDGE PROGRAM

A settlement judge is an administrative judge like the one assigned to your case, but they are assigned specifically and solely to discuss settlement options with the parties. Like the administrative judge assigned to your case, a settlement judge is skilled at evaluating the parties' positions and offering sound advice on the

strengths and weaknesses of each party's position. A settlement judge plays no part in the processes and procedures through which a case goes during the course of the traditional adjudication process and has no input into the decision if the case does not settle. Thus, some parties feel more open to frank discussion of their cases and their settlement goals with a settlement judge.

Unlike MAP, both parties do not have to request the services of a settlement judge. However, there must be a genuine willingness by both parties to explore settlement before one is appointed. Accordingly, if after initial settlement discussions among the parties and the assigned administrative judge, a party believes the assignment of a settlement judge would be useful, a request may be made to the administrative judge. If administrative judge concurs, a settlement judge will be assigned.

### THE MSPB SETTLEMENT PROGRAM

The administrative judge assigned to decide your case will explore the possibility of settlement with the parties to almost all cases. Thus, you need not make any election if this is the option you prefer. Through the documents filed by the parties and the evidence submitted, the administrative judge becomes thoroughly familiar with the case and is in the best position to discuss the strengths and weaknesses of the case, as well as to evaluate not just the likelihood of success but also the validity of settlement offers made by the parties, and to suggest proposals for their consideration. Administrative judges often spend considerable time working with the parties to help them craft mutually beneficial settlements in lieu of adjudication, in which it is more likely that there will be a "winning" and a "losing" side. Any settlement discussions with the administrative judge have no effect on the ultimate outcome of the case if it does not settle.

## ELECTRONIC FILING AT THE MSPB

Parties and representatives who register as e-filers can e-file virtually any type of pleading, including a new appeal. Registered e-filers receive electronically documents issued by the Board and pleadings filed by other e-filers. Registration and e-filing are done using the Board's e-filing system, e-Appeal, at https://e-appeal.mspb.gov/, which includes the following features:

- Both the Board and e-filers receive e-filed documents on the same day they are submitted.
- E-filers can enter their pleadings online or upload electronic documents.
- Documents can be submitted in many common electronic formats, including PDF, word-processing formats, and image formats (electronic files created by scanning paper documents). Please note that PDF Portfolio files or PDFs with attached or embedded files are **not** supported by e-Appeal.
- E-filers may submit their pleadings and supporting attachments in the form of declarations made under penalty of perjury. The Board gives greater evidentiary weight to statements in this form than to unsworn statements.
- Regardless of whether it is entered online or uploaded, each pleading is assembled into a single PDF document, which includes all attachments, and contains sequential page numbers. Pagination enables everyone involved to make specific citations to the record.
- If an e-filer is unable to complete a pleading during a single session, they can save their work and complete it during a later session.
- E-filers are provided with confirmation of e-filing and can print a copy of the assembled pleading or download it as a PDF document.
- Service of pleadings on other e-filers is automatic.
- E-Appeal notifies registered e-filers by email when new documents in their cases are posted. E-filers may download or read the documents by accessing their e-Appeal account. E-filers must ensure that email from @mspb.gov is approved by their email provider, and they must check their junk or spam folder routinely.

For further information about electronic filing, please review the Board's regulation at 5 C.F.R. § 1201.14, or visit the Board's primary website (http://www.mspb.gov), or e Appeal site (https://e-appeal.mspb.gov).

## NOTICE TO SELF-REPRESENTED APPELLANTS

Your petition for appeal indicates that you are currently representing yourself before this office.  If you are interested in seeking pro bono representation in your appeal before this office, please click on this link or paste it into the address bar on your browser:

https://www.mspb.gov/probono/index.htm

**Please note** that the MSPB neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.  It will be the decision of the individual appellant to contact any listed organization about the possibility of pro bono representation, and it will be the decision of any attorney an appellant is referred to whether they will provide pro bono representation.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

Electronic Service      Jessica Gober

Served on email address registered with MSPB

### Agency Representative

Electronic Service      Christiann Burek

Served on email address registered with MSPB

|  |  |
|---|---|
| ___03/10/2025___ | *Joel T. Alexander* |
| (Date) | _____ |
|  | Joel T. Alexander |
|  | Chief Administrative Judge |

# EXHIBIT 2

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

---

| | |
|---|---|
| **U.S. OFFICE OF SPECIAL COUNSEL,** ) | |
| *ex rel.*  **Former Employee** ████ ) | |
| **Petitioner** ) | **Docket No.** |
| ) | |
| **v.** ) | |
| ) | **Date:** February 21, 2025 |
| **DEPARTMENT OF VETERANS AFFAIRS,** ) | |
| **Respondent.** ) | |

---

### U.S. OFFICE OF SPECIAL COUNSEL'S
### INITIAL REQUEST FOR STAY OF PERSONNEL ACTIONS

The U.S. Office of Special Counsel (OSC) requests that the Merit Systems Protection

Board (Board) stay for 45 days the probationary termination of former federal employee ██,

hereinafter "Complainant ██," by the Department of Veterans Affairs (VA).[1]  *See* 5 U.S.C. §

1214(b)(1)(A); 5 C.F.R. § 1201.134.  OSC requests that this stay request be adjudicated together

with the concurrently-filed requests to stay the probationary terminations of former federal

employees ██, ██ ██, and ██ (collectively with Complainant ██, the "Complainants"),

by the Department of Education (ED), Department of Energy (DOE), Department of Housing

and Urban Development (HUD), Office of Personnel Management (OPM) and Department of

Agriculture (USDA) (collectively with VA, the "Agencies").

---

[1] To ensure compliance with the Board's procedural requirements, Complainant ██ has consented to be identified in this stay request, but asks that the Board use a pseudonym in its decision and any other publicly-available document. In consideration of this request, OSC has used Complainant ██ 's name in the caption, but otherwise refers to them by their initials and asks that the Board do the same. Complainant ██ is fully identified in the attached termination notice and declaration, which they provided to OSC in support of their prohibited personnel practice complaint.

