# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JESSICA GOBER,<br>14262 Black Canyon Ln.<br>Conroe, TX 77384 | ) )<br>)<br>)<br>) | |
| TIFFANY HO,<br>12723 Landview Dr.<br>Manassas, VA 20112 | )<br>)<br>)<br>) | |
| BENZA KENDRICK-LITHO,<br>4271 Bar Harbor Pl.<br>Olney, MD 20832 | )<br>)<br>)<br>) | |
| JASON MALDONADO,<br>6277 Vista Santa Clara<br>San Diego, CA 92154 | )<br>)<br>)<br>) | |
| SEAN MCCLARY,<br>3900 Morton Dr.<br>Richmond, VA 23223 | )<br>)<br>)<br>) | |
| ANGUSTIA PECK,<br>13925 E. Silver Pine Trl.<br>Vail, AZ 85641 | )<br>)<br>)<br>) | |
| LEVI PRESTON,<br>2352 Yulan Walk<br>Bremerton, WA 98310 | )<br>)<br>)<br>) | |
| ANDREA SASSARD,<br>2827 28th St. NW<br>Washington, DC 20008 | )<br>)<br>)<br>) | |
| and | ) | |
| DEVEN TINES<br>2214 Cimmaron Dr.<br>Killeen, TX 76543 | )<br>)<br>)<br>) | |
| | ) | Case No.: 1:25-CV-00714 (RC) |
| On behalf of themselves, and all<br>similarly situated persons, | )<br>) | CLASS ACTION |
| | ) | |
| *Plaintiffs*, | ) | JURY TRIAL DEMANDED |

|  |  |
|---|---|
| | ) |
| v. | ) |
| | ) |
| DOUGLAS COLLINS, | ) |
| Secretary of the Department of | ) |
| Veterans Affairs | ) |
| | ) |
| ROBERT F. KENNEDY, JR., | ) |
| Secretary of the Department of Health | ) |
| and Human Services, | ) |
| | ) |
| SCOTT BESSENT, | ) |
| Secretary of the Department | ) |
| of the Treasury | ) |
| | ) |
| HOWARD LUTNICK, | ) |
| Secretary of the Department | ) |
| of Commerce | ) |
| | ) |
| CARLOS DEL TORO | ) |
| Secretary of the Navy | ) |
| | ) |
| STEPHEN EHIKIAN, | ) |
| Acting Director of | ) |
| The Government Services Administration | ) |
| | ) |
| and | ) |
| | ) |
| CHARLES EZELL, | ) |
| Acting Director of the Office of | ) |
| Personnel Management | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| Serve: | ) |
| Executive Office for the United | ) |
| States Attorney | ) |
| Civil Process Clerk | ) |
| 601 D St. NW | ) |
| Room 2242 | ) |
| Washington, DC 20530-0001 | ) |
| | ) |
| United States Department of Justice | ) |
| 950 Pennsylvania Avenue NW | ) |
| Washington, DC 20530-0001 | ) |
| | ) |

Department of Veterans Affairs            )
Office of the General Counsel             )
810 Vermont Avenue, NW                    )
Washington, DC 20420                      )
                                          )
Department of the Treasury                )
Office of the General Counsel             )
1500 Pennsylvania Ave. NW                 )
Washington, DC 20220                      )
                                          )
Department of Commerce                    )
Office of the General Counsel             )
1401 Constitution Ave. NW                 )
Washington, DC 20230                      )
                                          )
Department of Health and Human           )
Services,                                 )
Office of the General Counsel             )
200 Independence Ave. SW                  )
Washington, DC 20201                      )
                                          )
Government Services Administration        )
Office of the General Counsel             )
1800 F St. NW                             )
Washington, DC 20405                      )
                                          )
Department of Defense                     )
Office of the General Counsel             )
1000 Navy Pentagon                        )
Room 5532                                 )
Washington, DC 20350                      )
                                          )
Office of Personnel Management            )
Office of the Legal and Legislative Affairs )
1900 E St. NW                             )
Room 6400                                 )
Washington, DC 20415-1100                 )
_____)

