**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JESSICA GOBER *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:25-CV-00714 |
| | ) | |
| v. | ) | |
| | ) | CLASS ACTION |
| DOUGLAS COLLINS, *et al.,* | ) | |
| | ) | JURY TRIAL DEMANDED |
| *Defendants*. | ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION**
**FOR A PRELIMINARY INJUNCTION**

Plaintiffs, Jessica Gober, Tiffany Ho, Benza Kendrick-Litho, Jason Maldonado, Sean McClary, Angustia Peck, Levi Preston, Andrea Sassard and Deven Tines, on their own behalf and on behalf of those similarly situated, by and through undersigned counsel, respectfully move for a Preliminary Injunction against Defendants, and state as follows:

As one of his political promises upon being inaugurated, Donald Trump ordered the Office of Personnel Management ( "OPM") to instruct most federal agencies to terminate some or all, of their probationary employees as a way of reducing overall headcount in the federal government. To achieve that goal, OMP instructed the agencies to notify probationary employees that their performance was unsatisfactory, and to use that excuse to terminate their employment. Unfortunately, the determination that these employees were poor performers was without any basis in fact.

Not long after the ill-conceived wave of hasty terminations was visited on the federal work force, the Office of Special Counsel ( "OSC") was asked to ascertain if the terminations of probationary employees constituted prohibited personnel practices.  In a carefully reasoned

1

decision, the OSC concluded that the terminations violated applicable reduction in force regulations and trespassed on the due process principles that protected the terminated employees. OSC then referred the case to the Merit Systems Protection Board ( "MSPB") for further consideration, and asked that the MSPB to issue a 45-day stay order returning employees to work while the MSPB considered the underlying merits of the terminations.

On or about February 25, 2025, the MSPB granted the requested stay and issued a series of decisions (one for each agency involved in the OSC case), ordering the OSC John Doe relator employees back to work until the MSPB could make a final determination about the propriety and legality of their terminations. The MSPB decisions apparently applied only to the relators, and not to all similarly situated complainants, and only one agency (the Department of Agriculture) was ordered to return its probationary employees to work.[1]

Despite this apparent disconnect, in its decision to grant the stay, the MSPB found that the complainants would likely succeed on the merits of asserting that their terminations were unlawful. Shortly after the decision from the MSPB, two federal court cases were also decided on preliminary injunction motions, *AFGE et al. v. United States Office of Personnel Management, et al.*, in the Northern District of California, and *State of Maryland et al. v. United States Department of Agriculture et al.*, in the District of Maryland. In both cases, the District judges concluded that the mass terminations were illegal (although for different reasons), and both courts issued injunctive relief mandating that employees be returned to work. Plaintiffs are aware that the injunctive return to work order from Judge Alsup of the Northern District of California was appealed to the Ninth

---

[1] Based on information on the USDA website, terminated employees have been returned to a pay status, but have not been returned to work.

Circuit Court of Appeals. The Ninth Circuit denied the request for a stay, and that order is now on appeal to the Supreme Court.

Accordingly, every court and administrative entity that has looked at the issue has concluded that the terminations were illegal. However, no Defendant has admitted the same, and none has corrected the public record about the reasons for Plaintiffs' terminations. And while there have been factual findings that establish that Defendant agencies did not engage in any analysis of Plaintiffs' work performance before deciding to terminate them, it is far from a final matter that Plaintiffs will ultimately prevail, particularly where they themselves have no voice in the litigation involving their employment.

This class action is not about whether Plaintiffs' terminations meet the definition of a RIF, or violated some statutory scheme involving the notice of states. This case is about blatant due process violations that clearly violate the Constitution of the United States. Plaintiffs in this case are asking the Court to determine whether or not, by relying on bad faith and defamatory allegations against Plaintiffs to justify their summary terminations, and by notifying the public that the employees fired were poor performers who failed to justify their continued employment, Defendants trespassed on the well established property right in one's good name and reputation.

While the decisions from the other courts and administrative bodies have established that Plaintiffs were denied due process, none has specifically ordered a remedy that mitigates the reputational damages and stigma endured by Plaintiffs. Not even the MSPB has done that, despite having the issue before it for more than a month. And it is not clear that MSPB even has the jurisdiction to provide Plaintiffs the remedy sought here, both because it has limited jurisdiction over probationary employee claims generally, and because it likely does not have the power to order the Defendant Agencies to correct the public record. Put simply, the broad-reaching CSRA

administrative scheme that can handle a range of claims for regular employees, including claims about reputational damages, is not available to probationary employees in the same way. That is why this Court is the proper forum to address Plaintiffs' reputational harms.

The attached Memorandum of Law carefully examines the four-part test for the issuance of a preliminary injunction to mitigate the damage being done to Plaintiffs by Defendants' unlawful conduct. Inasmuch as Defendants have not yet assigned counsel to this case, Plaintiffs aver that the Motion is opposed. For the reasons developed therein, Plaintiffs are entitled to the relief requested, and this Motion should be GRANTED.

Respectfully submitted

/s/Pamela M. Keith
Pamela M. Keith
Scott Lempert
Ray Gordineer
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
scottlempert@centerforemploymentjustice.com
raygordineer@centerforemploymentjustice.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JESSICA GOBER *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | CLASS ACTION |
| DOUGLAS COLLINS, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs, Jessica Gober, Tiffany Ho, Benza Kendrick-Litho, Jason Maldonado, Sean McClary, Angustia Peck, Levi Preston, Andrea Sassard and Deven Tines, on behalf of themselves and the putative class of all similarly situated probationary employees of the Departments of Veterans Affairs, Health and Human Services, Treasury, and Commerce, and the Government Services Administration ( "Defendant Agencies"), by and through undersigned counsel, respectfully move for a Preliminary Injunction, against Defendant Agencies and state as follows:

**INTRODUCTION**

Plaintiffs are all probationary employees who worked at their respective agencies until they were informed in writing that they were being terminated, ostensibly for poor performance or poor conduct. Plaintiffs seek to represent the Class of similarly situated terminated probationary employees at their respective agencies. Plaintiffs herein assert that the termination actions by Defendants violated their Constitutional due process rights pursuant to the Fifth Amendment to the Constitution. They further assert that this Court has jurisdiction to review their claims for the following reasons: 1) the comprehensive scheme of the CSRA does not include them as employees

or cover the claims asserted herein; 2) even if they have narrowly defined administrative remedies, exhaustion would be futile; 3) they do not have administrative exhaustion requirements for these claims; and 4) the Administrative Procedures Act provides this Court the right and ability to review any agency action that is arbitrary and capricious and to fashion an appropriate remedy.

