UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JESSICA GOBER, *et al.*,

           Plaintiff,

    v.

DOUGLAS A. COLLINS,
Secretary of Veterans Affairs, *et al.*,

           Defendants.

Civil Action No. 25-0714 (RC)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

    I.    Likelihood of Success on the Merits ...................................................................... 6

        A.   Plaintiffs' Removals ................................................................................... 6

            1.    The Court Lacks Jurisdiction Because Plaintiffs
                Have Failed to Follow the CSRA's Scheme ........................................ 8

            2.    Plaintiffs Have No Property Interest as Probationary Employee ........ 10

        B.   Plaintiffs' "Reputation Plus" and "Stigma Plus" Theories Fail ................ 12

        C.   Plaintiffs' Mandamus Claim Fails. ........................................................... 15

    II.   Plaintiffs Have Failed to Demonstrate They Will Suffer Irreparable Harm ........ 15

    III.  The Balance of Equities and the Public Interest Factor Weigh Against
         Issuance of an Injunction. ...................................................................................... 19

    IV.  Any Relief Should Be Narrowly Tailored. ........................................................... 21

    V.   The Court Should Order Plaintiffs to Post Bond Pursuant to Rule 65(c). ............ 21

CONCLUSION .................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                                                          Page(s)

*Andrade v. Lauer*,
    729 F.2d 1475 (D.C. Cir. 1984) ........................................................................................ 9, 20

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500, (2006) ............................................................................................................. 9

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) .............................................................................................. 18

*Bante v. Merit Sys. Prot. Bd.*,
    966 F.2d 647 (Fed. Cir. 1992) ............................................................................................ 11

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ....................................................................................... 4, 16

*CityFed Fin. Corp. v. Off. of Thrift Superv.*,
    58 F.3d 738 (D.C. Cir. 1995) .............................................................................................. 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................................... 18

*Cox v. Sec'y of Lab.*,
    739 F. Supp. 28 (D.D.C. 1990) .......................................................................................... 15

*Damus v. Nielsen*,
    Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ............................... 4

*Dave v. D.C. Metro. Police Dep't.*,
    905 F. Supp. 2d 1 (D.D.C. 2012) ....................................................................................... 10

*Davis v. Pension Benefit Guaranty Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ........................................................................................... 4

*Dhiab v. Obama*,
    787 F.3d 563 (D.C. Cir. 2015) ........................................................................................... 15

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) ........................................................................................... 5

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ............................................................................................. 21

*Elgin v. Dep't of the Treasury,*
   567 U.S. 1 (2012) ................................................................................................ 6, 7, 8, 10

*Farris v. Rice,*
   453 F. Supp. 2d 76 (D.D.C. 2006) ....................................................................... 17

*Fornaro v. James,*
   416 F.3d 63 (D.C. Cir. 2005) ............................................................................... 6, 7

*Gas Co. v. Fed. Energy Regul. Comm'n,*
   758 F.2d 669 (D.C. Cir. 1985) ............................................................................. 16, 17

*Gilmore v. Int'l Union of Op. Eng'rs,*
   899 F. Supp. 652 (D.D.C. 1995) .......................................................................... 17

*Grosdidier v. Chairman, Broad. Bd. of Governors,*
   560 F.3d 495 (2009) ............................................................................................. 11

*Gulf Oil Corp. v. Brock,*
   778 F.2d 834 (D.C. Cir. 1985) ............................................................................. 21

*Hall v. Ford,*
   856 F.2d 255 (D.C. Cir. 1988) ............................................................................. 11

*Henke v. Dep't of Interior,*
   842 F. Supp. 2d 54 (D.D.C. 2012) ....................................................................... 16

*Hornsby v. Thompson,*
   Civ. A. No. 22-1472 (RC), 2023 WL 196185 (D.D.C. Jan. 17, 2023) .................. 9

*Hospitality Staffing Sols., LLC v. Reyes,*
   736 F. Supp. 2d 192 (D.D.C. 2010) ..................................................................... 4

*Hunt v. Dep't of Agriculture,*
   740 F. Supp. 2d 41 (D.D.C. 2010) ....................................................................... 8

*In re Cheney,*
   406 F.3d 723 (D.C. Cir. 2005) ............................................................................. 15

*Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Ministries Inc.,*
   Civ. A. No. 16-0647 (APM), 2016 WL 4487730 (D.D.C. Aug. 25, 2016) ............ 18

*Kartseva v. Dep't of State,*
   37 F.3d 1524 (D.C. Cir. 1994) ............................................................................. 13

2

*Ky. Dep't of Corr. v. Thompson*,
    490 U.S. 454 (1989) ........................................................................................... 10

*Langeman v. Garland*,
    88 F.4th 289 (D.C. Cir. 2023) ............................................................. 12, 13, 19