1

OSC has reasonable grounds to believe that the Agencies engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) by terminating Complainants in violation of the federal laws and regulations governing probationary terminations and reductions in force (RIF). *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351; 5 C.F.R. § 315.801 *et seq*. As a result, OSC has an obligation to request relief from the Board where appropriate. 5 U.S.C. § 1212(a) ("The Office of Special Counsel *shall*…protect employees…from prohibited personnel practices…and, where appropriate [] bring petitions for stays") (emphasis added).

## INTRODUCTION

In accordance with its legal responsibility to safeguard the merit system, OSC seeks this stay because the probationary terminations at issue in this matter appear to have been effectuated in a manner inconsistent with federal personnel laws. In most cases, probationary employees in the competitive service may only be terminated if their performance or conduct demonstrates that they are unfit for federal employment. If agencies wish to terminate probationary employees not for performance or conduct, but as part of a general restructuring or downsizing, they must initiate a reduction in force (RIF) and follow the relevant procedures for that process.

As described below, the rules for probationary terminations and conducting RIFs are not technicalities. Rather, they implicate federal employees' substantive and procedural rights.

## STATEMENT OF FACTS

### I.    PREPARATIONS MADE TO REDUCE AND REORGANIZE THE FEDERAL WORKFORCE

Between January 20 and February 11, 2025, President Trump and OPM issued executive orders and memoranda in connection with plans to reduce and reorganize the federal workforce. For example, on January 20, 2025, the President issued an Executive Order establishing the Department of Government Efficiency, and OPM issued guidance on probationary periods,

advising agencies that probationary periods are "an essential tool for agencies to assess employee performance and manage staffing levels," directing agencies to provide OPM with a list of all probationary employees, and instructing agencies to "promptly determine" whether probationary employees should be retained.[2]  On February 11, 2025, the President issued an Executive Order directing agency heads to "promptly undertake preparations to initiate large-scale reductions in force..." and to develop "[r]eorganization [p]lans."[3]  According to public reporting, on February 13, 2025, OPM officials met with federal agency leaders to provide guidance on how to carry out probationary termination actions as part of the broader effort to restructure and downsize the federal workforce.[4]

## II.    THE AGENCIES' TERMINATIONS OF COMPLAINANTS

Between February 12 and February 14, 2025, the Agencies terminated Complainants, probationary employees at six separate federal agencies, from federal service.  Based on public reporting, each was terminated at the same time as significant numbers of other federal employees.[5]  The language in Complainants' termination notices is quite similar and does not describe any specific issues with any of the Complainants' performance or conduct.  Notably,

---

[2] EXEC. ORDER NO. 14158, *Establishing and Implementing the President's "Department of Government Efficiency,"* 90 Fed. Reg. 8441 (Jan. 20, 2025); U.S. OFF. OF PERSONNEL MGMT., Guidance on Probationary Periods, Administrative Leave and Details (Jan. 20, 2025).

[3] EXEC. ORDER NO.14210, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025); *see* WHITE HOUSE, Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce (Feb. 11, 2025) (explaining that DOGE will assist with "shrink[ing] the size of the federal workforce," "large-scale reductions in force," "reducing the size and scope of the federal government," and "shrink[ing] the administrative state.").

[4] Jory Heckman, *OPM advises agencies to fire probationary employees after 'deferred resignation' deadline*, Fed. News Network (Feb.13, 2025), https://federalnewsnetwork.com/workforce/2025/02/opm-fires-probationary-employees-after-deferred-resignation-deadline/; Ted Oberg, *Trump administration tells federal agencies to fire probationary employees*, NBC4 (Feb. 13, 2025), https://www.nbcwashington.com/news/president-trump-politics/opm-federal-agencies-probationary-employees-trump-administration/3844634/.

[5] Tami Luhby et al., *Thousands of probationary employees fired as Trump administration directs agencies to carry out widespread layoffs*, CNN (Feb. 14, 2025), https://www.cnn.com/2025/02/14/politics/probationary-federal-employees-agencies-firings-doge/index.html.

only three of the notices mention performance or conduct at all as a justification for the termination, and none provide any detail or individualized assessment.

The following is the specific factual information relevant to each Complainant, based on the information OSC has reviewed to this point:

### 1.    *ED Program Support Specialist*

Complainant ▮ served as a probationary Program Support Assistant in the competitive service with ED. Ex. 1, Complainant ▮ Declaration, ¶¶ 3-4. Complainant ▮ was hired with a 100% disabled veteran's preference after 14 years with the Army. *Id.*, ¶ 5. Throughout his tenure, he received consistent praise from leadership, and there is no evidence of any performance issues. *Id.*, ¶ 9. However, on February 12, 2025, Complainant ▮ was issued a termination notice that stated, in relevant part:

> I regrettably inform you that I am removing you from your position of Program Support Specialist with the agency and the federal civil service effective today.

Ex. 2, ED Notice. Earlier that same day, Complainant ▮ s supervisor had commended his exceptional performance, praising his dedication and calling him a perfect fit for the team. Ex. 1, ¶ 11.

Both Complainant ▮ and the media reported that, on or around February 12, 2025, about 60 probationary employees at ED received written notifications that they were being terminated, effective immediately. *Id.*, ¶ 15.[6]

---

[6] Joey Garrison, *Firings across federal government begin after Trump, Musk order sweeping cuts*, USA TODAY (Feb. 13, 2025), https://www.usatoday.com/story/news/politics/2025/02/13/trump-musk-federal-workforce-mass-firings/78524273007/.

### 2.    *DOE Program Communications Specialist*

Complainant ▉ served as a probationary Program Communications Specialist with DOE in the excepted service. Ex. 3, Complainant ▉ Declaration, ¶¶ 3-4. Complainant ▉'s performance record was strong, with no documented performance or conduct issues. *Id.*, ¶¶ 8-9. In December 2024, Complainant ▉ received a "Significantly Exceeds Expectations" performance rating. *Id.* Despite her supervisor's request for the agency to retain her, she was terminated on February 13, 2025. *Id.*, ¶ 3. The termination notice stated, in relevant part:

> Per OPM instructions, DOE finds that your further employment would not
> be in the public interest. For this reason, you are being removed from
> your position with DOE and the federal civil service effective today.

Ex. 4, DOE Notice.