## FIRST AMENDED CLASS ACTION COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, on their own behalf, and on behalf of the class of similarly situated federal

probationary employees of the Department of Veterans Affairs, Department of the Treasury,

Department of Commerce, Department of Health and Human Services, Department of the Navy and the Government Services Administration (hereinafter "the Defendant Agencies"), bring suit in this Court to obtain injunctive and declaratory relief against the Defendant Agencies listed herein for violation of Plaintiffs' Fifth Amendment Constitutional due process rights.  They rely on the Administrative Procedures Act, 5 U.S.C. § 706(2) *et seq.* to assert that this Court has the power to grant them relief, and state as follows:

## NATURE OF THE CASE

Plaintiffs herein bring suit to seek a remedy for what they allege to be unlawful termination of their employment and baseless defamation and attack on their professional reputations by the Defendant Agencies.  Although they worked at different federal agencies, Plaintiffs all have the following in common:

1) They were federal employees still in a probationary period;

2) They all were informed that their employment was being summarily terminated between January 20, 2025, and the present;

3) All of them were terminated under the auspices of 5 U.S.C. §315.801 *et seq.*;

4) All assert that their termination was not justified by any documented performance or conduct deficiency;

5) All assert that their termination was the result of unlawful action by Defendants at the direction of the Interim Director of the Office of Personnel Management (hereinafter "OPM");

6) They all assert that either by direct statement, or by a refusal to correct public statements about purported performance deficiencies of Plaintiffs that warranted their

termination, Defendant Agencies made patently false statements about Plaintiffs that they knew or should have known to be untrue.

7) Plaintiffs all assert that Defendant Agencies adopted and ratified false and misleading statements that Plaintiffs were terminated due to poor performance.

8) Plaintiffs assert that the assertion that they were terminated due to poor performance was a patent lie, and they were all terminated due to an illegal order issued by the Office of Personnel Management.

9) Plaintiffs assert that they are suffering real and ongoing irreparable reputational damage and stigma as a result of Defendants' unlawful actions.

10) All Plaintiffs are seeking the same remedy from this Court:  an order returning them to actual work, and mandating that Defendant Agencies correct the public record to make clear that Plaintiffs were not terminated due to poor performance.

All Plaintiffs assert that their Fifth Amendment substantive and procedural due process rights have been violated by their summary terminations as part of what amounted to a *de facto* illegal reduction in force.  Other courts and administrative bodies have already concluded that they actions at issue here were unlawful.  In essence, every entity that has developed a record of what transpired with these terminations has concluded they were unlawful.

The problem is that despite these consistent conclusions about the illegality of these terminations of probationary employees, employees are not being returned to work.  Defendant Agencies are either refusing to comply, or are doing so as slowly as possible, placing returned employee in an administrative leave status, rather than actually putting them back to work.

More importantly however, all of the decisions that have been made so far about the illegality of Defendant Agencies' actions do not address the real and material harm that is being

done to individual employees.  This case differs from the others because it puts squarely before the Court the right of individuals to vindicate the Constitutional rights afforded to them when other fora are either unavailable to them due to clear statutory limitations to their power, or because referral to such bodies would be patently futile.  This case is the only one that actually asks the Court to directly address and attempt to rectify as much as possible the serious reputational damage that has been done to dedicated workers in an attempt to illegally fire thousands of employees to fulfill some warped campaign promise.

Thus, Plaintiffs file suit on their own behalf, and on behalf of those similarly situated, asking the Court to provide injunctive relief in the form of an ORDER, mandating that the Defendant Agencies ***immediately*** return Plaintiffs and the putative class to actual work status (i.e., not into an admin leave position), and importantly, also to ORDER Defendant Agencies to correct the public record and make clear that the class of probationary employees were not terminated due to poor performance as alleged in their termination letters and the voluminous public reporting on their terminations.