Plaintiffs are entitled to injunctive relief if they can establish a likelihood of success on the merits, irreparable harm, that the balance of interests favors issuance of the injunction, and that issuing the injunction is in the public interest. For the reasons developed herein, Plaintiffs satisfy the four criteria to obtain preliminary injunctive relief from this Court. Their Motion is sound, and should be GRANTED in its entirety.

## <u>RELEVANT FACTS</u>

Plaintiffs, and the Class , have the following facts in common:

a)  they were all probationary employees at their respective federal agency;

b)  they were all summarily terminated between January 20, 2025, and the present;

c)  they were all terminated in accordance with 5 U.S.C. §315.803-806;

d)  they all claim that no specific performance failure or conduct deficiency was identified in their termination letters;

e)  they all assert that they were never informed or warned about any poor performance or unsatisfactory conduct prior to their termination;

f)  they all assert that any claim of poor performance or poor conduct is belied by clear admissible evidence to the contrary;

g)  they all assert that, on or about February 13, 2025, Defendant made public that the Defendant Agencies were terminating "only such workers that they have deemed to be

poor performers, as published in the Government Executive website.  *See* EXHIBITS 4-10 to the First Amended Complaint (hereinafter "FAC");

h)  they assert that the public representations that Plaintiffs were poor performers has been proved to be false in two ways: 1) it was not true that they were identified for termination due to poor performance, and 2) the Defendant Agencies were not given discretion, but rather were directed by OPM to fire all probationary employees.  *Cf.* EXHIBIT 11 to FAC with EXHIBITS 12 pp. 1-7 & EXHIBIT 13 pp. 33-37 to FAC;

i)  they all assert that on several occasions, Defendant Agencies, by and through administrative spokespersons, had the opportunity to correct the record about the basis for Plaintiffs' terminations, and declined to do so;

j)  they all assert that by either directly telling the media that Plaintiffs were poor performers, or by refusing to correct or clarify articles that made such a representation about Plaintiffs, Defendant Agencies adopted and ratified patently false and defamatory claims about Plaintiffs;

k)  they all assert that these false and defamatory statements were made in conjunction with, and in close temporal proximity to, their actual terminations, and that such terminations constituted the kind of action that triggers constitutional due process rights;

l)  they all assert that they are now suffering irreparable reputational and stigmatization harms as a direct and proximate cause of Defendant Agencies' claim that they were poor performers; and

m)  they all assert that money damages alone will not remedy the damage to their reputations and their ability to obtain future employment.

## <u>STANDARD OF REVIEW</u>

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *See Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs satisfy all four factors required for seeking a preliminary injunction.

The first factor is "[a] foundational requirement for obtaining preliminary injunctive relief." *Guedes v. Bur. of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *see also Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (highlighting first factor as the "most important factor"); *Zeynali v. Blinken*, 630 F. Supp. 3d 208, 212 (D.D.C. 2022).

Importantly, most courts in this jurisdiction evaluate the four preliminary injunction factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *See Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), at *5-6 (D.D.C. May 11, 2020) (citing *Davis v. Pension Benefit Guar. Corp*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). Though some courts have reasoned that the Supreme Court's decision in *Winter v. Natural Resources Defense Council* cast some doubt on this approach, *see Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) ("[T]he old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable." (internal quotation marks and citation omitted)), the D.C. Circuit has yet to actually adopt that position.

Therefore, absent a D.C. Circuit or Supreme Court decision overruling it, the sliding scale framework remains binding precedent that this court must follow. *See Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that the D.C. Circuit "has not yet decided whether *Winter* . . . is properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"); *United States v. Torres*, 115 F. 3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting *en banc*, or the Supreme Court, overrule it.").

## **ARGUMENT**

## I.    **THIS COURT HAS JURISDICTION**

### A.    **Probationary Employees Have Very Limited Administrative Remedies**

The claims in this case are being raised by persons who do not have the right to appeal the process around their terminations to the MSPB. As made clear in the MSPB's communication to complainants, under 5 U.S.C. §7511(s)(1)(A)(i), the definition of employee specifically excludes probationary employees. *See* EXHIBIT 1. There are very few exceptions to this exclusion, which are outlined in 5 U.S.C. §315.804. They are as follows: (1) if the probationary employee is alleging that the adverse action was due to their marital status; (2) if the probationary employee is alleging that the adverse action was due to their political affiliation or activity; and (3) if the probationary employee is alleging that the adverse action pertained to matters that arose prior to their appointment (such as matters in a background check).

If a probationary employee believes the adverse action was the result of unlawful discrimination, that employee may raise a claim at the MSPB or the EEOC. If a probationary employee believes the adverse action constituted a prohibited personnel practice, which could

include violation of rules and regulations, they may file a complaint with the Office of Special Counsel (hereinafter "OSC"). The OSC may, in turn, refer that matter to the MSPB for further action because the OSC itself does not have authority to order reinstatement or other remedies.

Therefore, unlike regular employees, probationary employees are not free to file claims that their terminations constituted prohibited personnel actions directly to the MSPB. The only exception to that is if the employees were terminated improperly as part of a RIF. *See Lowack v. Department of the Navy*, MSPB Docket No. DC-0752-97-0572-I-1. EXHIBIT 1. In a footnote in the *Lowack* case, the MSPB ruled that probationary employees may file a complaint with the MSPB alleging they were improperly chosen for termination as part of a RIF. *See id.*, p. 5 n. 16.