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ................................................................................ 4

*Martin v. United States*,
    271 F. Supp. 2d 38 (D.D.C. 2002) ..................................................................... 9

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
    255 F. Supp. 3d 48 (D.D.C. 2017) ................................................................... 15

*Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*,
    848 F.2d 1273 (D.C. Cir. 1988) .......................................................... 11, 12, 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................................... 4, 19

*Nurriddin v. Acosta*,
    327 F. Supp. 3d 147 (D.D.C. 2018) ................................................................... 9

*Orange v. District of Columbia*,
    59 F.3d 1267 (D.C. Cir. 1995) .................................................................... 13, 15

*Petritfrere v. Austin*,
    Civ. A. No. 22-1819 (RCL), 2023 WL 5348748 (D.D.C. Aug. 21, 2023) ............... 11

*Piroglu v. Coleman*,
    25 F.3d 1098 (D.C. Cir. 1994) ......................................................................... 10

*Privacy Info. Ctr. v. DOJ*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ....................................................................... 5

*Pursuing Am.'s Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) ........................................................................... 4

*Runkle v. Gonzales*,
    391 F. Supp. 2d 210 (D.D.C. 2005) ................................................................... 9

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................... 16, 17, 20

*Serono Labs, Inc. v. Shalala,*
     158 F.3d 1313 (D.C. Cir. 1998) ................................................................. 20

*Sherley v. Sebelius,*
     644 F.3d 388 (D.C. Cir. 2011) ..................................................................... 4

*Spadone v. McHugh,*
     842 F. Supp. 2d 295 (D.D.C. 2012) ........................................................... 16

*Steadman v. Governor, U.S. Soldiers' and Airmen's Home,*
     918 F.2d 963 (D.C. Cir. 1990) ..................................................................... 8

*United States v. Fausto,*
     484 U.S. 439 (1988) ...................................................................................... 7

*Univ. of Tex. v. Camenisch,*
     451 U.S. 390 (1981) ...................................................................................... 5

*Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n,*
     259 F.2d 921 (1958) .................................................................................... 17

*Veitch v. Danzig,*
     135 F. Supp. 2d 32 (D.D.C. 2001) ............................................................. 17

*Weaver v. United States Info. Agency,*
     87 F. 3d 1429 (D.C. Cir. 1996) ................................................................. 8, 9

*Weinberger v. Romero-Barcelo,*
     456 U.S. 305 (1982) .................................................................................... 19

*Winter v. Nat. Res. Def. Council,*
     555 U.S. 7 (2008) .......................................................................................... 4

Statutes

5 U.S.C. § 7511(a)(1) ........................................................................................ 7
5 U.S.C. § 7512 ................................................................................................ 6
5 U.S.C. §§ 1211-1219 ..................................................................................... 7
28 U.S.C. § 1295(a)(9) ..................................................................................... 6
28 U.S.C. § 1361 ............................................................................................ 15

Rules

Federal Rule of Civil Procedure 4(c)(i)(2) ....................................................... 5
Federal Rule of Civil Procedure 65(c) ............................................................ 21

Regulations

5 C.F.R. § 315.806(b)-(d) ............................................................................................... 7

Defendants Douglas A. Collins, in his official capacity as Secretary of the Department Veterans Affairs, Robert F. Kennedy, Jr., in his official capacity as Secretary of the Department of Health and Human Services, Scott Bessent, in his official capacity as Secretary of the Department of the Treasury, Howard W. Lutnick, in his official capacity as Secretary of the Department of Commerce, Stephen Ehikian, in his official capacity as Acting Administrator of the General Services Administration, Charles Ezell, in his official capacity as Acting Director of the Office of Personnel Management, and John Phelan, in his official capacity as Secretary of the Navy, respectfully file this opposition to Plaintiffs Jessica Gober, Tiffany Ho, Benza Kendrick-Litho, Jason Maldonado, Sean McClary, Angustia Peck, Levi Preston, Andrea Sassard, and Deven Tines' motion for preliminary injunction (ECF No. 6, "Pls.' Mot."). For the reasons discussed below, the Court should deny Plaintiffs' motion.

## INTRODUCTION

Plaintiffs are nine individuals who, at the time they were terminated from their federal employment, were probationary employees. They claim their terminations violated the Administrative Procedure Act ("APA") and their due process rights under the Fifth Amendment. Specifically, they bring (1) a due process claim for false light and per se defamation; (2) a procedural due process claim; (3) an APA claim contending their removals were arbitrary and capricious; and (4) a mandamus claim. They also ask the Court to enter a preliminary injunction on the theory that the terminations (which have since been rescinded) are causing them irreparable harm. Plaintiffs' preliminary injunction request should be denied on multiple grounds.