On or around February 13, 2025, DOE terminated between 1,200 and 2,000 employees, including probationary employees. According to public reporting, notices provided to many of these employees stated that their further employment would not be in the public interest.[7] A DOE official reportedly said that DOE removed OPM's suggested phrasing citing "performance reasons" from its termination letters because many of the terminated employees had performed well during their probationary period.[8]

### 3.    *HUD Trial Attorney*

Complainant ▉ served as a probationary Trial Attorney in the excepted service with HUD. Ex. 5, Complainant ▉ Declaration, ¶¶ 3-4. Complainant ▉ had very good performance and, in November 2024, Complainant ▉ received an "4" performance rating. *Id.*, ¶ 9.

---

[7] Gabe Whisnant & Peter Aitken, *Trump Moves to Fire Staff Overseeing Nuclear Weapons Then Backtracks—Report*, NEWSWEEK (Feb. 14, 2025), https://www.newsweek.com/trump-fires-hundreds-staff-overseeing-nuclear-weapons-report-2031419.

[8] Shannon Bond et al., *Sweeping cuts hit recent federal hires as Trump administration slashes workforce*, NPR (Feb. 13, 2025), https://www.npr.org/2025/02/13/nx-s1-5296928/layoffs-trump-doge-education-energy.

Complainant ███ has also received several performance awards and has not been informed of any performance or conduct issues. *Id.* On February 14, 2025, Complainant ███ received a notice of termination that contained the following language:

> The purpose of this notice is to notify you of the decision to terminate your employment with the U.S. Department of Housing and Urban Development (HUD), during your trial period, in order to promote the efficiency of the federal service in accordance with the priorities of the Administration…After careful consideration, the Agency is terminating your employment as of the date of the transmission of this email, during your trial period as *part of a workforce restructuring of the Agency*.

Ex. 6, HUD Notice (emphasis added).

Senator Patty Murray issued a press release expressing concern from several senators over reports that HUD had terminated hundreds of probationary employees on February 14.[9]

### 4.    *OPM Benefits Analyst*

Complainant ███ worked at OPM as a probationary Benefits Analyst in the excepted service. Ex. 7, Complainant ███ Declaration, ¶¶ 1, 3.[10] Complainant ███ received a positive performance rating during her tenure, with no indication of any performance or conduct issues. *Id.*, ¶ 2. Although Complainant ███'s managers repeatedly requested that Complainant ███ be retained, on February 13, 2025, Complainant ███'s employment was terminated. *Id.*, ¶ 5. The termination notice states, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest. For this reason, the Agency informs you that effective at the close of business today (February 13, 2025), you are being terminated from your position with the Agency and the federal civil service during your trial period.

---

[9] Press Release, U.S. Senator Patty Murray. Murray, Warren, Gillibrand, Smith, and Schumer Demand Trump & Elon Halt Cuts to HUD Workforce, Press for Answers on HUD's Capacity to Meet Critical Functions & Deliver Essential Services (Feb. 16, 2025), https://www.murray.senate.gov/murray-warren-gillibrand-smith-and-schumer-demand-trump-elon-halt-cuts-to-hud-workforce-press-for-answers-on-huds-capacity-to-meet-critical-functions-deliver-essential-servic/.

[10] Due to an apparent numbering error, this declaration repeats several paragraph numbers.

Ex. 8, OPM Notice (emphasis removed). Complainant ██'s supervisor, who was caught off guard by the termination, clarified that the action was not based on poor performance. Ex. 7, ¶¶ 5, 11.

According to public reporting, OPM terminated approximately 70 probationary employees on February 13, 2025. These employees were also told the agency finds "[b]ased on your performance, that you have not demonstrated that your further employment at the agency would be in the public interest."[11]

### 5.    *VA Training Specialist*

Complainant ██, a disabled U.S. Navy veteran dedicated to serving fellow veterans, served in the excepted service as a probationary Training Specialist with the VA. Ex. 9, Complainant ██ Declaration, ¶¶ 3-4, 6. Despite having no indication of performance or conduct issues, on February 13, 2025, Complainant ██ received a termination notice. *Id.*, ¶¶ 3, 11. Until it was issued, Complainant ██'s supervisor was unaware of the termination action, which stated, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your
> further employment at the Agency would be in the public interest. For this reason, the
> Agency informs you that the Agency is removing you from your position with the
> Agency and the federal civil service effective February 13, 2025.

*Id.*, ¶ 12, Ex. 10, VA Notice.

Complainant ██ was one of over 1,000 probationary employees who were terminated on February 13, 2025. The agency released a statement that day, attributing the terminations to a

---

[11] Heckman, *supra* at n.5.

"government-wide Trump Administration effort to make agencies more efficient, effective and responsive to the American People."[12]

### 6.    USDA Loan Specialist

Complainant ▮ worked at USDA in the competitive service as a probationary loan specialist. Ex. 11, Complainant ▮ Declaration, ¶¶ 3-4.  Throughout this tenure, he consistently exhibited strong performance and received positive feedback. *Id.*, ¶¶ 7-8.  On February 13, 2025, Complainant ▮ was notified of his termination. *Id.*, ¶ 3.  The termination notice states, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your
> further employment at the Agency would be in the public interest.  For this reason, the
> Agency informs you that the Agency is removing you from your position....

Ex. 12, USDA notice. While the notice indicates that the action is based on Complainant ▮'s performance, Complainant ▮ had not been informed of any performance issues, nor did the notice cite specific concerns. Ex. 11, ¶ 11.  Complainant ▮'s supervisor was "shocked" by the action, offering to rehire Complainant ▮ and serve as a reference. Ex. 11, ¶ 12.

Around the same time, USDA terminated probationary employees across three of its subagencies, including the U.S. Forest Service—which alone terminated up to 3,400 probationary workers.[13]  As with Complainant ▮, according to public reporting, these terminated employees received a letter informing them that "[t]he Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest."[14]

---

[12] Press Release, U.S. Dep't of Veterans Affs. VA dismisses more than 1,000 employees (Feb. 13, 2025), https://news.va.gov/press-room/va-dismisses-more-than-1000-employees/.

[13] Tami Luhby et al., *supra* at n.6.

[14] Leah Douglas, *USDA probationary staff fired at three agencies, sources say*, REUTERS (Feb.14, 2025), https://www.reuters.com/world/us/usda-probationary-staff-fired-two-research-agencies-sources-say-2025-02-14/.