## **PARTIES**

1.      Plaintiffs are residents of multiple states, but all worked either locally or remotely via telework for agencies headquartered in the District of Columbia, or that do substantial business in the District of Columbia.

2.      Plaintiff Jessica Gober is a resident of the state of Texas, and was employed by the National Institute of Standards and Technology, which is part of the Commerce Department, from April of 2024 to March 10, 2025.

3.      Tiffany Ho is a resident of the Commonwealth of Virginia, and was employed by the Department of Veterans Affairs from December 30, 2024, to February 13, 2025.

4.    Benza Kendrick-Litho is a resident of Maryland, and was employed by the Department of Health and Human Services Centers for Medicare and Medicaid Services from September 10, 2025, to February 15, 2025.

5.    Jason Maldonado is a resident of California, and was employed by the Internal Revenue Service Criminal Investigations unit from September 9, 2024, to February 20, 2025.

6.    Sean McClary is a resident of the Commonwealth of Virginia, and was employed in the Government Services Administration from July 28, 2024, to February 14, 2025.

7.    Angustia Peck is a resident of Arizona, and was employed by the Veterans Administration from February 25, 2024, to February 24, 2025.

8.    Plaintiff Levi Preston is a resident of the State of Washington, and was employed by the Department of the Navy from March 11, 2024 to March 7, 2024.

9.    Andrea Sassard is a resident of the District of Columbia, and was employed by the National Oceanic and Atmospheric Administration under the Department of Commerce from September 9, 2024, to February 15, 2025.

10.    Deven Tines is a resident of Texas, and was employed the National Institutes of Health in the Department of Health and Human Services from December 3, 2023, until February 15, 2025.

11.    None of the Plaintiffs are public figures, and no member of the putative class is a public figure, as that term is defined in case law regarding defamation claims.

12.    Defendants are the cabinet secretaries or leaders of administrative departments of the federal government of the United States of America.

## JURISDICTION & VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under the Constitution and laws of the United States.  This Court also has

jurisdiction under 28 U.S.C. § 1361 because Plaintiffs seeks a declaratory order to compel officers and employees of the United States and its agencies to perform duties owed to Plaintiffs and required under law.

14.     Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Plaintiffs to relief when Defendant acted unconstitutionally and beyond statutory authority.

15.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

## ADMINISTRATIVE EXHAUSTION

16.     According to 5 U.S.C §315.801 *et seq.*, Plaintiffs do not have appeal rights directly to the MSPB under the Civil Service Reform Act unless their claims fit into one of three categories: a) they assert that their terminations were the result of their marital status; b) they assert their terminations were politically partisan; or c) they assert that their terminations related to conduct or matters that occurred prior to their appointment.

17.     Plaintiffs could file claims to the Office of Special Counsel alleging that their terminations constitute "prohibited personnel actions."

18.     However, the OSC has already opined on the matter, and has already determined that terminations identical to the ones at bar were prohibited personnel practices. *See* EXHIBIT 1.

19.     On or about February 21, 2025, the OSC referred the matter to the MSPB, asking that the MSPB order the relator complainants back to work for 45-days pending the adjudication of the underlying matter.

20.     On or about February 25, 2025, the MSPB granted the request from the OSC to return affected employees to work for at least 45-days, while the MSPB fully considers whether the terminations were prohibited personnel practices. *See e.g.,* EXHIBIT 2.

21.     However, MSPB determined that it could only order back to work the John Doe relators, and not the other probationary employees who were similarly affected.

22.     MSPB also ordered employees of the Department of Agriculture to be returned to work. On information and belief, the USDA has not yet reinstated all of the terminated probationary employees. And as of the date of this filing, on information and belief, Defendant Agencies have not returned all terminated employees to actual work.