With respect to the terminations at issue, several parties have asserted that Defendant Agencies' actions constituted an illegal RIF, and at least two federal courts have concluded that such is the case in preliminary injunction proceedings. *See* EXHIBITS 12 p. 1-7 & 13 p. 33-37 to the FAC. However, those are not final orders, and importantly, Defendant Agencies have adamantly and consistently argued that the terminations did not constitute a RIF. *See id.* Consequently, it would be inconsistent and clearly contradictory (even if it does not amount to judicial estoppel), for Defendant Agencies to now argue to this Court that Plaintiffs should file at MSPB challenging their terminations as being part of a RIF.[2]

The guidance the MSPB provides employees about the limits of its jurisdiction could not be clearer. It states:

> If the agency terminates the individual for reasons arising ***during*** the

---

[2] Plaintiffs note that a class action complaint has been filed at the MSPB alleging that all terminated probationary employees were part of an illegal RIF. Defendants are opposing that action. Because of that action, MSPB is no longer taking any claims from individual probationary complainants about their terminations. Plaintiffs concede that the MSPB has jurisdiction to review a RIF complaint. It does not, however, have jurisdiction to hear any other complaint, such as the instant case.

probationary period, the individual is entitled to a written notice stating the basis and the effective date of the termination. 5 C.F.R. §315.804 However, the Board's jurisdiction over such a termination is limited to allegations that it was based on partisan political reasons or marital status. 5 C.F.R. § 315.806(b). In determining jurisdiction, the Board will consider only allegations of marital status or partisan political discrimination and may not decide whether the stated reasons why the agency terminated the appointment were correct.

So if, as is the case here, Probationary employees ***are not*** alleging that they were improperly selected for termination as part of a RIF, ***are not*** alleging they were terminated due to marital status, political affiliation, or matters from a background check, and ***are not*** alleging discrimination or retaliation, their only administrative avenue would be through the OSC, which as explained below, would be futile.

Many courts have cited the Congressional intent to give to the MSPB near total jurisdiction over the claims of federal workers. But no court is free to ignore the clear jurisdictional limitations Congress created in that scheme. It was specifically the intent of Congress for the MSPB ***not*** to take up claims of probationary employees challenging the harm done to them by federal action during their initial trial period. It is precisely because probationary employees are vulnerable in that way, that the administration chose to target them first for unjustified and defamatory terminations. Probationary employees were the proverbial low-hanging fruit. *See* EXHIBIT 5 to FAC, ("It is reprehensible to target recently hired federal employees – particularly those who have chosen to serve veterans — solely because they have less due process rights and employment protections than other employees," [Senator] Blumenthal said.")

Finally, the Court must take note of the fact that the MSPB is currently so overburdened, it is stymied in taking on new cases. In fact, the MSPB has indicated it is not taking cases from probationary employees until such time as it can ascertain if a class action on behalf of probationary employees should proceed. *See* EXHIBIT 2. As noted in EXHIBIT 4 to the FAC,

the sharp spike in cases at the MSPB has left the entity completely overwhelmed, having seen a spike of more than 4,500 complaints since February of this year, when it typically handles less than 200 complaints in a month.

Not only is the MSPB overwhelmed, but this administration has been extremely active in trying to interfere with the MSPB, including in its efforts to terminate the sole member appointed by a Democratic administration.  If the White House is successful in removing one of the MSPB Board members, the Board will not have a quorum, and will not be able to rule on the ever-growing backlog of complaints (to the extent it has any jurisdiction or authority to order probationary employees back to work at all).  *See Id.* Reuters News Service, "*U.S. Federal Workers hit Back at Trump Mass Firings with Class Action Complaints*," by Daniel Wiessner, March 6, 2025:

> If [MSPB Board Member] Harris is ultimately removed, the board will not have a quorum of at least two members that can decide workers' appeals. The agency's resources are also likely to be strained by an influx of new cases. More than 4,800 appeals were filed between the week Trump took office and March 1, according to the board.

*Id.*

### B.    Plaintiffs Should Not be Required to Seek Relief from the OSC

Courts have held that waiver of the administrative exhaustion requirement is appropriate in the few circumstances where the issue raised in the lawsuit [are] entirely collateral to the matter on appeal; or if the plaintiffs demonstrate that they face irreparable injury if the exhaustion requirement is enforced against them; or if it would be futile to require administrative exhaustion. *See Suarez v. Colvin*, 140 F. Supp. 3d 94, 99–100 (D.D.C. 2015) (citing *Barbour v. Soc. Sec. Admin.*, No. 12cv1049, 2012 WL 2572777, at *1 (D.D.C. June 26, 2012); *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008) (citing *Bowen v. City of New York*, 476 U.S. 467, 483–85 (1986)).

#### 1.    *OSC has Already Opined on the Matter at Issue*

In this case, Special Counsel Dellinger ( "SC Dellinger") has fully opined on the legality of the terminations at issue, and has asked MSPB to act accordingly.  *See* EXHIBIT 1 to the FAC. Although SC Dellinger addressed regulatory problems with what he perceived to be a reduction in force, his analysis and conclusion about the trespass on due process rights is both well-reasoned and complete:

> The Civil Service Reform Act ("CSRA") provides that individuals hired into the competitive service must serve a one-year probationary or trial period. 5 C.F.R. § 315.801- 802.  For these employees, the regulations promulgated by OPM state explicitly that agencies "*shall* utilize the probationary period as fully as possible *to determine the fitness of the employee* and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803 (emphasis added). In short, to terminate a probationary employee, an agency "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." *McGuffin v. SSA*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (citing *Shaw v. United States*, 622 F.2d 520, 223 (Ct. Cl.1980); *see also Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977).

> Where an employee's "work performance or conduct during [his probationary] period fails to demonstrate his fitness or his qualifications for continued employment," an agency may terminate the employee by notifying him "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a).  This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id*.

> Probationary employees have only limited rights to challenge personnel actions taken against them.  5 C.F.R. § 315.806.  However, while the threshold for terminating a probationary employee is significantly lower than for a tenured employee, it is not zero – probationary employees cannot be terminated "at will." Agencies must inform probationary employees of the specific reasons for their termination, which necessarily requires agencies to conduct an individualized assessment of their performance and conduct.  This requirement is not a simple bureaucratic technicality – compelling agencies to assess the specific fitness of each employee prior to terminating them ensures that outstanding employees are not arbitrarily lost and that terminations are truly in the best interests of the federal service and consistent with merit system principles. For these reasons, terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 *et seq*.