To begin, Plaintiffs fail to establish a likelihood of success on the merits of their claims. Judicial review of Plaintiffs' statutory claims is foreclosed by the comprehensive administrative review scheme set forth in the Civil Service Reform Act ("CSRA") and they have failed to exhaust their constitutional claims. Second, Plaintiffs fail to establish irreparable harm absent the

temporary relief they seek. Their alleged harms are not legally cognizable in the first instance; they had no property interest in the employment at issue at the time they were terminated. What is more, any actual or potential harm due to their loss of employment is remediable following the conclusion of litigation in the appropriate forum, should they prevail, and thus cannot constitute irreparable harm. Finally, the balance of equities and the public interest favor Defendants, as Plaintiffs' requested Preliminary Injunction would interfere with the government's ability to manage its workforce. The Court should accordingly deny the motion.

## BACKGROUND

Plaintiffs are employees of the Department of Veterans Affairs, the Department of Health and Human Services, the Department of the Treasury, the Department of Commerce, the Department of the Navy, and the Government Services Administration ("Defendant Agencies"). *See* Am. Compl. (ECF No. 4) ¶¶ 2-10. Plaintiffs allege they were all terminated from their respective positions "under the auspices of their performance being poor" between February 13, 2025, and March 10, 2025, at which time they were probationary employees, *Id.* ¶¶ 2-10, 30, 83. No Plaintiff had "any documented negative feedback or allegation of poor performance or poor conduct made about them by their supervisors or upper management" and "their termination letters did not identify any specific performance deficiency or example of poor conduct." *Id.* ¶¶ 32-33.

As of the date of this filing, many of the named Plaintiffs have since been reinstated to their position and are receiving full pay and benefits. *See* Matt Mrnak Decl. ¶ 6 (explaining that Plaintiff Tiffany Ho was reinstated to her position at the Department of Veterans Affairs and is on "full time, on-duty status"); *See* Sherrie Watford Decl. ¶¶ 5, 7 (explaining that Plaintiff Sean McClary had his termination from the General Services Administration rescinded and he "remains on administrative leave and continues to receive full pay and benefits). Indeed, at least two Plaintiffs

are back to work and no longer in their probationary periods. *See* Danielle Ellis Decl. ¶ 6 (explaining that Plaintiff Levi Preston was reinstated to his position at the Navy "and is no longer a probationary employee"); Anne Burnham Decl. ¶ 6 (explaining that Plaintiff Angustia Peck was reinstated to her position at the Department of Veterans Affairs "and had completed her probationary period"). And at least one named Plaintiff has applied to participated in a voluntary Deferred Resignation Program. *See* Max R. Wyche Decl. ¶ 4 (explaining that Plaintiff Jason Maldonado was reinstated to his position at the Department of Treasury's Internal Revenue Service and placed on administrative leave where he is receiving pay and has since applied to participate in the Deferred Resignation Program).

Plaintiffs filed their initial Complaint on March 11, 2025, *see* ECF No. 1, and an Amended Complaint on March 21, 2025, bringing claims under the APA and the due process clause of the Fifth Amendment. ECF No. 4. Specifically, Plaintiffs assert that alleged statements by the government painted them in a false light and defamed their character and that as a result they have suffered reputational harm and stigma. *Id.* ¶¶ 87, 92. Plaintiffs also assert that they were denied due process rights when they were terminated without prior notice of performance deficiencies and without an opportunity to respond to any perceived deficiencies. *Id*. ¶ 95. Additionally, Plaintiffs allege that the characterization of their performance as "poor" and thus worthy of termination was arbitrary and capricious. *Id*. ¶ 102. Pled in the alternative, Plaintiffs seek a writ of mandamus to be reinstated to their positions. *Id*. ¶ 111.

On March 27, 2025—between seventeen and forty-two days after being terminated— Plaintiffs moved for a preliminary injunction. ECF No. 6. Plaintiffs allege that they are suffering irreparable reputational and stigmatization harms because of Defendant Agencies' claim that they were poor performers. *Id.* at 7.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). The D.C. Circuit has hinted, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*). Notably, in recent arguments before the Supreme Court, justices have expressed the same view. *See* Arg. Tr. at 9, *Lackey v. Stinnie*, No. 23-621 (U.S. argued Oct. 8, 2024), available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-621_q8l1.pdf

(Sotomayor, J.: "under *Winter*, we have recently said that there has to be a finding of a likelihood of success on the merits"); *id.* at 63 (Barrett, J.: "you can't disregard the merits under *Winter*").

In addition, Courts are hesitant to issue "mandatory" preliminary injunctions because they alter, rather than preserve, the status quo. In such a case, "the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted). Because preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and prevail in one fell swoop, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

## ARGUMENT

As a threshold matter, Plaintiffs have failed to effectuate service on the Department of the Navy. Under Federal Rule of Civil Procedure 4(c)(i)(2) "to serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." However, the Department of the Navy has not been served in this matter. By filing this opposition, the Navy does not waive service of process and will file an appropriate motion to address the deficiency in due course.