## ARGUMENT

### I.    LEGAL STANDARD FOR STAY REQUESTS

OSC may request any member of the Board to order a stay of any personnel action for a period of 45 days if OSC determines that reasonable grounds exist to believe that a personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. 5 U.S.C. § 1214(b)(1)(A)(i). Indeed, pursuant to 5 U.S.C. 1212, OSC has a legal obligation to protect federal employees from prohibited personnel practices and petition for a stay "where appropriate." See 5 U.S.C. § 1212(a).

OSC may file a stay request after the effective date of a personnel action. *Special Counsel ex rel. Perfetto v. Dep't of Navy*, 83 M.S.P.R. 169, 173 (1999). The Board member "shall" grant the stay "unless the [Board] member determines that, under the facts and circumstances involved, such a stay would not be appropriate." 5 U.S.C. § 1214(b)(1)(A)(ii).

In evaluating the sufficiency of a stay request, the Board will view the facts in the light most favorable to a finding that the personnel action to be stayed is the result of a prohibited personnel practice. *Special Counsel v. Dep't of Treasury*, 70 M.S.P.R. 578 (1996). OSC's stay request need merely fall within the "range of rationality" to be granted. *Perfetto,* 83 M.S.P.R. at 173 (quoting *In re Kass*, 2 M.S.P.R. 79, 96 (1980) (interpreting the predecessor provision to 5 U.S.C. § 1214)).

### II.    OSC HAS REASONABLE GROUNDS TO BELIEVE THAT THE COMPLAINANTS' TERMINATIONS VIOLATE 5 U.S.C. § 2302(B)(12)

Under 5 U.S.C. § 2302(b)(12), it is a prohibited personnel practice for an agency to take or fail to take a personnel action where "the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." Complainants allege that the probationary terminations

9

described in this Initial Request for Stay of Personnel Actions (Stay Request) are personnel

actions, as defined at 5 U.S.C. § 2302(a)(2)(A), that violate 5 U.S.C. § 3502, 5 C.F.R. Part 351,

and 5 C.F.R. § 315.801 *et seq.* These statutes and regulations concern the following merit system

principles:

- Selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills;

- All employees should receive fair and equitable treatment with proper regard for their constitutional rights;

- The Federal work force should be used efficiently and effectively;

- Employees should be retained on the basis of the adequacy of their performance; and

- Employees should be protected against arbitrary action.

*See* 5 U.S.C. §§ 2301(b)(1), (2), (5), (6), (8)(A). As set forth below, OSC has reasonable

grounds to believe that the terminations therefore constitute prohibited personnel practices under

section 2302(b)(12).

### A.    The Probationary Terminations Appear to Violate RIF Statute and Regulations

The available evidence indicates that Agencies improperly used the probationary status of

employees to accomplish a RIF without affording the employees the substantive rights and due

process they are entitled to by law.[15]  Based on public statements, the Agencies' decision to

terminate large numbers of probationers was to accomplish reorganizations and cost savings; in

other words, a RIF.

---

[15] *See* U.S. OFF. OF PERSONNEL MGMT., Workforce Reshaping Operations Handbook A Guide for Agency Management and Human Resource Offices (2017), https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/workforce_reshaping/.

Because 1) agencies are prohibited from circumventing the requirements set forth in the RIF statute and regulations, which apply equally to probationary employees, 2) the evidence indicates that Agencies improperly terminated Complainants without reference to those requirements, and 3) the violation denied Complainants both substantive and procedural rights, OSC has reasonable grounds to conclude that Agencies have engaged in prohibited personnel practices.

### 1.    *Agencies are Prohibited from Circumventing RIF Requirements*

Agencies must follow the RIF statute and regulations when the employee's release is required for reasons including lack of work, shortage of funds, and reorganization. *See* 5 C.F.R. § 351.201. The regulations define a reorganization as "the planned elimination, addition, or redistribution of functions or duties in an organization." 5 C.F.R. § 351.203. The Federal Circuit has "defined a 'reduction in force' as an 'administrative procedure' by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *See Tippins v. U.S.*, 93 F.4th 1370, 1375 (Fed. Cir. 2024). OPM's website similarly explains that, "An agency is required to use the RIF procedures when an employee is faced with separation or downgrading for a reason such as reorganization, lack of work, [or] shortage of funds...."[16]

Each agency has the right to decide whether a RIF is necessary and when the RIF will take place. However, agencies do not have discretion to bypass RIF procedures when they are reorganizing or reducing the size of components based on lack of work or budgetary concerns. *See James v. Von Zemenszky,* 284 F.3d 1310, 1321 (Fed. Cir. 2002) (holding that the VA did not have "the authority to implement a system for implementing RIFs contrary to the title 5 RIF

---

[16] *Reductions in Force*, U.S. OFF. OF PERSONNEL MGMT., https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/ (last visited Feb. 17, 2025).

framework mandated by Congress"). Importantly, probationary employees are not excluded from RIF procedures. *See* 5 C.F.R. § 351.202. It is an agency's burden to prove before the Board that its decision not to use RIF procedures complied with the regulations. *See Carter v. Small Bus. Admin.*, 23 M.S.P.R. 309, 311-312 (1984) (citing *Losure v. Interstate. Com. Comm'n*, 2 M.S.P.R. 361, 365-66 (1980)).

Agencies cannot avoid following the RIF requirements when the purpose of the action is to address a shortage of funds or a reorganization. *See McClure v. Fed. Emergency Mgmt. Agency*, 32 M.S.P.R. 672, 676 (1987); *see also Moody v. Dep't of Justice*, 2009 MSPB LEXIS 1917, *7 (April 2, 2009).