23.     All Plaintiffs have attempted to exhaust administrative remedies by filing claims with both the OSC and the MSPB, but have been stymied in doing so because they have not received SF 50s and have not received the proper documentation of their terminations, which is required by the MSPB to process a complaint.

24.     Furthermore, at various times, MSPB's website has been down, or has sent a message that it is no longer accepting complaints.

25.     To date, MSPB has received well in excess of 5,000 complaints, including a massive class action complaint filed by multiple law firms. *See* EXHIBIT 3.

26.     On information and belief, the MSPB has taken no action on the class action, and has been so inundated with claims, it has issued only a handful of actions, and has only ordered approximately 6 employees back to work pending full review of their claims, and has ordered the USDA to return its employees back to work.

27.     On information and belief, USDA has defied the MSPB order, and rather than returning employees to the *status quo ante*, has placed them in a paid administrative leave status, which signals an unwillingness to comply with the MSPB.

28.     Plaintiffs further assert that if the White House is successful in removing one of the MSPB Board members, the Board will not have a quorum, and will not be able to rule on the

ever-growing backlog of complaints (to the extent it has any jurisdiction or authority to order

probationary employees back to work at all). *See* Reuters News Service, "*U.S. Federal Workers*

*hit Back at Trump Mass Firings with Class Action Complaints*," by Daniel Wiessner, March 6,

2025:

> If [MSPB Board Member] Harris is ultimately removed, the board will not have a
> quorum of at least two members that can decide workers' appeals. The agency's
> resources are also likely to be strained by an influx of new cases. More than 4,800
> appeals were filed between the week Trump took office and March 1, according to
> the board.

*Id.* EXHIBIT 4.

29.    Finally and most importantly, Plaintiffs assert that they are not obligated to

administratively exhaust constitutional claims. *See Carr v. Saul*, 593 U.S. 83 (2021); *Turk v.

Commissioner of Social Security*, 1:20-CV-02157-JRA, at *17 (N.D. Ohio Dec. 23, 2021) ("[a]

claimant does not need to exhaust a constitutional claim at the administrative level, but may first

present such a claim at the district court level.").

### FACTS RELEVANT TO ALL PLAINTIFFS
### AND THE PUTATIVE CLASS

30.    For reasons not material here, Plaintiffs were all considered "probationary" employees up

until and on the date that they received notice of termination from their respective federal jobs.

31.    None of the Plaintiffs, and none of the persons they seek to represent, are "public figures"

as that term is defined in applicable case law on defamation.

32.    All Plaintiffs assert that there was never any documented negative feedback or allegation

of poor performance or poor conduct made about them by their supervisors or upper management.

33.    All Plaintiffs assert that their termination letters did not identify any specific performance

deficiency or example of poor conduct.

34.    All Plaintiffs assert that the accusation that they were poor performers is defamatory, paints them in a negative light, calls into question their dedication, productivity, comportment focus and reliability, and would potentially sway a future employer not to hire them.

35.    All Plaintiffs assert that by failing to identify in writing any specific basis for an assertion of poor performance or poor conduct, their terminations violated due process rights articulated in 5 U.S.C. §315.13.804.

36.    All Plaintiffs assert that the accusation that their performance was unsatisfactory, or not in the public interest, is both objectively false and defamatory.

37.    On or about February 12, 2025, CNN reported that the widespread terminations of probationary employees were taking place.  In the article about these terminations, it was reported that: "However, OPM has advised agencies that they do not have to cull all probationary workers but should focus on those who have been underperforming.  CBS News first reported the advisory."

38.    On or about 4:30 pm on February 13, 2025, the Federal News Service published an article that specifically references he Journalist Jory Heckman having spoken to an "OPM Spokesperson" about the ensuing terminations, and made the representation that the agencies were given discretion to select which employees to terminate based on poor performance.  *See* EXHIBIT 5.