Sending Plaintiffs back to OSC to relitigate the same issue would be a waste of time. Since SC Dellinger is no longer in his role, he obviously cannot revisit the matter. *See Suarez, supra.* ("Furthermore, to invoke the futility ground for waiver successfully, the plaintiff must show that the agency evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue.") (citing *Randolph–Sheppard Vendors of Am. v. Weinberger,* 795 F.2d 90, 106 (D.C.Cir.1986) (citations and internal quotations omitted)).

### 2.    *Plaintiffs are Suffering Irreparable Reputational Harm That Requires Immediate Redress*

Despite SC Dellinger's findings, and despite the MSPB concurring in his assessment, and despite two federal courts ordering probationary employees back to work, such has not, in fact transpired. Defendant Agencies have been flatly defying court orders, and rather than returning employees to *status quo ante*, as ordered by the courts in *AFGE et al. v. United States Office of Personnel Management*, Case No. C 26-01780 WHA (see EXHIBIT 12 to the FAC), and in *State of Maryland et al. v. United States Department of Agriculture et al.*, Case No. JKB-25-0748, Defendant Agencies are returning employees to the pay roll, but not back to work. In fact, Defendants have placed employees in an "administrative leave" status, which further segregates them from their colleagues, gives them no meaningful work to do, and freezes them in a probationary status while they should be moving closer to permanent status with every passing day.

Moreover, every day that Plaintiffs are out of work and tarred with the accusation that they were poor performers with little value to the mission, is a day that their reputations are irreparably damaged. This fact is developed more fully below. So unlike in other cases, even recent cases, where the plaintiffs allege harm due to *ultra vires* unlawful acts by OPM, Plaintiffs come to this Court to seek a remedy for the one part of this hideous experience that they cannot take to the

MSPB, and that only this Court can remedy, which is the ongoing and irreparable harm to their good name, and the stigma that will likely hamper their ability to obtain new employment, particularly with the federal government. *See* EXHIBIT 3. "*Commendations, Cash Awards, Positive Reviews. Then they were fired for Poor Performance*," Sarah D. Wire, Riley Beggin, Terry Collins, Dinah Voyles Pulver and Jessica Guynn, USA TODAY, Feb. 27, 2025.

Context matters here. This Court must take note of the very public promises of this administration to cull the federal work force in the near future. Thus, regardless of what happens with respect to the administrative leave status, Plaintiffs will still be impaired in finding new employment if they are later terminated in a legitimate RIF. The stigma of having been deemed a poor performer remains unless there is some action by this Court to rectify the record about these dedicated workers.

### C.    There is no Requirement to Administratively Exhaust Constitutional Claims

Plaintiffs assert that they are not obligated to administratively exhaust constitutional claims. *See Carr v. Saul*, 593 U.S. 83 (2021); *Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984) ("[a]ppellants need not exhaust their administrative remedies before bringing their constitutional claim in District Court…."); *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006); *Turk v. Commissioner of Social Security*, 1:20-CV-02157-JRA, at *17 (N.D. Ohio Dec. 23, 2021) ("[a] claimant does not need to exhaust a constitutional claim at the administrative level, but may first present such a claim at the district court level."); *Toups v. Terrebonne Par. Consol. Gov't*, No. CV 17-1821, 2017 WL 3087921, at *2 (E.D. La. July 19, 2017) ("[c]onstitutional claims do not need to go through administrative review before being brought before a court).

In this matter, Plaintiffs allege only a constitutional claim based on their assertion that

Defendants irreparably harmed the well-established property interest in their good name and professional reputation without due process of law.  As established above, the MSPB has no jurisdiction over such a claim, and appealing to the OSC would be futile.

      **D.**      **The Administrative Procedures Act Gives This Court the Authority to Review Any Agency Decision**

Plaintiffs bring this action pursuant to the Administrative Procedures Act (hereinafter "APA") 5 U.S.C. § 706, alleging that the decisions of the Defendant Agencies with respect to their continued employment were arbitrary, capricious, without basis in fact, and manifestly unfair.  The APA provides that a reviewing court shall set aside any agency action that is arbitrary and capricious.  *See id.* "The decision whether to vacate depends on the seriousness of the order's deficiency . . . and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see also, e.g., Advocates for Highway and Auto Safety,* 429 F.3d 1136, 115  (D.C. Cir. 2005); *Ill. Pub. Telecomm. Ass'n v. FCC,* 123 F.3d 693, 693 (D.C. Cir. 1997); *Association of Battery Recyclers, Inc. v. EPA,* 208 F.3d 1047, 1061 (D.C. Cir. 2000); *American Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1084 (D.C. Cir. 2001); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010).

An agency action must be set aside if the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See Fed. Commc'ns Comm'n v. Nextwave Personal Commc'ns. Inc.,* 537 U.S. 293, 300 (2003) ""); *Sierra Club v. Van Antwerp*, 719 F. Supp. at 78.  In reviewing an agency's action, the court must engage in a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971).  However, while the Court's inquiry must be "searching and careful,"

the standard of review is also a highly deferential one; the agency's actions are "entitled to a presumption of regularity," and the court cannot "substitute its judgment for that of the agency." *Id.* at 415-16. *See also Fund for Animals v. Norton*, 294 F. Supp. 2d 92, 22 (D.D.C. 2003).

In *Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993), the District Court specifically took up the issue of whether or not an employee of the Department of Defense could sue under the Administrative Procedures Act alleging a violation of his Constitutional due process rights, and the Court concluded that he could. That holding is instructive here, particularly because Plaintiffs have no remedy at the MSPB. Plaintiffs raise their claims in this Court because they assert a violation of their constitutional rights, and because this Court is the only entity with the authority to decide constitutional matters for probationary employees.

The standard for such review is typically high, however, in this case, the termination decisions by the Defendant Agencies were completely devoid of any basis in fact, and thus were very much "arbitrary and capricious." Because the Defendant Agencies did not comply with their own procedures and regulations, the Court is not required to defer to their judgment about such actions. Additionally, because the Defendant Agencies' actions are causing immediate and irreparable reputational and stigmatization harms to Plaintiffs, Defendant Agencies have unlawfully trespassed on the Plaintiffs' rights to due process which this Court can, and must vindicate.