I.      <u>Likelihood of Success on the Merits.</u>

      A.      **Plaintiffs' Removals**

Plaintiffs claim violations of the APA and due process rights under the Fifth Amendment when the Defendant Agencies terminated them. *See generally* Pls.' Mot. This claim fails as a matter of law because the CRSA's remedial scheme forecloses judicial review here, even though Plaintiffs characterize it as a constitutional violation, and because Plaintiffs have no property or liberty interest in their continued federal employment.

Employment-related disputes between federal employees and their employing agencies within the Executive Branch—including challenges to employee removals or terminations—are governed by the comprehensive, reticulated administrative-judicial review scheme set forth in the CSRA. That expansive scheme governs nearly all aspects of the federal employer-employee relationship, and largely covers the field when it comes to judicial rights and remedies for alleged constitutional and statutory violations arising out of that relationship. As the D.C. Circuit has put it, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.).

Relevant here, the CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (citation omitted). If an agency takes a statutorily defined adverse action against a covered employee—including removal, *see* 5 U.S.C. § 7512—the employee may appeal that action to the Merit Systems Protection Board ("MSPB") under the provisions of the CSRA's Chapter 75. *Id.* § 7513(d). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. *Id*. §§ 1204(a)(2), 7701(g). Final MSPB decisions generally are appealable to the Federal Circuit, which has "exclusive jurisdiction" over such appeals. 28 U.S.C. § 1295(a)(9). This review scheme is "exclusive, even for employees who bring constitutional challenges to

federal statutes." *Elgin*, 567 U.S. at 13. Other than limited circumstances not relevant here, the CSRA does not permit covered employees to bring suit in federal district court. *Id*. at 14-15; *United States v. Fausto*, 484 U.S. 439, 447 (1988); *Fornaro*, 416 F.3d at 67.

In contrast to covered employees, terminated probationers generally do not enjoy the same guaranteed right to appeal removal decisions to the MSPB, as Congress excluded them from the definition of "employee[s]" for purposes of the CSRA's Chapter 75. *See* 5 U.S.C. § 7511(a)(1). Instead, probationers are still considered "applicants" under the extended hiring and evaluation period of the CSRA. And the CSRA, which sets forth the merit system principles underlying the entire statutory scheme and provides remedies for alleged violations of those principles, generally applies to both "applicants and employees." *See*, *e.g.*, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency").

In appropriate circumstances, terminated probationers may pursue relief resulting in MSPB adjudication, with judicial review thereafter. There are two main routes to such review. *First*, a removed probationer may file a complaint alleging one or more statutorily defined "prohibited personnel practices" with the Office of Special Counsel, 5 U.S.C. §§ 1211- 1219, *et seq.*, which is statutorily charged with investigating such complaints and which may in turn pursue administrative relief before the MSPB. *Second*, under Office of Personnel Management regulations, certain removed probationers may appeal to the MSPB if they allege that their removal was based upon one of the reasons set forth in the regulations. *See* 5 C.F.R. § 315.806(b)-(d) (listing reasons such as discrimination on partisan political reasons, marital status, improper procedures, and discrimination on protected status).

1.    The Court Lacks Jurisdiction Because Plaintiffs Have Failed to Follow the CSRA's Scheme

Under the law, Plaintiffs must invoke the remedial scheme of the CSRA, by first seeking review from the Office of Special Counsel or MSPB before bringing their claims in court. Plaintiffs assert that they "have attempted to exhaust administrative remedies by filing claims with both the [Office of Special Counsel] and the MSPB, but have been stymied in doing so because they have not received SF 50s and have not received the proper documentation of their terminations, which is required by the MSPB to process a complaint." Am. Compl. ¶ 23. Plaintiffs allege that they should not be required to seek relief from the Office of Special Counsel because doing so would be futile and because there is no requirement to exhaust constitutional claims. Pls.' Mot. at 12, 15. Plaintiffs assert that the Special Counsel has "fully opined on the legality of the terminations at issue, and has asked MSPB to act accordingly." *Id.* at 13. Plaintiffs assert that "sending [them] back to [the Office of Special Counsel] to relitigate the same issue would be a waste of time." *Id.* at 14.