### 2. *The Agencies Likely Cannot Meet their Burden to Show that RIFs Were Not Required to Terminate the Probationers*

Based on the evidence OSC has reviewed, including official directives, public statements, and the termination notices issued to Complainants, it appears that the Agencies terminated probationary employees not to eliminate poor performers but rather because of a purported lack of work, shortage of funds, and reorganization, which require use of RIF procedures. *See* 5 C.F.R. § 351.201. For example, OPM directed agencies to provide lists of all probationary employees and stated that "probationary periods are an essential tool for agencies to assess employee performance and *manage staffing levels*."[17]

Additionally, the February 11, 2025 Executive Order directed agencies to start planning for RIFs that would prioritize eliminating "offices that perform *functions* not mandated by statute or other law" and excluding "*functions* related to public safety, immigration enforcement, or law

---

[17] U.S. OFF. OF PERSONNEL MGMT., Guidance on Probationary Periods, Administrative Leave and Details, *supra* at n.3 (emphasis added).

enforcement" from RIFs.[18]  Two days later, an OPM spokesperson described the mass

terminations as actions "in support of the President's broader efforts to *restructure* and

*streamline* the federal government."[19]

USDA and VA made their own public statements confirming that the purpose of their

February 13 terminations of Complainants and other probationary employees was supporting the

President's direction to downsize government agencies and reduce spending.[20]  A DOE official

reportedly described that OPM "had suggested the agency use a template that cited 'performance

reasons'" for probationary terminations but that DOE "had removed that phrasing because many

of the employees had performed well during their probationary period."[21]  These public

statements indicate that Agencies terminated Complainants and other probationary employees for

reasons that would require compliance with RIF regulations.

The content of the Complainants' termination notices further signals that the terminations

were issued to reduce the numbers of overall employees rather than because the Complainants

failed to meet expectations during their trial periods.  The Complainants all received their

termination notices between February 12 and 14.  *See* Ex. 2, 4, 6, 8, 10, 12.  The notices OPM,

USDA, and VA issued to Complainants all state that: "The Agency finds, based on your

performance, that you have not demonstrated that your further employment at the Agency would

be in the *public interest*." Ex. 4, 8, 10, 12 (emphasis added).  The DOE termination notice plainly

---

[18] EXEC. ORDER NO. 14210, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, *supra* at n.4 (emphasis added).

[19] Rebecca Beitsch, *OPM Directs Agencies To Fire Government Workers Still On Probation*, THE HILL (Feb. 13, 2025), https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/ (emphasis added).

[20] Robert Thorpe, *List of Federal Agencies That Have Begun Mass Layoffs of Probationary Employees*, NEWSWEEK (Feb. 14, 2025), https://www.newsweek.com/federal-agencies-that-have-begun-mass-layoffs-probationary-employees-doge-2031543; U.S. Dep't of Veterans Affs., *VA Dismisses More than 1,000 Employees*, *supra* at n.13.

[21] Shannon Bond et al., *supra* at n.9.

states that it is acting "*[p]er OPM instructions.*" Ex. 4 (emphasis added). ED's notice did not

provide any reason for the Complainant's immediate termination. Ex. 2. HUD's explanation in

its notice to the Complainant did not mention performance and instead explained that it was

terminating Complainant "*as part of a workforce restructuring of the Agency.*" Ex. 6 (emphasis

added).

Based on the evidence available to OSC, there are reasonable grounds to believe that the

Agencies improperly circumvented RIF regulations by terminating Complainants and other

probationary employees *en masse* without regard to each employee's individual performance for

the purpose of restructuring government agencies and reducing costs.

### 3. *Failing to Use RIF Requirements Deprives Employees of Substantive and Procedural Rights*

The Agencies' failure to apply RIF regulations has deprived Complainants of substantive

as well as procedural rights that could allow them to keep their jobs or be reassigned to new

positions and would have allowed them, at a minimum, to remain employed during the RIF

process. RIF regulations provide for an orderly process of determining which employees are

retained rather than separated and ensuring that those decisions are made according to merit-

based factors. *See* 5 U.S.C. § 3502; 5 C.F.R. §§ 351.501-506. The law requires that employees

with better performance ratings and disabled veterans with veterans' preference are retained over

other competing employees in their retention groups. 5 U.S.C. § 3502. For both excepted and

competitive service employees, probationary employees are placed in the second of three

retention groups. *See* 5 C.F.R. §§ 351.501-502.

The Complainants ▮ and ▮ are disabled veterans, whose status would afford them

preference in the RIF retention schedules. Ex. 1, 9. The excepted service Complainants, whose

probationary period is two years, terminated from DOE, HUD, USDA, and OPM all had

14

favorable annual performance ratings and tenure of more than one year, which could likewise give them preference over employees with shorter tenure and less favorable performance in a RIF. Ex. 3, 5, 7, 11. Thus, it is not a foregone conclusion that Complainants would be separated during a RIF.

In addition to the substantive rights to be considered for retaining their position or being reassigned to another position, the RIF regulations require agencies to provide employees with 60 days of notice and to keep employees in a paid status during that time if possible. *See* 5 C.F.R. §§ 351.803; 351.806. The notice is also required to provide employees with information about their right to reemployment and career transition assistance. *See* 5 C.F.R. § 351.803.

The regulations also provide employees subject to RIF with notice and the right to appeal their termination, demotion, or more than 30-day furlough to the Board. *See* 5 C.F.R. § 351.901. The Board's jurisdiction to hear an appeal of an action taken pursuant to a RIF or that should have been conducted pursuant to a RIF is not dependent on the individual's probationary status or on the length of the individual's current continuous service. *Bielomaz v. Dep't of Navy*, 86 M.S.P.R. 276, 280 (2000).

Accordingly, the Agencies' actions appear to have deprived Complainants of their entitlement to some additional period of employment, compensation, benefits, career transition assistance information, possible accrual of tenure, as well as due process rights.[22]

---

[22] Board precedent is consistent that the remedy to improper circumvention of RIF regulations is to cancel the action the agency took. *See e.g., Williams v. Dep't of Army*, 49 M.S.P.R. 405, 414 (1991).

**B.**    **The Probationary Terminations of Competitive Service Employees Appear to Violate Applicable Regulations**

The Civil Service Reform Act ("CSRA") provides that individuals hired into the competitive service must serve a one-year probationary or trial period.[23] 5 C.F.R. § 315.801-802. For these employees, the regulations promulgated by OPM state explicitly that agencies "*shall* utilize the probationary period as fully as possible *to determine the fitness of the employee* and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803 (emphasis added). In short, to terminate a probationary employee, an agency "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." *McGuffin v. SSA*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (citing *Shaw v. United States*, 622 F.2d 520, 223 (Ct. Cl. 1980); *see also Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977).