39.    The statement from the OPM Spokesperson that was published in the article by Mr. Heckman was published ***before*** most of the employees received notice of their terminations on February 13 and 14.

40.    On or about February 13, 2025, the publication Government Executive, published an article entitled "OPM Fires its own Probationary Staff."  *See* EXHIBIT 6.  *Inter alia*, the article reported: "Earlier this week, OPM convened a call with federal agencies' general counsels and instructed

them not to pursue widespread firings of probationary period workers.  Instead, OPM said, they should terminate only such workers that they have deemed poor performers." *See id.*

41.    On or about February 13, 2025, CNN reported the termination of probationary employees also highlighting that the terminations focused on employees who were underperforming.  *See* EXHIBIT 7.

42.    On or about February 14, 2025, CNN reported that the OPM's direction to agencies emphasized terminations of probationary employees who were deemed poor performers.  *See* EXHIBIT 8.

43.    The clear implication of these articles is that Plaintiffs were chosen for termination due to poor performance.

44.    Plaintiffs assert that the information of what guidance was being given to agencies about terminating probationary employees was planted by Defendant Agencies via OPM Spokespersons and sources in order to make the terminations appear justified.

45.    On information and belief, staff at OPM also provided information to CNN journalists that appeared in articles written before Plaintiffs were terminated.

46.    These statements set the stage for, and created a framework in which the public would view Plaintiffs' terminations as justified.

47.    These news outlets, particularly CNN, have massive reach that created a serious and extremely detrimental impact on the reputations of employees who were terminated in accordance with that now publicly viewed OPM directive.

48.    The allegation that Plaintiffs were selected for termination due to poor performance was further adopted and ratified in the language of their termination letters.

49.    The allegations that Plaintiffs were selected for termination due to poor performance was ratified and adopted by White House Spokesperson Anna Kelly on or about February 20, 2025, when she was directly confronted with the fact that many of the people terminated appeared to be strong performers.  *See* EXHIBIT 9.

50.    Rather than clarifying that the employees in question were not poor performers, she is quoted as saying that their presence in the government was wasteful.  *See id.*

51.    Ms. Kelly was given a direct opportunity to admit that Plaintiffs were not poor performers, and declined to rescind or disavow in any way the defamatory statement about terminated probationary employees.

52.    On or about February 25, 2025, Congresswoman Marjorie Taylor Greene, a well-known ally of the Trump administration, while speaking in her official capacity, assert that the employees who had just been fired were "not worthy" of their government paychecks, assertively defending the terminations at issue because the terminated employees were essentially malingerers who did nothing to earn their pay.  *See* EXHIBIT 10.

53.    At no time did any spokesperson from the Defendant Agencies or the administration correct the record or contradict Ms. Taylor Greene, despite the wide dissemination of her comments.

54.    In the Northern District of California case, the Office of Personnel Management offered the sworn declaration of Charles Ezell, in which he alleged that OPM did not order mass firings of probationary employees, and instead, simply gave guidance to agencies so that the agencies would identify poor performers for termination.  *See American Federation of Government Employees, AFL-CIO, et al. v. United States Office of Personnel Management, et al.*, Case No., C 25-01780 WHA (N.D. Ca.).  *See* EXHIBIT 11.

55.    When Judge Alsup of the Northern District of California ordered Mr. Ezell to appear in person to answer questions about his declaration, OPM refused to produce him as a witness and withdrew his declaration.

56.    Plaintiffs assert that this withdrawal of a sworn declaration is further evidence that the allegations within the declaration were false.

57.    Plaintiffs assert that the culmination of the OPM spokesperson's statement to Journalist Jory Heckman, the leaked letters to major media outlets, the comments from White House spokespersons, and the statement by Ms. Taylor Greene, and the declaration of Mr. Ezell created a context in which Plaintiffs would be assumed to be poor performers simply because they were part of the cadre of employees who were terminated at that time.

58.    These public statements, in juxtaposition with the patently false statements in Plaintiffs' termination letters, painted Plaintiffs in a false light.