## II.    PLAINTIFFS HAVE A VERY STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

As stated above, if Plaintiffs have a particularly strong showing of a likelihood of success on the merits, such can somewhat mitigate the degree of irreparable harm they are required to demonstrate. For the reasons discussed below, Plaintiffs are very likely to succeed on the merits.

A.    **Plaintiffs' Due Process Rights Were Violated When Defendant Terminated Their Employment in Conjunction with Defaming Them**

1.    *Defendants Terminated Probationary Employees Without any Basis in Fact*

Defendant Agencies rely on 5 C.F.R.§§315.803-806, the regulations that apply to probationary employees, to justify Plaintiffs' terminations. Those provisions only permit termination of probationary employees for "unsatisfactory performance or conduct." *See* 5 C.F.R. §315.804. Section 803 requires that the probationary period be used "as fully as possible" to determine the fitness of the employee. *See* 5 C.F.R. §315.803 (a). During their probationary periods, Plaintiffs received no feedback or commentary suggesting that their performance or conduct was unsatisfactory. Moreover, none of the Plaintiffs' termination letters contained any specific allegations of poor performance or poor conduct. *See* EXHIBITS 5-12.

Indeed, there is simply no evidence that, before concluding that each Plaintiff's performance was unsatisfactory, Defendant Agencies spoke with their immediate supervisors concerning job performance.. Two different federal courts have made evidentiary findings that the Defendant Agencies did not actually consider the performance records of probationary employees when selecting them for termination. *See* EXHIBITS 12 pp. 1-7 and 13 pp. 33-37 to the FAC. This is contrary to 5 C.F.R. §315.804, which requires that the termination notice must explain why the employee is being terminated, and actually state the basis for the agency's conclusion as to inadequacies in an employee's performance or conduct. That did not happen with any of the Plaintiffs or the Class. *See* EXHIBITS 5-12.

2.    *Defendants Intentionally Circumvented Reduction in Force Procedures*

To the extent Defendant Agencies concluded that continued employment of Plaintiffs was not in the public interest, such should be determined by the Agency through the reduction in force

process, and not by a unilateral, sweeping, and fact-free conclusion that all probationary employees are *de facto* poor performers. It appears that the position of the Defendant Agencies is that the terminations were not part of a RIF, and as such, did not require the sixty (60) days' notice, and the sorting of employees into priority tiers as envisioned by 5 U.S.C. §351.201 *et seq*.

It is Congress, and to a fair degree the Cabinet Secretaries, who establish what tasks and activities of their agencies are in the "public interest," not employees. Plaintiffs' obligations were to execute the tasks they were given by their superiors to the best of their capacity, which is what they did. To the extent that the Defendant Agencies terminated Plaintiffs because of some perceived failure to make a policy showing about the importance of their work, such would be absurd. Again, if a reasoned decision was made that the functions Plaintiffs were executing were no longer needed, the appropriate actions would be to restructure their jobs, retrain them in some other function, or to execute a proper reduction in force.

Nothing in 5 C.F.R. §315.804 indicates that a probationary employee who was performing his or her job successfully could be terminated for a failure to make some showing that their duties were in the best interest of the public. That provision only allows for termination of probationary employees if their own performance and conduct was "inadequate," or "unsatisfactory," which is not the same thing as unnecessary or unjustified. Put simply, there is no record evidence that any of the Plaintiffs were identified or notified of any poor performance or conduct prior to their challenged terminations, and as such Defendant Agencies lacked any good faith basis to terminate their employment.

The Court must therefore turn its attention to whether or not terminations of employment based on patently false or conjured premises violates a federal employee's due process rights. Plaintiff asserts that they do. *See Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023) ("We

have previously "recognized the possibility of an action for deprivation of a liberty interest without due process where an employee is terminated.") (citing *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014)). Courts have recognized two theories of recovery: "reputation-plus" and "stigma or disability." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998).

### 3. *Defendants' Actions Constituted a Violation of Due Process*

A due process violation occurs when state action deprives a person of her life, liberty, or property interests without due process of law. *See Zinermon v. Burch*, 494 U.S. 113 (1990) (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). In order to have a property interest in a benefit, a person clearly must have more than an abstract need or desire and 'more than a unilateral expectation of it. She must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *Steinberg v. Gray*, 815 F. Supp. 2d 293, 301 (D.D.C. 2011).

In the FAC, Plaintiffs allege that their due process rights were violated under the both the "reputation plus" and "stigma plus" theories. A "reputation-plus" claim requires a plaintiff to identify an act of defamation made in "conjunction" with an adverse employment action. *O'Donnell*, 148 F.3d at 1140. ("[O]nly defamation that is '*accompanied* by a discharge from government employment…' is actionable.") (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)). A reputation-plus claim "rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired:

> For a defamation to give rise to a right to procedural due process, it is necessary — we need not say when it is sufficient — that the defamation be accompanied by a discharge from government employment or at least a demotion in rank and pay. The latter, more general category requires that the government either have formally deprived one of a legal right, such as the right to purchase liquor or to drive, or have so severely impaired one's ability to take advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-

> government employment, that the government can be said to have "foreclosed" one's ability to take advantage of it and thus extinguished the right.

*Mosrie v. Barry*, 718 F.2d at 1161.  *See also O'Donnell v. Barry*, 148 F.3d at 1140.

Such is clearly the case here.  Not only were Plaintiffs summarily terminated, but they were terminated under the auspices of poor or inadequate performance.  In other words, the defamatory statement (poor performance) was made directly in conjunction with the termination of employment.  *See O'Donnell v. Barry*, 148 F.3d at 1140 ("[d]efamation alone is not actionable under the due process clause, but that defamation "in the course of the termination of employment" is.") (citing *Paul v. Davis*, 424 U.S. 693, 710 (1976)).  The characterization of Plaintiffs' performance as poor or inadequate is particularly harmful because of the impact that being terminated by the government may have.

### 4.    *Plaintiffs Were Clearly Placed in a False Light and were Defamed by the Unfounded Allegations About Their Performance*

Under D.C. law, a plaintiff pleading defamation must allege: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023) (citing *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001); *accord Farah v. Esquire Mag.*, 736 F.3d 528, 533–34 (D.C. Cir. 2013).