To begin, simply alleging "constitutional violations does not take [] claims beyond the remedial provisions of the CSRA." *Hunt v. Dep't of Agriculture*, 740 F. Supp. 2d 41, 48 (D.D.C. 2010); *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (declaring that federal employees may not circumvent the CSRA even when they raise constitutional claims). A federal employee may maintain constitutional claims in district court "[o]nly in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." *Steadman*, 918 F.2d at 967 (dismissing federal employee's claim for lack of jurisdiction where plaintiff brought Due Process claim challenging adverse employment action covered by CSRA); *cf. Weaver v. United States Info. Agency*, 87 F. 3d 1429, 1432-35 (D.C. Cir. 1996) (exhaustion of CSRA remedies not required because the Court would have jurisdiction over

the plaintiff's claim that the regulation at issue violated her First Amendment rights if asserted outside the context of the agency's personnel action against her); *Andrade v. Lauer*, 729 F.2d 1475, 1490-93 (D.C. Cir. 1984) (exhaustion of CSRA not required where plaintiffs had challenged the defendants' constitutional authority to issue regulations). Plaintiffs do not allege that their instant constitutional challenge falls within this narrow exception.

Second, Plaintiffs provide no case law to support their proposition that an employee subject to the CSRA is not required to exhaust administrative claims when it would be "futile." Indeed, "[w]ith respect to the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *See Hornsby v. Thompson*, Civ. A. No. 22-1472 (RC), 2023 WL 196185, at *3 (D.D.C. Jan. 17, 2023) (citing *Weaver*, 87 F.3d at 1433). *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." (internal quotation and citation omitted)). Even if Plaintiffs believe that pursuing their complaints in the Office of Special Counsel or MSPB "to their fullest extent would be futile" they are "still required to exhaust that remedy." *See Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005) (citing *Martin v. United States*, 271 F. Supp. 2d 38, 46 (D.D.C. 2002)). Second, even if there were a futility exception, Plaintiffs have not established that it would be futile to go to the Office of Special Counsel simply because the Office of Special Counsel sought a stay of certain probationary terminations for previously ruled favorably for different plaintiffs in different cases.

At base, the "CSRA bars any judicial review of adverse personnel actions by federal employees that are subject to its exclusive review mechanism." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 161 (D.D.C. 2018). This "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action."

*Elgin*, 567 U.S. at 15. Here, Plaintiffs have not exhausted administrative remedies before filing suit in federal court. Accordingly, the Court lacks jurisdiction over claims relating to Plaintiffs' removal.

2.    <u>Plaintiffs Have No Property Interest as Probationary Employees</u>

Plaintiffs also argue their terminations were based on patently false information in violation of their due process rights. Pl. Mot. at 20. As noted above, these claims fail as the CSRA provides an exclusive remedial scheme to review federal personnel actions, and Plaintiffs have failed to exhaust their claims. But even if the CSRA did not preclude Plaintiffs' claims, they would also fail on the merits. For a due process claim, the Court must first consider whether a liberty or property interest is implicated. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (plaintiffs must show the Government deprived them of a "liberty or property interest" to which they had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient"). Here, Plaintiffs claim that their liberty and property interests were violated. Their property interest claims fails as they were probationary employees at the time of their removals and are not afforded the same due process protections as tenured, covered (non-probationary) federal employees. Their liberty interest claims fail as they cannot establish that they suffered harm to their reputation from their terminations.

As this Court has made clear, "an employee's status as a probationary employee poses a large hurdle to clear in order to establish a property interest." *Dave v. D.C. Metro. Police Dep't.*, 905 F. Supp. 2d 1, 9 (D.D.C. 2012) (citing *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994)). This is due to the lack of protections afforded non-permanent employees as "probationary employment is ordinarily considered employment at will." *Piroglu*, 25 F.3d at 1104. And "[t]hose who are terminable at will have no property interest because there is no objective basis for

believing that they will continue to be employed indefinitely." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). Further, limiting the rights afforded to probationary employees "was a conscious decision by Congress to afford federal managers great latitude in removing probationary employees before they became vested with the rights afforded tenured employees." *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992). In drafting the CSRA, "Congress affirmatively intended agencies to retain the power to summarily terminate probationary employees." *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 848 F.2d 1273, 1275 (D.C. Cir. 1988) ("*NTEU*"). Congress "had been aware of the pre-existing system permitting summary firing, but had done nothing to alter it in the CSRA." *Id*. Therefore, as probationary employees, Plaintiffs plainly have no property interest and, correspondingly, no due process claim.

Although Plaintiffs concede that as probationary employees, they do not enjoy the same procedural rights as non-probationary employees, they maintain they still have some procedural rights. Pls.' Mot. at 23. In that vein, Plaintiffs cites the *Accardi* doctrine to argue they are "entitled to be told what specific performance or conduct deficiency necessitated their terminations." *Id*. The *Accardi* doctrine permits judicial review under the APA of an agency action that would otherwise be unreviewable as committed to the agency's discretion, on the ground that the agency did not follow its own regulation in taking that action. *Petritfrere v. Austin*, Civ. A. No. 22-1819 (RCL), 2023 WL 5348748, at *3 (D.D.C. Aug. 21, 2023).