Where an employee's "work performance or conduct during [his probationary] period fails to demonstrate his fitness or his qualifications for continued employment," an agency may terminate the employee by notifying him "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a). This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id.*

Probationary employees have only limited rights to challenge personnel actions taken against them. 5 C.F.R. § 315.806. However, while the threshold for terminating a probationary

---

[23] The use of a probationary period to assess new employees has been an integral part of the civil service for over 100 years. Congress established a probationary period in the 1883 Pendleton Act, 22 Stat. 403, ch. 27 (amended 1978); *see* 22 Stat. 404, ch. 27, § 2(2)4; *see also Kato v. Ishihara*, 360 F.3d 106, 113 (2d Cir. 2004); *INS v. FLRA*, 709 F.2d 724, 725 n.1 (D.C. Cir. 1983). Congress reaffirmed the importance of the probationary period with the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101–7135, which expanded the probationary period beyond new employees to existing employees who are appointed to managerial and supervisory positions. *Compare* 5 U.S.C. § 3321 (1976) (establishing a "period of probation before an appointment in the competitive service becomes absolute") *with* 5 U.S.C. § 3321(a) (1982) (authorizing a probationary period for new employees and appointments to managerial and supervisory positions; *see also Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 276–77 (4th Cir. 2013).

16

employee is significantly lower than for a tenured employee, it is not zero – probationary employees cannot be terminated "at will." Agencies must inform probationary employees of the specific reasons for their termination, which necessarily requires agencies to conduct an individualized assessment of their performance and conduct. This requirement is not a simple bureaucratic technicality – compelling agencies to assess the specific fitness of each employee prior to terminating them ensures that outstanding employees are not arbitrarily lost and that terminations are truly in the best interests of the federal service and consistent with merit system principles.

For these reasons, terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 *et seq.* As these regulations and statutes implement or directly concern the merit system principles described in 5 U.S.C. §§ 2301(b)(1), (5), (6), and (8)(A), violating them constitutes a prohibited personnel practice under section 2302(b)(12).

Two of the Complainants in this matter were in the competitive service and OSC has reasonable grounds to believe that they were terminated in violation of 5 C.F.R. § 315.801 *et seq.* The declarations submitted by these Complainants lead OSC to believe that ED and USDA have not conducted any individualized assessments of their employees and instead seem to have issued form letters to terminate probationary employees *en masse.*

### 1.    *Complainant* ▮

The termination letter ED sent to Complainant ▮ states that "I regrettably inform you that I am removing you from your position of Program Support Specialist with the agency and the federal civil service effective today, February 12, 2025." Ex. 2 (ED letter). The letter does not allege that ED was taking this action due to any performance or conduct issues. *Id.*

17

Complainant ▆ submitted a declaration averring that he had no performance or conduct issues, and in fact that the feedback he had received was very good. Ex. 1, ¶ 9. Complainant ▆ also stated neither his upper management or his supervisor had been aware of his termination and that his supervisor was surprised by it. *Id.*, ¶¶ 11-12. Complainant ▆ stated that he was aware of one other probationary employee who received an identical letter and believes the same is true of about 60 other probationary employees. *Id.*, ¶ 15. This evidence, combined with the public statements discussed above about the government's rationale for removing probationary employees, provide OSC with reasonable grounds to believe that Complainant ▆ had no performance or conduct issues and that his termination constitutes a prohibited personnel practice under section 2302(b)(12) that should be stayed.

### 2.    *Complainant* ▆

The termination letter USDA sent to Complainant ▆ states that "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." Exhibit 12 (USDA letter).

Although performance was referenced in the letter, there is no indication that USDA did an individual assessment of Complainant's work. In a declaration, Complainant ▆ also averred that his supervisor told him she was unaware of his termination and that his program director wanted to retain him. Ex. 11, ¶¶ 11-12. Complainant ▆ believes that six probationary employees in his department were terminated with an identical letter and stated that he understood the same was true of every USDA probationary employee in California. *Id.*, ¶¶ 13-16. This evidence, combined with the public statements discussed above about the government's rationale for terminating probationary employees, provide OSC with reasonable grounds to

believe that Complainant ▮ had no performance or conduct issues and that his termination constitutes a prohibited personnel practice under section 2302(b)(12) that should be stayed.

It is noteworthy that, as discussed in detail above, the termination letters DOE, HUD, OPM, and VA issued to their own probationary employees follow a similar pattern. In no case do the letters OSC has reviewed demonstrate that Agencies are conducting individualized assessments to ensure they are terminating probationary employees only for performance, conduct, or pre-appointment conditions. Rather, the text of these letters and public statements indicate that Agencies terminated probationary employees to accomplish organizational objectives and not due to the performance or conduct of individual probationers.

## III.    A 45-DAY STAY OF COMPLAINANTS' TERMINATIONS IS APPROPRIATE

The Board must grant the Special Counsel's request for a stay unless the Special Counsel's claim is "inherently unreasonable." *Special Counsel v. Dep't of Veterans Affairs*, 45 M.S.P.R. 403, 405 (1990) (citing *Kass*, 2 M.S.P.R. at 91).

Here, OSC has reasonable grounds to believe that the Agencies violated 5 U.S.C. § 2302(b)(12) because 1) for all the named Complainants, the Agencies failed to comply with applicable RIF statutes and regulations; and 2) in terminating Complainants ▮ and ▮, the relevant Agencies did not comply with 5 C.F.R. 315.804. *See* 5 U.S.C. § 1214(b)(1)(A)(i). A stay of these terminations will allow OSC to investigate further their complaints and minimize the adverse consequences of the apparent  prohibited personnel practice. *See Special Counsel v. Dep't of Navy*, 85 M.S.P.R. 92, 25 (2000) ("A stay granted pursuant to 5 U.S.C. § 1214(b) is issued to maintain the *status quo ante*..."); *see also Special Counsel v. Dep't of Veterans Affairs*, 60 M.S.P.R. 40 (1993). Here, the consequences for Complainants are grave, including loss of pay and benefits, loss of their federal careers, and deprivation of their legal rights.

19

**REQUEST FOR RELIEF**

OSC requests that a member of the Board:

    1.  Order the Department of Veterans Affairs to stay, for a period of 45 days, Complainant

        █'s probationary termination and return Complainant █ to full pay and duty status until

        the stay expires or is otherwise lifted;

                                        Respectfully submitted,

                                        *Hampton Dellinger*

                                        _____

                                        Hampton Dellinger
                                        Special Counsel

                                        ███████████

                                        U.S.  Office of Special Counsel
                                        1730 M Street, N.W., Suite 218
                                        Washington, D.C.  20036-4505

20

# EXHIBIT 3

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. JOHN DOE,[1]
           Petitioner,

v.