59.    Defendant Agencies benefited from the false premise their words and actions created about Plaintiffs by obtaining some sort of political and legal cover for what would otherwise be patently illegal actions.

60.    Thankfully Judge Alsup concluded that the government's assertion that the probationary employees were terminated due to poor performance was specious, and that the facts establish that OPM ordered agencies to terminate probationary employees while using false and defamatory justifications for such actions. *See* EXHIBIT 12, pp. 10-11.

61.    In addition to the decision by the Northern District of California, the District Court for the District of Maryland also made factual findings that the claim that Defendants' assertion that terminated probationary employees were poor performers was factually false, and was a ruse for

circumventing reduction in force regulations. *See State of Maryland et al. v. United States Department of Agriculture, et al.*, Case No. 1:25-CV-00748 (D. Md.), EXHIBIT 13, pp. 33-34.

62.    Plaintiffs allege that Defendants were very aware that public reporting on the terminations of probationary employees was stating or clearly implying that Plaintiffs were selected for termination due to poor performance.

63.    Plaintiffs assert that it is factually false and patently defamatory that Plaintiffs were selected for termination due to poor performance.

64.    Plaintiffs assert that Defendant Agencies knew and were aware that the allegations that Plaintiffs were terminated for poor performance were not true at the time they were made, were not true when such statements were sent to Plaintiffs, and were not true when spokespersons for Defendant Agencies were confronted by the media about the firings.

65.    At this time, two different Federal District Courts have ordered Defendants and some other agencies to return employees back to work.  To date, Defendants have refused to comply with said orders.

66.    Defendants in the AFGE action filed an interlocutory appeal seeking a stay of Judge Alsup's Order on the preliminary injunction that mandated return to work of all affected employees.  The Ninth Circuit Court of Appeals denied the request for a stay.  And yet, Defendants continue to defy the Courts, with some agencies returning employees to an administrative leave status, but not to the status *quo ante* as required by both Courts.  EXHIBIT 14.

67.    Defendants had multiple opportunities to correct the record with regards to Plaintiffs' performance to CNN and many other news agencies who reported on the matter, and refused to do so, thus allowing false and defamatory claims to go unchecked.

68.     All Plaintiffs assert that they are suffering ongoing and irreparable reputational harm as a result of Defendants' unjustified and unlawful action.

69.     The reputational harm that Plaintiffs are enduring, coupled with the very serious harm of loss of pay, loss of benefits, loss of training, and loss of job opportunities are the result of Defendants' unconstitutional acts.   The damage is dramatically affecting Plaintiffs' mental, physical and emotional wellbeing, as well as their ability to obtain new employment.

70.     Plaintiffs also assert that they are suffering from the irreparable harm of the stigma and shame associated with being terminated by the United States government for poor performance or conduct.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action on behalf of:

All probationary employees of the Defendant Agencies terminated between January 20, 2025, to the present that received a termination communication stating that termination was due to poor performance, poor conduct, or performance not in the public interest, without any evidence of said poor performance, poor conduct or performance not in the public interest.

72.     Class certification is appropriate under Fed. R. Civ. P. 23(a), (b)(1) and (b)(2), and alternatively, (b)(3).

73.     The Class satisfies the numerosity requirement because, upon information and belief, it is composed of more than 10,000 employees.   The number of class members is so large that joinder of all its members is impracticable.