As alleged in the FAC, on or about February 13, 2025, an OPM Spokesperson spoke directly to Journalist Jory Heckman, and stated that the probationary employees were selected based on poor performance, or words to that effect.  *See* EXHIBIT 5 to FAC; and ¶¶ 37-41.  That

statement was factually false and defamatory. The Spokesperson knew or should have known that the statement was untrue, and because Plaintiffs are not public figures, they do not need to allege or prove actual malice. A fully developed record will establish who that person was. But that statement, in conjunction with the actual wording of the termination letters that were clearly leaked to major news outlets before Plaintiffs even received them, and public statements from high profile government officials that the fired workers were not worthy of their jobs, created a massive public perception that Plaintiffs were the worst of a cadre of malingering workers. *See* EXHIBIT 10 to the FAC.

It is not debatable that a false allegation that a professional employee was a poor performer is defamatory and would be objectionable to the reasonable person. A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community. *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 625 (D.C. Cir. 2023). In this case, Plaintiffs allege that the statements in their termination letters, in conjunction with the public statements from the Defendants via official spokespersons for the administration, placed them in the false light of being poor performers. *See Moldea v. New York Times* Co., 15 F.3d 1137, 1140 (D.C. Cir.), *modified,* 22 F.3d 310 (D.C. Cir. 1994) ("In order to state a claim for false light defamation, a plaintiff need only allege that the defendant published untrue facts concerning the plaintiff that placed him in a false light that would be highly offensive to a reasonable person."). No reasonable professional would want it to be known they were terminated for poor performance, particularly when there could be innocuous reasons for their separation, such as a reduction in force. *Cf. Meyer Grp., Ltd. v. Rayborn*, 695 F. Supp. 3d 39, 68 (D.D.C. 2023) ("No reasonable juror could find that calling a person "retired" is as odious as

alleging that they perform poorly at their job or otherwise lack integrity in their profession.")
(citing *Farmer v. Lowe's Cos.*, 188 F. Supp. 2d 612, 616 (W.D.N.C. 2001)).

### 5. This Court does not owe Deference to the Agency Decisions in this Case

While probationary employees are not typically afforded job protections such as a pre-termination hearing, even probationary employees are entitled to be told what specific performance or conduct deficiency necessitated their terminations. *See* 5 C.F.R. §315.804. Defendant's failure to do even that calls into play the *Accardi* doctrine, which holds that "an agency must comply with its own regulations in effecting the removal of one of its employees." *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *See also Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (citing *Holden v. Finch*, 446 F.2d 1311, 1315 (D.C. Cir. 1971) (It is well-established under the *Accardi* doctrine that an agency must comply with its own regulations in effecting the removal of one of its employees.); *Fausto v. Gearan*, No. Civ. A. 93-1863, 1997 WL 540809, *11 (D.D.C. Aug. 21, 1997); *see also Padula v. Webster*, 822 F.2d 97, 99-100 (applying *Accardi* to hiring decision); *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) (holding that agencies must follow procedures "by which the interests of others are to be regulated").

While it may be true that courts will not void the result of the proceeding if the error was harmless (or equivalently, `non-prejudicial')." *Id.* (citing *Mazaleski v. Treusdell*, 562 F.2d 701, 719 (D.C. Cir. 1977)), it can hardly be argued in this case that the Agency's failure to articulate a single example of poor performance or poor conduct to which Plaintiffs could respond was "harmless." Indeed, the recent decision in *United States Office of the Special Counsel, ex rel Former Employee [redacted] v. Department of Veterans Affairs*, attached hereto as EXHIBIT 2 is particularly instructive and persuasive with respect to due process and regulatory violations by the

Agency in its summary terminations of probationary personnel. In ultimately requesting that the MSPB enter a stay of 45-days on all terminations, the Special Counsel determined that basic due process protections were violated. *See* EXHIBIT 1 to the FAC, pp. 16-17. The Office of the Special Counsel was well positioned to make such a determination, and while not binding on this Court, its reasoning is persuasive.

> **6.    *Plaintiffs' Have been Stigmatized in way that Harms Their Future Employment with the Government or any Private Employer***

In this instance, Plaintiffs specifically allege that Defendant Agencies' actions will cause them the type of stigma that ruins or significantly impacts their ability to obtain future employment. This concept was explored by the court in *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 153 (D.D.C. 2015). In that case, the court explained that:

> In contrast to the "reputation-plus" theory, the "stigma or disability" theory hinges not on "official *speech*, but on a continuing stigma or disability arising from official *action*." Such "stigma or disability" results when state action has the "broad effect of largely precluding [the employee] from pursuing her chosen career." The official action must have "the effect of seriously affecting, if not destroying a plaintiff's ability to pursue his chosen profession, or substantially reducing the value of his human capital."

*Id.* (internal quotation marks, alterations, and citations omitted) (citing *O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998)). *See also Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1506-07 (D.C. Cir. 1995).

Plaintiffs' declarations outline how the stigma of being fired from federal jobs will burden their ability to obtain new jobs. *See* EXHIBITS 5-12. The stigma of having been fired for poor performance when such was plainly not the case, will not only burden their ability to find gainful employment, it will also be something they will have to reveal if they seek to obtain new employment that requires references or a background check. No amount of money will fix the damage done to Plaintiffs' good names and reputations. That is why they ask this Court to

intercede to force Defendant Agencies to rescind terminations that were both unlawful and defamatory in nature.[3]  As held in *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994):

> Government action that has the effect of "seriously affect[ing], if not destroy[ing]" a plaintiff's ability to pursue his chosen profession, or "substantially reduc[ing] the value of his human capital," thus infringes a liberty interest.

*Id.* (internal citations omitted) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)).  *See also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995).  While the stigma-plus analysis applies to ascertaining whether the plaintiff has a justiciable due process right, it stands to reason that if a person has a constitutional right not to be incumbered by government action that creates that sort of stigma, such a stigma would also constitute an irreparable harm. [CITATIONS BELOW HERE?]

> **B.     Without the Court's Intercession, Plaintiffs Will Continue to Suffer Irreparable Harm**

Courts have found that reputational damage can constituted irreparable harm.  *See Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Ministries, Inc.*, Civil No. 16-cv-00647 (APM), at *5 (D.D.C. Aug. 25, 2016) ("[i]t is well-settled that "reputational injury can be used to establish irreparable harm in certain circumstances.") (citing *Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) (citations omitted); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2948.1 (3d ed.) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.").