This argument fails because again the CSRA's comprehensive and exclusive administrative remedial scheme dictates "[f]]ederal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (2009). In addition, the argument fails on the merits. Congress "delegated substantial responsibility over the

probationary period to the Office of Personnel Management," which issued regulations "allowing agencies to dismiss probationary employees with only written notice and a brief statement of reasons" and "an exceedingly limited right to appeal." *NTEU,* 848 F.2d at 1275. As shown in Plaintiffs' declarations, *see* Pls.' Mot. at Exhibits 5-11, Plaintiffs here received a "brief statement of reasons" that included "the agency's conclusions as to the inadequacies of [their] performance or conduct," which is all that they are entitled to under OPM's regulations. *See* 5 C.F.R.§ 315.804. Accordingly, because the Court does not have jurisdiction over Plaintiffs' termination claims, they cannot establish the likelihood of success in this case.

###### B.    Plaintiffs' "Reputation Plus" and "Stigma Plus" Theories Fail.

Invoking the Fifth Amendment, Plaintiffs also argue that the terminations implied that they were poor performers, and therefore impermissibly defamed or stigmatized them, to the detriment of their reputation and future career prospects. Pls.' Mot. at 21-25. Even if these claims were to fall outside the CSRA's exclusive scheme, they fail for the same reasons they failed in *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023). Specifically, invoking the "reputation plus" and "stigma plus" theories of harm, Plaintiffs assert a Fifth Amendment claim for alleged harm to their reputation caused by the terminations. Pls.' Mot. at 20-25. However, the D.C. Circuit's decision in *Langeman* precludes these claims.

In *Langeman*, 88 F.4th at 292, the FBI summarily terminated the employment of an FBI agent for "mishandling of charges of sexual abuse against [Larry] Nassar, who molested young gymnasts placed in [Nassar's] care." The plaintiff there invoked the "reputation-plus" and "stigma or disability" theories to assert a Fifth Amendment claim. *Id*. at 296. The D.C. Circuit rejected both theories. The D.C. Circuit rejected the plaintiff's reputation plus theory because "he does not assert facts demonstrating that the FBI actually revealed his identity in any defamatory public

statement." *Id.* The Court pointed out that the government "never referred to [the plaintiff by name in the [Office of Inspector General] Report or otherwise disclosed his identity." *Id.* Here, Plaintiffs allege that an "OPM Spokesperson spoke directly to Journalist Jory Heckman, and stated that the probationary employees were selected based on poor performance, or words to that effect" and "that statement, in conjunction with the actual wording of the termination letters that were clearly leaked to major news outlets before Plaintiffs even received them, and public statements from high profile government officials that the fired workers were not worthy of their jobs, created a massive public perception that Plaintiffs were the worst of a cadre of malingering workers." Pls.' Mot. at 21-22. But as in *Langeman*, those allegations fall short of demonstrating that the Defendant Agencies actually revealed Plaintiffs' identities in a defamatory public statement. Indeed, it would be entirely possible that no one would know that Plaintiffs received their terminations for the stated reasons if they had not brought this lawsuit.

Second, the D.C. Circuit in *Langeman* rejected the plaintiff's "stigma or disability" claim, which is premised on the concept that the combination of an adverse employment action and the resulting "stigma" or other disability either "formally or automatically exclude[d] [plaintiff] from work on some category of future [agency] contracts or from other government employment opportunities" or had the effect of broadly "precluding [plaintiff] from pursuing her chosen career." *Langeman*, 88 F.4th at 297 (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524 (D.C. Cir. 1994)). The Court required "some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Id.* (citing *Orange v. District of Columbia*, 59 F.3d 1267, 1275 (D.C. Cir. 1995) (dismissing stigma claim where plaintiffs had yet to apply for jobs in their chosen careers)). Like *Langeman*, Plaintiffs here "fail to demonstrate the automatic exclusion or broad preclusion outlined in *Kartseva*." *Id.* Plaintiffs have not

established  that they are excluded from working with their respective Agencies – indeed, many are back to work and are continuing their employment with the federal government. *See* Ellis Decl. ¶ 6 (explaining that Plaintiff Levi Preston was reinstated to active duty and is performing the duties of his position); Matt Mrnak Decl. ¶ 6 (explaining that Plaintiff Tiffany Ho was reinstated to her position at the Department of Veterans Affairs and is on "full time, on-duty status"); Anne Burnham Decl. ¶ 8 (explaining that Plaintiff Angustia Peck was reinstated to her position at the Department of Veterans Affairs and is on "full time, on-duty status). Likewise, there is no indication that Plaintiffs, if they were to leave their current position, would be unable to find employment with any other federal agency indefinitely. Similarly, the Amended Complaint fails to identify in what ways Plaintiffs are broadly precluded from pursuing their chosen careers or foreclosed from public and private employment in their fields. Finally, Plaintiffs do not allege that they attempted to obtain employment elsewhere and were rejected because of the government's alleged conduct.