DEPARTMENT OF VETERANS
    AFFAIRS,
           Agency.

DOCKET NUMBER
CB-1208-25-0019-U-1

DATE: February 25, 2025

## THIS STAY ORDER IS NONPRECEDENTIAL[2]

Hampton Dellinger, Esquire, Washington, D.C., for the petitioner.

Daniel Rattray, Esquire, Winston Salem, North Carolina, for the agency.

Diane Tardiff, Bedford, Massachusetts, for the agency.

John Doe, pro se.

### BEFORE

Raymond A. Limon, Member

---

[1] I find it appropriate to grant the relator's request for anonymity in this matter. Accordingly, the matter has been recaptioned as "John Doe."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

## ORDER ON STAY REQUEST

Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay the probationary terminations of six former Federal employees (the relators), including the above-captioned former employee/relator, for 45 days while OSC further investigates their complaints.[3]  For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

On February 21, 2025, OSC filed six stay requests, including the instant request. *Special Counsel ex rel. John Doe v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-25-0019-U-1, Stay Request File (SRF), Tab 1.  In the stay requests, OSC asserts that it has reasonable grounds to believe that the named agencies engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) by terminating the relators in violation of the Federal laws and regulations governing reductions-in-force (RIFs) and probationary terminations. *Id.* at 5.

OSC alleges that, between February 12 and February 14, 2025, the agencies terminated the six relators, all of whom were probationary employees, from Federal service.  *Id.* at 6, 16. OSC asserts that the probationary terminations occurred concurrently with a significant number of other Federal employee terminations. *Id.* at 6. OSC avers that the language in each of the six termination notices was "quite similar" and did not address any specific issues with the relators' performance or conduct. *Id.*  In each stay request, OSC summarizes the circumstances surrounding the termination of the six relators.  *Id.* at 7-11. These summaries indicate that none of the six relators had any noted performance deficiencies.[4]  *Id.*  With its stay request, OSC provides copies of the six

---

[3] The stay requests pertaining to the five other former employees/relators have been separately docketed.

[4] For example, one relator, a 100% disabled veteran, was terminated from his position on the same day that his supervisor had commended him for his "willingness to go

termination letters and statements from the relators made under penalty of perjury attesting to the circumstances surrounding each of the terminations. *Id.* at 26-65.

## ANALYSIS

Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC "may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if [OSC] determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice." Such a request "shall" be granted "unless the [Board] member determines that, under the facts and circumstances involved, such a stay would not be appropriate." 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *E.g.*, *Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010). Deference is given to OSC's initial determination, and a stay will be denied only when the asserted facts and circumstances appear to make the stay request inherently unreasonable.[5] *E.g.*, *Special Counsel v. Department of Veterans Affairs*, 50 M.S.P.R. 229, 231 (1991).

At issue in the instant stay requests is 5 U.S.C. § 2302(b)(12), which provides that it is a prohibited personnel practice to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." 5 U.S.C. § 2301, in turn, enumerates

---

above and beyond." SRF, Tab 1 at 7, 26-29.

[5] In contrast, a court issues a temporary restraining order, followed by a preliminary injunction, only in "extraordinary" circumstances and not as a matter of right. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); *see also* Fed. R. Civ. P. 65 (authorizing courts to issue temporary restraining orders and preliminary injunctions).

nine merit system principles for Federal personnel management.    5 U.S.C. § 2301(b)(1)-(9).    Thus, to establish that an agency's action constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(12), the following three factors must be met:  (1) the action constitutes a "personnel action" as defined in 5 U.S.C. § 2302(a); (2) the action violates a law, rule, or regulation; and (3) the violated law, rule, or regulation is one that implements or directly concerns the merit system principles.    *See Special Counsel v. Harvey*, 28 M.S.P.R. 595, 599-600 (1984), *rev'd on other grounds sub nom.*, *Harvey v. Merit Systems Protection Board*, 802 F.2d 537 (D.C. Cir. 1986).[6]

Here, OSC states that the personnel actions at issue, i.e., the probationary terminations, violate the following laws and regulations governing RIFs and probationary terminations:  (1) 5 U.S.C. § 3502; (2) 5 C.F.R. part 351; and (3) 5 C.F.R. § 315.801 et seq.    SRF, Tab 1 at 12-13.    OSC asserts that the identified statute and regulations concern five of the nine merit system principles. *Id.* at 13 (citing 5 U.S.C. § 2301(b)(1), (2), (5), (6), (8)(A)).    These five identified principles are as follows:

- Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

- All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

---

[6] The Board's decision in *Harvey*, 28 M.S.P.R. at 599, references section 2302(b)(11). The Veterans Employment Opportunities Act of 1998 added a new prohibited personnel practice at 5 U.S.C. § 2302(b)(11), resulting in the redesignation of the former (b)(11) to (b)(12). *Blount v. Office of Personnel Management*, 87 M.S.P.R. 87, ¶ 2 n.2 (2000).

- The Federal work force should be used efficiently and effectively.

- Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

- Employees should be—

  (A) protected against arbitrary action, personal favoritism, or coercion for partisan political purposes.

According to OSC, the available evidence indicates that the agencies improperly used the relators' probationary status to accomplish RIFs without affording them the substantive rights and due process to which they are entitled during the same. SRF, Tab 1 at 13. OSC asserts that official directives, public statements, and the relators' termination notices signal that the relators were terminated not because they failed to meet expectations during their trial periods, but rather because of a purported lack of work, shortage of funds, and reorganization—reasons that require the use of RIF procedures. *Id.* at 15-17. Accordingly, OSC avers that there are reasonable grounds to believe that the agencies improperly circumvented RIF regulations, which "provide for an orderly process of determining which employees are retained rather than separated and ensuring that those decisions are made according to merit-based factors." *Id.* at 17. Additionally, OSC asserts that two of the relators were in the competitive service; OSC avers that these two relators were therefore entitled to, but did not receive, written notice containing, at a minimum, "the agency's conclusions as to the inadequacies of [their] performance or conduct." *Id.* at 19 (quoting 5 C.F.R. § 315.804(a)).