74.     Common questions of law and fact include:

A.      Whether or not the Office of Personnel Management (hereinafter "OPM") ordered Defendant Agencies to fire probationary employees even if there was no record of poor performance or poor conduct;

B.      Whether, upon receiving that instruction from OPM, the Defendant Agencies terminated probationary employees who did not have any poor performance or poor

conduct, without considering performance or conduct issues for the terminated employees;

C.      Whether the letters written to probationary employees accused them of poor performance or poor conduct without any basis in fact or evidence, and without any detail providing basis for such terminations;

D.      Whether or not MSPB has the authority to order probationary employees back to work, when it does not have jurisdiction over the underlying claims;

E.      Whether Defendants' actions vis-à-vis Plaintiffs constituted a violation of their substantive and procedural due process rights;

F.      Whether Plaintiffs will be stigmatized by Defendants' actions in such a way that their due process rights have been violated;

G.      Whether Defendants' actions vis-a-vis Plaintiffs constituted prohibited personnel practices that violate the Administrative Procedures Act, and thus are no entitled to deference by this Court; and

H.      Whether Plaintiffs have suffered irreparable reputational harm and stigmatization as a result of Defendants' unlawful actions.

75.    Plaintiffs' claims are typical of the claims of the Class because they are subject to the same decision and motivation, derived directly from an unlawful directive from the OPM to their respective agencies.  Further, they have no interests that are antagonistic to the claims of the Class. They understand that this matter cannot be settled without the Court's approval.

76.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous representation of the Class.  Plaintiffs have hired adequate counsel in the Center for Employment Justice, whose lawyers collectively have decades of experience in litigating complex class actions.

77.    Plaintiffs' counsel have agreed to advance the cost of the litigation contingent on the outcome of this case, and understand that no fee will be awarded without the Court's approval.

78.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable, as the Plaintiff are located all

over the country, and would require substantial and costly duplication of effort. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

79.    This Class may be certified under Rule 23(b).

A.    23(b)(1).  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants, or (B) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

B.    23(b)(2).  The party opposing the Class has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole; or in the alternative

C.    23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter.

### CLAIMS FOR RELIEF

### COUNT I
*(Violation of the Fifth Amendment to the Constitution –*
*Due Process Violation – False Light and Per Se Defamation)*

80.    Plaintiffs reference and incorporate all of the allegations in the previous paragraphs as if fully restated herein.

81.     The Fifth Amendment to the Constitution protects against harms to a person's reputation caused by government actors, often referred to as "reputation plus" and "stigma plus" harms.

82.     Plaintiffs have a clearly defined interest in the maintenance of their reputations as professionals.

83.     Here, Plaintiffs were terminated under the auspices of their performance being poor.

84.     On or about February 13, 2025, Defendants via the OPM spokesperson, published a statement to Journalist Jory Heckman that the employees that were being fired were poor performers.

85.     In the days and weeks that followed, Defendants repeatedly represented that Plaintiffs were selected for termination due to underperformance.

86.     Plaintiffs asserts that this characterization of their performance is patently and demonstrably false.

87.     Plaintiffs assert that Defendants, via spokespersons for the White House, Congress and the OPM, made public statements that painted Plaintiffs in a false light, and that defamed their character.

88.     Plaintiffs assert that no person would abide a public persona or reputation of being a poor performer or a malingerer who was unworthy of the pay they earned, and thus the false statements made about them were *per se* defamatory.

89.     Plaintiffs have all suffered a material adverse action of a job loss, and direct damage to their reputations by Defendants' material and defamatory misrepresentation of their professional skills and performance.

90.     Plaintiffs assert that the reasons given for their terminations are pretext to hide an unlawful motive.

91.     Two separate federal District Courts have concluded that the reasons proffered by the government for its actions against Plaintiffs were false, without basis in fact, and were concocted to camouflage what was otherwise an illegally and improperly executed reduction in force.

92.     As a direct result and proximate cause of Defendants' violation of Plaintiffs' Constitutional due process rights, Plaintiffs have suffered reputational harm and stigma, and seeks a remedy from this Court that reinstates them to their previous employment.

93.     As a direct result and proximate cause of Defendants' violation of Plaintiffs' Constitutional due process rights, Plaintiffs have suffered reputational harm and stigma, and seeks a remedy from this Court that ORDERS Defendant Agencies to publicly admit and acknowledge that Plaintiffs were not terminated due to poor performance.