---

[3] Plaintiffs note that other courts have ordered some federal agencies to rescind termination letters. Some agencies have complied with those orders, while others have not.  Several Plaintiffs have not had their termination letters rescinded.  Also, because the order from Judge Alsup is on appeal, Plaintiffs pursue this remedy on their own behalf, and assert a different legal predicate for their entitlement to relief.

Plaintiffs have already established the reputational and stigmatization harms that undergird their due process claims. Those same facts establish that they are suffering current and ongoing harm that cannot be remedied by monetary award. Even if Defendant Agencies eventually comply with orders from the other federal courts and return employees to their jobs, such does nothing to remedy the reputational damage that has been done to those who were terminated. Without some sort of public statement that Plaintiffs were not selected for termination due to poor performance, the stigma associated with their terminations will continue. That is why a public acknowledgement that the terminations did not involve a review of performance is required to set the public record straight. *See e.g.*, *Hawbecker v. Hall*, 276 F. Supp. 3d 681, 690 (W.D. Tex. 2017) ("Injunctive relief may be available under certain circumstances, such as the removing or correcting past defamatory statements that were already published"): *Kinney*, 443 S.W.3d at 92 (holding that an injunction requiring the removal of statements from a website was lawful).

Even though the traditional rule has been that the only relief for defamation is damages, the D.C. Circuit has recognized an exception to that rule when the statements are made by a government official:

> The usual rule is "that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Kukatush Mining Corp. v. SEC,* 198 F. Supp. 508, 510–11 (D.D.C. 1961) (dismissing slander claim that prayed for injunctive relief), *aff'd,* 309 F.2d 647 (D.C.Cir.1962); *see Leo Winter Associates, Inc. v. Department of Health and Human Services,* 497 F. Supp. 429 (D.D.C. 1980). However, "[u]nder certain circumstances, declaratory and injunctive relief may be obtained against defamatory statements by government officials." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289, 294 n. 16 (D.C. Cir. 1977) (*en banc*) (citing *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 139-40 (1951)), *cert. denied,* 438 U.S. 915 (1978).

(emphasis added). *See also Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) (citing *Kinney v. Barnes*, 443 S.W.3d 87, 101 (Tex. 2014) (We hold that, while a

permanent injunction requiring the removal of posted speech that has been adjudicated defamatory is not a prior restraint….").

*Joint Anti-Fascist Refugee Committee v. McGrath*, *supra*, involved the Attorney General creating and publishing a list of communist or communist sympathizing organizations, of which the plaintiff organization was one.  The court reached the following conclusion:

> These complaints do not raise the question of the personal liability of public officials for money damages caused by their ultra vires acts. They ask only for declaratory and injunctive relief striking the names of the designated organizations from the Attorney General's published list and, as far as practicable, correcting the public records.

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. at 139–40.  And Plaintiffs are unaware of any case at the MSPB or OSC in which a Defendant Agency was ordered to correct a public record that contained false statements about an employee.  That sort of remedy lies only within the broad remedial ambit of this Court.

### C.    The Balance of Equities Clearly Tips in Plaintiffs' Favor

Weighing the equities traditionally consists of an examination of three of the requirements for obtaining injunctive relief: the harm to the plaintiff if an injunction is not granted, the harm to others from the issuance of an injunction, and the public interest.  In any suit for injunctive relief, the balance of hardships may be tipped by the strength of the plaintiff's showing of a likelihood of success on the merits.  *See Federal Trade Com'n v. Weyerhaeuser Co.*, 665 F.2d 1072, 1093 (D.C. Cir. 1981).  As noted above, Plaintiffs have a very strong likelihood of success on the merits, most especially because of the OSC finding that terminations identical to the terminations of Plaintiffs were unlawful.

The record before the Court makes plain, and there will be no countervailing evidence, that Plaintiffs performed adequately, and whatever reason Defendant had for terminating their

employment, it was not due to their performance or conduct. Rather, it appears that Defendant attempted to achieve a political goal by circumventing applicable regulations related to reductions in force at federal agencies. Rather than engaging in a thoughtful and careful RIF process, Defendant fabricated lies about Plaintiffs (and the many other employees of the Class), to justify abrupt, unwarranted and unlawful actions.

Thus the scales of equity do not just tip in Plaintiffs' favor, they load only to one side, because there is no cognizable argument for a legitimate interest on the other side. Agency decisions are entitled to deference from the courts when an agency acts in concert with its own regulations and guidelines. That is not the case when, like here, the agency action is utterly devoid of any factual or legitimate basis. Such actions meet the definition of "arbitrary and capricious." In general, an agency decision will be considered arbitrary and capricious if:

> [T]he agency has [1] relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] ***offered an explanation for its decision that runs counter to the evidence before the agency***, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Simply put, "the agency must explain why it decided to act as it did," and the reason for the agency's decision must be "both rational and consistent with the authority delegated to it by Congress….

*Cayuga Nation v. United States*, 594 F. Supp. 3d 64, 72 (D.D.C. 2022) (citing *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010), and *Xcel Energy Servs. Inc. v. FERC*, 815 F.3d 947, 952 (D.C. Cir. 2016)) (emphasis added).

In this case, the decision to terminate Plaintiffs, ostensibly for poor performance, is completely belied by the fact that no actual examination of performance was made by any agency. Therefore, those termination decisions are entitled to no deference whatsoever, and in such instance, the interest of Defendant must yield to the interest of Plaintiffs in both their continued employment, and in their good name and positive professional reputation.

**D.** **The Strongest Public Interest Lies in Holding Defendant Agencies to the Rule of Law**

In evaluating whether or not to issue an injunction, courts have consistently held that there is a strong public interest in enforcing and upholding the rule of law. *See Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 902 F. Supp. 2d 61, 71 (D.D.C. 2012) ("The public has a vested interest in ensuring that Federal Agencies enforce laws enacted by Congress."). One court explained that:

> Public interest also lies in appropriate and reasoned enforcement of federal statutes. The public interest is not served to the extent [the agency] acted on the erroneous belief that it had the power and authority to level the marketplace among competitors. The public interest also is not served when the record fails to demonstrate some reasoned basis for an agency's enforcement position.