Plaintiffs assert that the "stigma of having been fired for poor performance when such was plainly not the case, will not only burden their ability to find gainful employment, it will also be something they will have to reveal if they seek to obtain new employment that requires references or a background check," Pls.' Mot. at 24, but their declarations, spare that from Plaintiff Levi Preston, assert only some variation of a generic assertion that they are "attempting to obtain new employment and am being stigmatized" by having to explain why they were terminated despite successful performance reviews. *See* Pls.' Mot. at Exhibits 5-9, 11-12. Plaintiff Sean McClary has not filed a declaration at all. This, of course, does not establish that any of the Plaintiffs have attempted to obtain employment elsewhere and were rejected. In sum, these many identified

defects were fatal in *Langeman*, and they are fatal here. Plaintiffs' stigma-plus claims plainly fail. *See id.*

### C.    Plaintiffs' Mandamus Claim Fails.

Plaintiffs also bring, in the alternative, a mandamus claim. Am. Compl. ¶¶ 107-112. The Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To qualify for a writ of mandamus, three conditions must be satisfied: (1) the mandamus petitioner must have no other adequate means to attain the relief he desires, (2) the mandamus petitioner must show that his right to the issuance of the writ is clear and indisputable, and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Dhiab v. Obama*, 787 F.3d 563, 568 (D.C. Cir. 2015) (cleaned up). Mandamus is a "drastic" remedy, "hardly ever granted," and "is available only in extraordinary situations." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Even assuming Plaintiffs have no other adequate remedy, they do not even attempt to identify any mandatory duty owed to them under law. That duty "must be narrowly defined, and [] a plaintiff's legal grounds supporting the government's duty to [them] must be clear and compelling." *Id.* "It is well-settled that a writ of mandamus is not available to compel discretionary acts." *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citing cases). Plaintiffs do not identify any statute that creates a mandatory duty that Defendants owe to them that can be vindicated through mandamus. With the absence of a "clear and compelling duty under [a] statute [] [], the district court must dismiss the action." *Cheney*, 406 F.3d at 729.

## II.    Plaintiffs Have Failed to Demonstrate They Will Suffer Irreparable Harm.

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp.

3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Superv.*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). "[T]he injury must be both certain and great; it must be actual and not theoretical." *Id*. It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Wis. Gas*, 758 F.2d at 674.

Here, Plaintiffs have failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. Although they characterize the harm as damaging to their reputations, Pls.' Mot. at 25, distilled to their core, Plaintiffs' alleged harms are grounded on monetary damages due to their terminations and their speculative fear that they may not obtain gainful employment in the future. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012)

(citations omitted). Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006). The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *See Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (1958); *Sampson*, 415 U.S. at 94 ("the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Wis. Gas*, 758 F.2d at 674.

Furthermore, any alleged loss of income due to a termination falls "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Sampson*, 415 U.S. at 91-92. As stated above, most Plaintiffs have been reinstated and are receiving full pay and benefits. And even for those who are not, loss of income would still not be sufficient as irreparable injury. That is true even if the plaintiffs do not have enough financial reserves to offset the lost income: "[A]n insufficiency of savings ... will not support a finding of irreparable injury, however severely [it] may affect a particular individual." *Id*. at 92 n. 68. Indeed, courts have repeatedly noted that the loss of benefits, income, and reputation are insufficient to show irreparable injury. *Veitch v. Danzig,* 135 F. Supp. 2d 32, 36 (D.D.C. 2001); *Gilmore v. Int'l Union of Op. Eng'rs*, 899 F. Supp. 652, 658 (D.D.C. 1995).

Next, Plaintiffs argue that "the stigma of having been fired for poor performance when such was plainly not the case, will not only burden their ability to find gainful employment, it will also be something they will have to reveal if they seek to obtain new employment that requires references or a background check." Pls.' Mot. at 24. These arguments lack merit. Neither Plaintiffs' Amended Complaint nor Motion specify whether they have actually applied for any job that requires references or a background check seeking this exact information. Without more,

Plaintiffs' alleged harms are merely conjecture. Indeed, it is established law that a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Recognizing the law prohibits claims of financial damages to establish irreparable harm, Plaintiffs pivot and argue their reputational damages rise to the level of irreparable harm. Pl. Mot. at 25-27 (citing *Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Ministries Inc.*, Civ. A. No. 16-0647 (APM), 2016 WL 4487730, at *3 (D.D.C. Aug. 25, 2016)). *Jericho* does not help Plaintiffs' irreparable harm argument and that case in fact bolsters the Defendants' contention here. In that case, the court denied plaintiff's motion for a restraining order based on reputational injury because plaintiff merely made a conclusory assertion of reputational injury absent injunctive relief. *Id.* Further, in *Jericho,* the plaintiff claimed a reputational injury simply by producing a "deficiency notice" from the agency. The *Jericho* Court highlighted the notice itself did not demonstrate the requisite reputational harm without "proof" of "imminent harm." *Id*.