Particularly considering the deference that must be afforded to OSC at this initial stage, *see supra* p. 3, I find that there are reasonable grounds to believe that each of the six agencies engaged in a prohibited personnel practice under 5 U.S.C. § 2302(b)(12). First, OSC reasonably alleges that each agency took a

personnel action under 5 U.S.C. § 2302(a) when it terminated these individuals. SRF, Tab 1 at 4, 12-13; *see Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 9 (recognizing that section 2302(a)(2)(A) defines "personnel action" as including, among other things, disciplinary or corrective actions, decisions regarding pay or benefits, and any other significant change in duties, responsibilities, or working conditions); *Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 10 (recognizing that a probationary termination is a personnel action under 5 U.S.C. § 2302(a)(2)(A)), *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005).

Second, OSC identifies laws and regulations related to RIFs that it believes the agencies violated. SRF, Tab 1 at 12-13. In this regard, OSC asserts that the probationary terminations violated 5 U.S.C. § 3502 and 5 C.F.R. part 351 because the agencies misused the relators' probationary status to effect de facto RIFs without following the requisite RIF laws and regulations.[7]  *Id.* at 13-18; *see Bielomaz v. Department of the Navy*, 86 M.S.P.R. 276, ¶ 11 (2000) (indicating that probationary employees are included in RIF procedures); *see also Coleman v. Federal Deposit Insurance Corporation*, 62 M.S.P.R. 187, 189-90 (1994) (holding that an appellant who lacked status to directly appeal his termination to the Board could nonetheless claim that his termination was part of an improper RIF).

Third, OSC argues that 5 U.S.C. § 3502 and 5 C.F.R. part 351 concern, among other merit system principles, 5 U.S.C. § 2301(b)(6) and 5 U.S.C. § 2301(b)(8)(A), which provide that employees should be retained on the basis of the adequacy of their performance, separated when they cannot or will not improve their performance to meet required standards, and protected against arbitrary action. SRF, Tab 1 at 13. The term "directly concerning" as used in 5 U.S.C. § 2302(b)(12) is undefined by statute or regulation, and the legislative

---

[7] As the legislative history of the Civil Service Reform Act explains, "[t]he probationary or trial period . . . is an extension of the examining process to determine an employee's ability to actually perform the duties of the position."  S. Rep. No. 95-969, at 45 (1978).

history of the Civil Service Reform Act of 1978 provides no clear explanation as to the intended meaning of the term. *See Harvey*, 28 M.S.P.R. at 602. Absent a distinct definition in a statute or regulation, the words in a statute are assumed to carry their "ordinary, contemporary, common meaning." *Dean v. Department of Agriculture*, 99 M.S.P.R. 533, ¶ 16 (2005) (citing *Perrin v. United States*, 444 U.S. 37, 42, (1979); *Union Pacific R.R. Co. v. Hall*, 91 U.S. 343, 347 (1875); *Butterbaugh v. Department of Justice*, 91 M.S.P.R. 490, ¶ 13 (2002), *rev'd on other grounds*, 336 F.3d 1332 (Fed. Cir. 2003)). The primary dictionary definition of the adverb "directly" is "in a direct manner." *Directly*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/directly (last visited Feb. 25, 2025); *see Maloney v. Executive Office of the President*, 2022 MSPB 26, ¶ 13 (explaining that, in interpreting the "ordinary, contemporary, common meaning" of words, the Board may refer to dictionary definitions). The primary dictionary definition of the verb "concern" is "to relate to: be about." *Concern*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/concern (last visited Feb. 25, 2025). Thus, the ordinary meaning of "directly concerning" is to relate to something without an intervening element. *Cf. United States v. Regan*, 221 F. Supp. 2d 666, 671 (E.D. Va. 2002) (applying dictionary definitions to interpret "directly concerned" in a separate statutory context and finding that the term means to relate to something in a straightforward manner).

   Applying this meaning, and affording OSC the requisite deference at this stage, *see supra* p. 3, I find it is reasonable to posit that 5 U.S.C. § 3502 and 5 C.F.R. part 351, which prescribe RIF procedures that take into account efficiency or performance ratings, directly concern the merit system principle set forth in 5 U.S.C. § 2301(b)(6) and 5 U.S.C. § 2301(b)(8)(A).[8] *See Wilburn v. Department of Transportation*, 757 F.2d 260, 262 (Fed. Cir. 1985) (explaining

---

[8] Because I find that OSC has made a sufficient showing regarding 5 U.S.C. § 2301(b)(6), (8)(A) vis-à-vis 5 U.S.C. § 3502 and 5 C.F.R. part 351, I need not address OSC's allegations regarding 5 C.F.R. § 315.801 et seq. or the three other identified merit system principles at this time.

that the RIF regulations reflect a congressional concern for fairness and limit an agency's discretion in filling a vacancy during a RIF); *cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Nut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (finding that an agency action would be arbitrary and capricious under the Administrative Procedure Act when, among other things, it has entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency). This finding is consistent with the Board's longstanding application of the well-established maxim that a remedial statute should be broadly construed in favor of those whom it was meant to protect. *Willingham v. Department of the Navy*, 118 M.S.P.R. 21, ¶ 14 (2012); *see Dean*, 99 M.S.P.R. 533, ¶ 19 (applying this maxim in interpreting the term "relating to" for purposes of the Veterans Employment Opportunities Act of 1998).

Considering the deference that should be afforded to OSC in the context of an initial stay request and the assertions made in the instant stay request, I find that there are reasonable grounds to believe that the above-captioned agency terminated the relator during the relator's probationary period in violation of 5 U.S.C. § 2302(b)(12).

### ORDER

Based on the foregoing, granting OSC's stay request is appropriate. Accordingly, a 45-day stay of the relator's probationary termination is GRANTED. The stay shall be in effect from February 25, 2025, through and including April 10, 2025. It is further ORDERED as follows:

(1)    During the pendency of this stay, the relator shall be placed in the position the relator held prior to the probationary termination;

(2)    The agency shall not effect any changes in the relator's duties or responsibilities that are inconsistent with the relator's salary or

grade level, or impose on the relator any requirement which is not required of other employees of comparable position, salary, or grade level;

(3)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)    Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before March 26, 2025; and

(5)    Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board on or before April 2, 2025.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.