## COUNT II

*Violation of the Fifth Amendment to the Constitution –*
*Due Process Violation)*

94.     Plaintiffs reference and incorporate all of the allegations in the previous paragraphs as if fully restated herein.

95.     Defendants violated Plaintiffs' due process rights by terminating them without prior notice of performance deficiency, and without a right to respond to any claim that their performance was unsatisfactory.

96.     Defendant violated Plaintiffs' due process rights by violating the provisions of 5 C.F.R. § 315.803 and 5 C.F.R. §752.401.

97.     Two separate federal District Courts have concluded that the reasons proffered by the government for its actions against Plaintiffs were false, without basis in fact, and were concocted to camouflage what it otherwise an illegal reduction in force.

98.     As a direct result and proximate cause of Defendants' violation of Plaintiffs' Constitutional due process rights, Plaintiffs have suffered harm, and seeks a remedy from this Court that fully reinstates them to their previous employment.

99.     As a direct result and proximate cause of Defendants' violation of Plaintiffs' Constitutional due process rights, Plaintiffs have suffered harm, and seeks a remedy from this Court that ORDERS Defendant Agencies to correct the public record and acknowledge that Plaintiffs were not terminated due to poor performance.

## COUNT III

*(Violation of the Administrative Procedures Act 5 U.S.C. § 706(2))*

100.    Plaintiffs reference and incorporate all of the allegations in the previous paragraphs as if fully restated herein.

101.    Under the Administrative Procedures Act (hereinafter "APA"), a court shall "hold unlawful and set aside agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . contrary to constitutional right, power, privilege, or immunity . . . without observance of procedure required by law . . . [or] . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(B).

102.    Plaintiffs asserts that Defendants' characterization of their performance as "poor," and thus worthy of the severe sanction of termination was without basis in fact, and as such, qualifies as arbitrary and capricious.

103.    Defendants' failure to provide Plaintiff with any notice, let alone written notice, of any deficiencies in their performance, or any opportunity to respond to concerns about their performance, constituted arbitrary and capricious conduct, and directly violated applicable

regulations.

104.    Defendants' actions vis-à-vis Plaintiffs are sufficiently severe and outrageous to warrant this Court's intervention

105.    As a direct result and proximate cause of Defendants' violation of the APA, Plaintiffs have suffered harm, and seeks a remedy from this Court that fully reinstates them to their previous employment.

106.    Plaintiffs further seek an ORDER from this Court mandating that Defendants correct the public record to acknowledge that Plaintiffs were not selected for termination based on poor performance.

## COUNT IV

*(Plea for Writ of Mandamus under 28 U.S.C. §1361*
*--Plead in the alternative)*

107.    Plaintiffs reference and incorporate all of the allegations in the previous paragraphs as if fully restated herein.

108.    The provisions of 28 U.S.C. § 1361 provide a statutory basis for jurisdiction in cases seeking relief in the nature of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies.

109.    Defendants' actions, as set forth above, constitute plainly unlawful and unjustified actions.

110.    Defendants did not have the right to deprive Plaintiffs of any and all due process in terminating their employment.

111.    If no other remedy is available to Plaintiffs, they asks for the issuance of a Writ of Mandamus ordering Defendants to reinstate them to their previous positions and otherwise make them whole.

112.    Plaintiffs further seek an ORDER from this Court mandating that Defendants correct the

public record to reflect that Plaintiffs were not terminated due to poor or deficient performane.

## **JURY TRIAL DEMAND**

113.    Plaintiffs demand trial by jury for all claims so triable.


Respectfully submitted,

/s/Pamela M. Keith
Pamela M. Keith [Bar. No. 448421]
Scott M. Lempert [Bar. No. 1045184]
Raymond Gordineer [Bar. No. 90028057]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
slempert@centerforemploymentjustice.com
*Counsel for Plaintiffs*