*Nalco Co. v. United States Envtl. Prot. Agency*, 786 F. Supp. 2d 177, 189 (D.D.C. 2011). *See also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, No. 17-cv-02000 (APM), at *27 (D.D.C. Feb. 4, 2019) ("[t]he public interest plainly favors injunctive relief.") (citing *Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015) ("Forcing federal agencies to comply with the law is undoubtedly in the public interest[.]").

In this instance, the public is not served by Defendant Agencies essentially defaming Plaintiffs and the Class by fabricating a justification for their summary termination. The public is best served when agencies act with deference to the law, treat their employees with fairness and equity, and abide by the regulations that constrain them.

Moreover, it cannot be disputed that Plaintiffs serve an important mission in providing services to the people of this nation. Defendant Agencies' haphazard and unjustified actions have caused massive confusion and harm to the people tasked with serving our nation. Defendant Agencies' actions were not well thought out, and were done to achieve a purpose that has nothing to do with achieving the mission that was contemplated, legislated and appropriated by Congress.

If there is indeed a need to reduce headcount at any Agency (which Plaintiffs in no way concede), Congress set out a regulatory scheme to achieve that end.  That scheme does not involve lying about the performance of dedicated federal workers to justify their summary termination. That approach has caused chaos at Defendant Agencies, and has damaged, rather than advanced their work, purpose and image.  In short, there is no public interest in permitting illogical and unlawful Agency actions to go unchallenged.  For these reasons, the public interest lies squarely with the issuance of injunctive relief.

## CONCLUSION

Plaintiffs come to this Court asking for its intercession to block a manifest injustice that will have irreparable, deep and long-lasting impacts on their employment and future career.  While Defendant Agencies are normally entitled to deference in the execution of their discretion, such deference is wholly inappropriate here.  The directives to terminate Plaintiffs did not come from the managers and supervisors with actual knowledge of their performance.  It came as the result of a political move, without any consideration of the regulatory parameters applicable even to probationary employees.  Defendant Agencies' termination of Plaintiffs and of the Class for poor performance was utterly unjustified, and was both defamatory and unlawful.  Plaintiffs have properly identified legitimate liberty interests that were incumbered without justification, thus depriving Plaintiffs of constitutional due process rights.

Plaintiffs have also established that the merits lie with them in all four components of the injunctive relief analysis, and thus that they are entitled to immediate relief from this Court to: a) void and rescind the termination letters issued to Plaintiffs alleging or implying that their performance was sufficiently poor to warrant termination; b)reinstate their employment ; and c) issue a public statement correcting the public record and clarifying that Plaintiffs were not

terminated due to poor performance.  While such a remedy may be unusual, so too are the current

circumstances in which the government took sweeping action against loyal employees without a

care for the consequences or impacts on Plaintiffs.  Defendant Agencies made a giant mess when

they acted without justification and publicly humiliated thousands of employees.  The proper

remedy is to make Plaintiffs whole, and in the interim, to clarify that performance had  nothing to

do with the terminations that took place.  Plaintiffs' motion is sound, well grounded in the law,

and either is, or can be sufficiently supported by a record before the Court.  It therefore should be

GRANTED.

Respectfully submitted,

/s/Pamela M. Keith
Pamela M. Keith
Scott Lempert
Raymond Gordineer
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
scottlempert@centerforemploymentjustice.com
raygordineer@centerforemploymentjustice.com
*Counsel for Plaintiffs*

**CERTIFICATION PURSTUANT TO RULE 7(m)**

Because no attorney has been assigned by Defendants to this case yet, Plaintiff was unable

to obtain Defendant's position on this Motion, and thus Plaintiffs represent to the Court that the

Motion is opposed.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 27, 2025, the foregoing Motion for a Preliminary Injunction

and Memorandum of Law in support thereof, was served by in-person service of process on:


Executive Office for the United
States Attorney
Civil Process Clerk
601 D St. NW
Room 2242
Washington, DC 20530-0001

United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Department of Veterans Affairs
Office of the General Counsel
810 Vermont Avenue, NW
Washington, DC 20420

Department of the Treasury
Office of the General Counsel
1500 Pennsylvania Ave. NW
Washington, DC 20220

Department of Commerce
Office of the General Counsel
1401 Constitution Ave. NW
Washington, DC 20230

Department of Health and Human
Services,
Office of the General Counsel
200 Independence Ave. SW
Washington, DC 20201

Government Services Administration
Office of the General Counsel
1800 F St. NW
Washington, DC 20405

Department of Defense
Office of the General Counsel

1000 Navy Pentagon
Room 5532
Washington, DC 20350

                                        /s/*Pamela M. Keith*
                                        Pamela M. Keith

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JESSICA GOBER *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COLLINS, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

**<u>PROPOSED ORDER</u>**

Whereas, Plaintiffs have moved this Court for Preliminary Injunctive Relief; and

Whereas, the Court has considered Plaintiffs' Motion and Memorandum of Law in Support thereof, Defendants' Opposition and the entire record in this matter, and

Whereas, this Court finds that Plaintiffs have met their burden in establishing their entitlement to injunctive relief,

The Court hereby voids the legal effect of all termination letters served on the Plaintiffs, and ORDERS Defendant to immediately reinstate Plaintiffs to their previous employment. The Court clarifies that return to work means return to the actual duties they had during the *status quo ante*, and not into some paid administrative status that keeps them segregated from their colleagues and any meaningful work;

The Court further ORDERS Defendant Agencies to correct the public record by issuing a statement via all channels they regularly use to disseminate information about their activities stating the following:

Upon an ORDER of the District Court for the District of Columbia, the [agency] states that the termination of federal probationary employees that took place between February 12, 2025, and the date of this statement, was directed by the Office of Personnel Management, and was executed without internal review of the employees' actual performance.   No assumption about the performance, productivity, or mission value of a probationary employee discharged as a result of that OPM order should be made based on the fact of their termination.   This agency/department has been ordered to return affected employees back to work, to correct their personal records and pay them back wages, and it will comply with that ORDER.

So ORDERED,


_____                                                _____

Date                                                         Judge Rudolph Contreras


Copies to:

       Attorneys of Record