Similarly, here Plaintiffs have only provided that they were terminated without any proof of imminent harm or that they cannot be employed in their chosen field because of the terminations. In any event, as in *Jericho*, Plaintiffs made only generalized allegations that their terminations ruined their reputation that would prevent from obtaining future employment, which is insufficient to warrant extraordinary injunctive relief. *Id.* at 7 (denying injunctive relief because

plaintiff failed to offer proof that an injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm).

Plaintiffs attempt to point to the "reputation-plus" and "stigma or disability" theories to argue irreparable harm, but without any legal support. *See* Pls.' Mot. at 17. As discussed above, *Langeman* forecloses their claims under both theories. Namely, Plaintiffs' "reputation-plus" theory fails because they have not provided evidence showing Defendants disseminated their terminations publicly. *See Langeman*, 88 F.4th at 296 (dismissing reputation-plus claim because plaintiff failed to show the government publicly disclosed his termination). Additionally, their "stigma or disability" theory also fails under *Langeman*, 88 F.4th at 297, which "required that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Id.* Here, Plaintiffs simply have not shown that they have applied for employment since their terminations and that prospective employers rejected their employment applications because of the terminations.

Under these circumstances, the Court should find Plaintiffs have not demonstrated irreparable harm and deny their preliminary injunction motion entirely.

## III.    The Balance of Equities and the Public Interest Factor Weigh Against Issuance of <u>an Injunction.</u>

The party seeking a preliminary injunction must show that the balance of equities tips in his favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. As noted above, these two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. When evaluating these last two factors, the Court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Where, as here, Plaintiffs have failed to show that they are likely to succeed on the merits or evidence of irreparable harm, the public interest factor weighs against the issuance

of a preliminary injunction. *See Serono Labs, Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, also offers [plaintiff] no support because it is inextricably linked with the merits of the case. If, as we have held, [plaintiff] is not likely to establish [a likelihood of success on the merits], the public interest considerations weigh against an injunction.").

Additionally, the Supreme Court has stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." *Sampson*, 415 U.S. at 83. Granting Plaintiffs' request for injunctive relief would severely compromise the government's ability to make the most fundamental personnel decisions and frustrate Congress's intention that "agencies . . . retain the power to summarily terminate probationary employees." *NTEU*, 848 F.2d at 1275. Plaintiffs ask the Court to direct the Defendants to reinstate them. That has occurred already for a majority of these Plaintiffs. And even if it had not, having the Court intervene in this personnel matter at such a premature stage is contrary to public interest, because it seriously impedes a federal agency's ability to handle personnel matters. *See generally Andrade v. Lerner*, 729 F.2d 1475, 1489-90 (D.C. Cir. 1984) (denying preliminary injunction motion seeking to prevent discharge prior to exhaustion of administrative remedies and noting courts' reluctance to interfere "in the sensitive area of federal employee relations."); *Sampson,* 415 U.S. at 83-84 (noting wide latitude given to government personnel decisions). It also would potentially encourage other federal employees to rush to court prematurely and use litigation as an end-run around the comprehensive administrative scheme established by federal statutes, such as the CSRA. Thus, the Court should conclude that the public interest is not best served by granting Plaintiffs' requests. The Court should thus find that on balance, this factor weighs in favor of Defendants.

**IV.**     **Any Relief Should Be Narrowly Tailored.**

For all the foregoing reasons, it would be inappropriate for the Court to issue a preliminary injunction in any form. However, should the Court do so, "an injunction must be narrowly tailored to remedy the harm shown." *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985). Here, at most, Plaintiffs have attempted to show that they face irreparable injury from their terminations. Although Plaintiffs purport to bring this case "on behalf of themselves and the putative class of all similarly situated probationary employees," Am. Compl. at 3, no class has been certified on which to grant class-wide relief. To the extent the Court is inclined to award any preliminary relief, it should be appropriately tailored to only the nine named Plaintiffs in this action. And should the Court decide to issue any preliminary relief, the Government respectfully requests that the Court stay its order for a short period to permit the Government to consider whether to seek reconsideration or appellate review.

**V.**     **The Court Should Order Plaintiffs to Post Bond Pursuant to Rule 65(c).**

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiffs' motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiffs to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: April 16, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By: _____ */s/ Kaitlin K. Eckrote* _____
    KAITLIN K. ECKROTE
    D.C. Bar #1670899
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2485

*Attorneys for the United States of America*

22