## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JESSICA GOBER, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 25-714 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6 |
| | : | | |
| DOUGLAS COLLINS, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## I.  INTRODUCTION

Eight terminated probationary federal employees bring this lawsuit against their former agencies and Charles Ezell, Acting Director of the Office of Personnel Management ("OPM") (collectively, "Defendants").  On behalf of themselves and a putative class of similarly situated fired employees, they claim that their terminations violated the Fifth Amendment, the Administrative Procedure Act, and federal regulations.  They have moved for a preliminary injunction, which Defendants oppose.  Considering the parties' written submissions and oral arguments, the Court will deny the preliminary injunction.

## II.  BACKGROUND

### A.  Factual Background

Immediately after assuming office, President Donald Trump began taking steps to dramatically shrink the size of the federal workforce.  *See, e.g.*, Mem. from Charles Ezell, Acting Director, U.S. Office of Personnel Management, to Heads and Acting Heads of Departments and Agencies ("Ezell Memo"), titled "Guidance on Probationary Periods, Administrative Leave and Details" (Jan. 20, 2025), available at https://perma.cc/VG2P-US9X (instructing agencies to

identify which probationary employees "should be retained"); *Implementing the President's "Department of Government Efficiency" Workforce Organization Initiative*, Executive Order No. 14210 (Feb. 11, 2025), available at https://perma.cc/9AMJ-V7F8 (calling for the elimination of "waste, bloat, and insularity" in the federal government).  In particular, the administration focused on cutting "probationary employees," or workers who had generally been in their positions for less than one year.  *See* 5 C.F.R. §§ 315.801, 802; Ex. 5 to Am. Compl. at 2, ECF No. 4-3 ("Probationary periods for federal employees typically last for one year.  In less common circumstances, certain agencies and federal positions require two-year, or even three-year, probationary periods.").  Reports indicate that around 30,000 employees, most of whom were probationary, were fired during the first few months of the Trump administration.  Ex. 3 to Am. Compl. at 4, ECF No. 4-2.

Among the fired probationary employees are Plaintiffs Jessica Gober, Tiffany Ho, Benza Kendrick-Litho, Sean McClary, Angustia Peck, Levi Preston, Andrea Sassard, and Deven Tines, who worked for the National Institute of Standards and Technology within the Department of Commerce; the Department of Veterans Affairs; the Centers for Medicare and Medicaid Services within the Department of Health and Human Services; the Government Services Administration; the Veterans Administration; the Department of the Navy; the National Oceanic and Atmospheric Administration within the Department of Commerce; and the National Institutes of Health within the Department of Health and Human Services.[1]  Am. Compl. ¶¶ 1–11, 30, ECF No. 4.  The named Plaintiffs were terminated from their jobs in February or March 2025, purportedly on the basis of poor performance.  *Id.* at 5, ¶¶ 2–11, 43.

---

[1] One former Plaintiff, Jason Maldonado, voluntarily dismissed his claims against Scott Bissent, Secretary of the Department of the Treasury.  Not. Voluntary Dismissal, ECF No. 23.

None of the named Plaintiffs' termination letters identified any specific performance deficiency or example of misconduct. *Id.* ¶ 33. Nonetheless, various government officials, including an unnamed Office of Personnel Management "Spokesperson," "staff at OPM," White House Spokesperson Anna Kelly, and Congresswoman Marjorie Taylor Greene have said or suggested that probationary employees like Plaintiffs were fired because of poor performance. *Id.* ¶¶ 38–53, 57–58. Officials from Plaintiffs' former agencies did not contradict these public reports. *See id.* ¶¶ 53, 62, 64, 67. This is so, Plaintiffs claim, because blaming the terminations on performance gave Defendants "some sort of political and legal cover for what would otherwise be patently illegal actions." *Id.* ¶ 59.

## B. Procedural Background

Unsurprisingly, many lawsuits have been filed challenging the mass terminations of government workers. Some of these were brought by unions that represent federal employees. *See, e.g.*, *Nat'l Treasury Emps. Union v. Trump*, No. 25-cv-420, 2025 WL 561080 (D.D.C. Feb. 20, 2025); *Am. Fed'n of Gov't Emps. v. Ezell*, No. 25-cv-10276, 2025 WL 470459 (D. Mass. Feb. 12, 2025); *Am. Foreign Serv. Ass'n, Inc. v. Trump*, 25-cv-352, 2025 WL 573762 (D.D.C. Feb. 21, 2025). Other suits targeted terminations at specific agencies. *See, e.g.*, *Widakuswara v. Lake*, 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) (granting preliminary injunction that reinstated some employees of the United States Agency for Global Media); *Nat'l Treasury Emps. Union v. Vought*, 25-cv-381 (D.D.C. Mar. 28, 2025) (granting preliminary injunction that reinstated some employees of the Consumer Financial Protection Bureau), *stayed in part*, 2025 WL 996856 (D.C. Cir. Apr. 3, 2025) (per curiam). One high-profile suit was brought by nineteen states and the District of Columbia. *See Maryland v. U.S. Dep't of Agriculture*, 25-cv-

748, 2025 WL 800216 (D. Md. Mar. 13, 2025), *stayed*, 2025 WL 1073657 (4th Cir. Apr. 9, 2025).

Whiplash ensued.  On March 13, a district court in the District of Maryland issued a nationwide injunction ordering the reinstatement of around 24,000 probationary employees.  *See Maryland*, 2025 WL 800216 at *4, *22–76.  The next day, a court in the Northern District of California ordered the government to reinstate approximately 16,000 probationary employees to their positions at the Pentagon, the Department of the Treasury, and the Agriculture, Energy, Veterans Affairs, and Interior Departments.  *Am. Fed'n of Gov't Emps. v. Off. Personnel Mgmt.* ("*AFGE I*"), No. 25-cv-1780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025), *stayed*, Order in Pending Case No. 24A904 (Apr. 8, 2025), available at https://perma.cc/GL46-LV8D.  Then, on April 8, the Supreme Court stayed the California court's order on the grounds that the nonprofit plaintiffs in that case lacked standing.  Order in Pending Case No. 24A904.  The day after that, the Fourth Circuit stayed the Maryland court's order, finding that the government was likely to show that the district court lacked jurisdiction over the plaintiffs' claims.  *Maryland*, 2025 WL 1073657 at *1.  As the *New York Times* put it, "[t]he back-and-forth has left the employees in a state of limbo, wondering if they will be fired again after having just been rehired."  Eileen Sullivan, *Appeals Court Clears Path for Trump to Resume Firing Probationary Workers*, N.Y. Times, Apr. 9, 2025, available at https://www.nytimes.com/2025/04/09/us/politics/trump-federal-workers-firing.html.  The situation has also been described as "chaos."  *Nat'l Treasury Emps. Union*, 2025 WL 561080 at *1.

That brings the Court to these proceedings.  Plaintiffs filed their initial class action complaint on March 11, 2025, naming as Defendants Douglas Collins, Secretary of the Department of Veterans Affairs; Robert F. Kennedy, Jr., Secretary of the Department of Health

and Human Services; Howard Lutnick, Secretary of the Department of Commerce; and Stephen

Ehikian, Acting Director of the Government Services Administration.  Compl., ECF No. 1.  They

then filed an amended complaint adding one additional named Plaintiff, Levi Preston, and one

additional defendant, Charles Ezell.  Am. Compl.  Plaintiffs request that the Court certify under

Federal Rule of Civil Procedure 23 a class consisting of

> [a]ll probationary employees of the Defendant Agencies terminated between
> January 20, 2025 to the present that received a termination communication stating
> that termination was due to poor performance, poor conduct, or performance not in
> the public interest, without any evidence of said poor performance, poor conduct or
> performance not in the public interest.

*Id.* ¶¶ 71–79.

The operative complaint encompasses four claims.  Count I alleges that Defendants, via

spokespersons for OPM, the White House, and Congress, made public statements that "painted

Plaintiffs in a false light, and that defamed their character" in violation of their Fifth Amendment

right to due process.  Am. Compl. ¶¶ 80–93.  Count II asserts that Defendants violated Plaintiffs'

constitutional due process rights by terminating them without prior notice of performance

deficiencies as required by 5 C.F.R. §§ 752.401 and 315.803.  *Id.* ¶¶ 94–99.  Count III alleges

that Defendants' characterization of Plaintiffs' work performance as "poor" without a factual

basis and removing them without an opportunity to correct their work performances was

arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et*

*seq.*, and that these actions violated "applicable regulations."  *Id.* ¶¶ 100–06.  Count IV requests

in the alternative that the Court issue a writ of mandamus ordering Defendants to reinstate

Plaintiffs to their previous positions and "otherwise make them whole."  *Id.* ¶¶ 107–12.  For

relief, Plaintiffs ask that the Court order Defendants "to publicly admit and acknowledge that

Plaintiffs were not terminated due to poor performance," and, for the mandamus count, to

"correct the public record to reflect that Plaintiffs were not terminated due to poor or deficient performance." *Id.* ¶¶ 93, 99, 106, 111–12.  They also request, in Count IV, that "[i]f no other remedy is available" that the Court order "Defendants to reinstate them to their previous positions and otherwise make them whole." *Id.* ¶ 111.

On March 27, Plaintiffs moved for a preliminary injunction.  Pls.' Mot. Prelim. Inj., ECF No. 6; Mem. of Law in Support of Pls.' Mot. Prelim. Inj. ("Pls' Mot."), ECF No. 6.  They request that the Court issue an order requiring Defendants to "clarify that performance had nothing to do with the terminations that took place" and to make them "whole." *Id.* at 31.  Each individual Plaintiff also submitted a sworn declaration describing his or her employment with the federal government, performance reviews, and termination.  *See* Exs. 5–12 to Pls.' Mot. Prelim. Inj., ECF No. 6-1.  All but one of the declarations include a statement of harm to the effect of: "I assert that I am attempting to obtain new employment and am being stigmatized in that process by having to explain why I was terminated by the government, including the fact that despite exemplary performance assessments, the termination letter falsely stated I was being fired for performance reasons." Ex. 6 ¶ 12; *see also* Ex. 5 ¶ 12; Ex. 7 ¶ 12; Ex. 8 ¶ 12; Ex. 9 ¶ 12; Ex. 11 ¶ 12; Ex. 12 ¶ 12.  *But see* Ex. 10 (the declaration does not include a statement of harm).

The government filed an opposition on April 16.  Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj. ("Defs.' Opp'n"), ECF No. 17.  At the time, several of the individual Plaintiffs had been reinstated.  *See id.* at 2–3.  Two weeks later, Plaintiffs filed a reply brief in support of their motion.  Pls.' Reply Br. in Support of Their Motion for a Prelim. Inj. ("Pls.' Reply"), ECF No. 21.  According to that filing, "[s]ome Plaintiffs in this case have now been re-terminated." *Id.* at 8.  The Court heard oral argument from the parties on May 8.  The motion for a preliminary injunction is now ripe for review.

6

## III.  LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'"  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  "The last two factors 'merge when the Government is the opposing party.'"  *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The movant has the burden of persuading the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258.  The D.C. Circuit has instructed that "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised."  *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted).  This is particularly true in "[g]overment personnel cases," because the government "has traditionally been granted the widest latitude in the dispatch of its own internal affairs."  *Sampson v. Murray*, 415 U.S. 61, 83–84 (1974) (quotation marks omitted).

## IV.  ANALYSIS

The parties focus much of their briefing on whether this Court is precluded from hearing Plaintiffs' claims by the Civil Service Reform Act of 1978 ("CSRA"), codified in scattered sections of 5 U.S.C.  The CSRA "protects covered federal employees against a broad range of

personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated." *Grosdidier v. Chairman, Broadcasting Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009). The statute "regulates virtually every aspect of federal employment." *Nyunt v. Chairman, Broadcasting Bd. of Govs.*, 589 F.3d 445, 448 (D.C. Cir. 2009). It is both comprehensive and exclusive: "[i]t constitutes *the* remedial regime for federal employment and personnel complaints." *Id.* (emphasis in original). With respect to the CSRA, "exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996) (internal citations omitted).

When the CSRA became law in 1978, *see* Pub. L. No. 95-454, 92 Stat. 1111, it replaced an "outdated patchwork of statutes and rules built up over almost a century." *United States v. Fausto*, 484 U.S. 439, 445 (1988) (internal citation omitted). Instead of a "haphazard arrangement[] for administrative and judicial review of personnel action," in the CSRA Congress created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 444–45. Among other things, the CSRA's Chapter 75 authorizes "employees" to challenge certain "adverse actions," including removal, by appealing to the Merit Systems Protection Board ("MSPB"). *See, e.g.*, 5 U.S.C. §§ 7512, 7513(d); 5 C.F.R. § 1201.3(a)(1). The Federal Circuit has exclusive jurisdiction over most final MSPB decisions. 28 U.S.C. § 1295(a)(9); *Bowe-Connor v. McDonald*, No. 15-cv-231, 2016 WL 5675854, at *2 (D.D.C. Sept. 30, 2016).

"The substantive rights and procedural protections to which any particular employee is entitled" under the CSRA "often depend upon" whether he is tenured or probationary. *Harrison v. Bowen,* 815 F.2d 1505, 1510 (D.C. Cir. 1987). "[T]he appeal rights of a probationary

employee are extremely limited." *Mastriano v. FAA*, 714 F.2d 1152, 1155 (Fed. Cir. 1983). For

example, the MSPB's Chapter 75 jurisdiction over removals does not extend to probationary

employees. 5 C.F.R. § 1201.3(a)(1) (granting the MSPB the authority to hear appeals of

"terminations of employment *after completion of probationary or other initial service period*"

(emphasis added)); 5 U.S.C. §§ 7501, 7511(a)(1); *Wren v. Merit Sys. Prot. Bd.*, 681 F.2d 867,

871 (D.C. Cir. 1982); *accord Shelton v. Dep't of Air Force*, 382 F.3d 1335, 1336–37 (Fed. Cir.

2004). Regulations do, however, authorize the MSPB to hear a probationer's appeal of his

termination if he alleges that the termination was based on (1) partisan political reasons; (2) his

marital status; or (3) "conditions arising before appointment." 5 C.F.R. §§ 315.805, 315.806,

1201.3 ("Appealable issues [for terminated probationary employees] are limited to a

determination that the termination was motived by partisan political reasons or marital status,

and/or if the termination was based on a pre-appointment reason, whether the agency failed to

take required procedures."); *see also Mastriano*, 714 F.2d at 1155. The MSPB also may review

claims that a probationary employee was improperly terminated as part of a reduction in force, or

"RIF." *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351; *Lowmack v. Dep't of Navy*, MSPB Docket No.

DC-0752-97-0572-I-1 ¶ 16 (Jan. 6, 1999). In this action Plaintiffs do not assert that they were

terminated on the basis of marital status, political affiliation, or pre-employment conditions, or as

part of a RIF. Pls.' Mot. at 11.

But there is one other form of administrative review for probationary employees who

allege a "prohibited personnel practice" as described in 5 U.S.C. § 2302(b): filing a complaint

with the Office of Special Counsel. 5 U.S.C. §§ 1211–19. The Office of Special Counsel

("OSC") is a "largely autonomous public prosecutor with broad investigative powers."

*Harrison*, 815 F.3d at 1512. If OSC "determines that there are reasonable grounds to believe

that a prohibited personnel practice has occurred," it must report its determination to the MSPB, the agency involved, and OPM. 5 U.S.C. § 1214(b)(2)(B). If the agency does not "act to correct the prohibited personnel practice" "after a reasonable period of time," OSC can petition the MSPB for "corrective action." *Id.* § 1214(b)(2)(C), *see also id.* § (b)(3)–(4). After that, an adversely affected probationary employee can seek judicial review of the MSPB's "final order or decision." *Id.* § 1214(c)(1).

An agency commits a "prohibited personnel practice" if it violates a "law, rule, or regulation implementing, or directly concerning, the merit system principles." *Id.* § 2302(b)(12); *see also id.* § 2301 (listing merit system principles). That describes Plaintiffs' claims in this lawsuit, which, in their own words, are based on "a duty owed to Plaintiffs established in the CSRA." Pls.' Reply at 11. OSC review is therefore available to them. Plaintiffs acknowledge as much, stating "their only administrative avenue would be through the OSC." Pls.' Mot. at 11. They argue that this Court nonetheless has jurisdiction over their claims because OSC review would be "futile" and "a waste of time," and because they are not required to administratively exhaust constitutional claims. *Id.* at 12–15. That is wrong, and as such Plaintiffs have not met their burden to establish a likelihood to succeed on the merits.[2]

---

[2] At oral argument, Plaintiffs' counsel averred that at least one of the named plaintiffs has now submitted a complaint to OSC. For support she pointed to Exhibit 4 to Plaintiffs' Reply Brief, which is a preliminary determination letter from OSC emailed to, apparently, Gail Schechter. *See* Ex. 4 to Pls.' Reply, ECF No. 21-1 (email subject line reading: "OSC Case File No. MA-25-003639 (Schechter) Preliminary Determination Letter"). Ms. Schechter is a plaintiff in a separate action pending before this Court, *Schechter v. Collins* (no. 25-cv-551), but is not a party to this lawsuit. That Ms. Schechter may have submitted a complaint to OSC does not show that any Plaintiff in this action has. Regardless, the letter is by its terms not a final decision. *See id.* (inviting Ms. Schechter to submit written comments or additional evidence and informing her that "OSC will consider your response before making a final decision"). Plaintiffs have no support for the position that this Court has jurisdiction while the CSRA administrative review process is ongoing.

First, Plaintiffs point to no statute or regulation giving district courts jurisdiction over federal personnel actions where administrative review under the CSRA is futile. *See generally* Pls.' Mot. Actually, the opposite is true: the CSRA's "'elaborate' framework" "entirely foreclose[s] judicial review to employees to whom the CSRA denies statutory review," and it makes "extrastatutory review" unavailable to "those employees to whom the CSRA *grants* administrative and judicial review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (emphasis in original) (internal citation omitted); *see also Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005) (holding that although a plaintiff believed that pursuing administrative remedies "to their fullest extent would be futile, he was still required to exhaust that remedy"). That is the case regardless of whether relief is ultimately available under the CSRA. *Sagar v. Lew*, 211 F. Supp. 3d 262, 268–69 (D.D.C. 2016). As the D.C. Circuit has often said, "what you get under the CSRA is what you get." *E.g.*, *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) (internal quotation omitted); *Grosdidier*, 560 F.3d at 497; *Nyunt*, 589 F.3d at 449.

Nor have Plaintiffs shown that the CSRA encompasses a carve-out for constitutional claims like theirs. With the CSRA, "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector." *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990). "It follows, then, that federal employees may not circumvent that structure even if their claim is based as well on the Constitution." *Id.*; *Elgin*, 567 U.S. at 10 ("Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges."). Probationary employees, too, must channel their constitutional claims through the CSRA in the first instance. *Cross v. Samper*, 501 F. Supp. 2d 59, 62 (D.D.C. Aug. 15, 2007) (holding that probationary employee

"cannot end-run the CSRA and advance constitutional claims in court"). Plaintiffs have not

articulated a convincing reason why their constitutional claims should be treated any differently.

Because Plaintiffs have a CSRA remedy available to them—review by OSC—this Court

lacks jurisdiction over their claims. *See Weaver v. U.S. Info. Agency*, 87 F.3d at 1433. Plaintiffs

have therefore not shown a likelihood to succeed on the merits. The Court could stop there. But

even if the Court were to consider the merits of Plaintiffs' claims, it would likely reject them.

First, the Court is not convinced that Plaintiffs have a viable cause of action under the

APA for Count III. Plaintiffs are flatly wrong that the APA "[g]ives [t]his Court the [a]uthority

to [r]eview [a]ny [a]gency [d]ecision." Pls.' Mot. at 16–17. For one thing, the APA is subject to

limitations. *E.g.*, 5 U.S.C. § 704 (generally limiting judicial review to "final agency action").

For another, it is black letter law in this Circuit that the CSRA's "comprehensive employment

scheme preempts judicial review under the more general APA even when that scheme provides

no judicial relief." *Filebark*, 555 F.3d at 1010. In other words, "[f]ederal employees may not

circumvent the [CRSA]'s requirements and limitations by resorting to the catchall APA to

challenge agency employment actions." *Grosdidier*, 560 F.3d at 497. That probationary

employees are largely excluded from the CSRA's review provisions "evinces Congress's intent

not to allow probationary employees to challenge their removal in district court." *Sagar*, 211 F.

Supp. 3d at 268 (citing *Davis v. Billington*, 681 F.3d 377, 384, 388 (D.C. Cir. 2012); *see also*

Pls.' Mot. at 11 ("It was specifically the intent of Congress for the MSPB **_not_** to take up claims

of probationary employees challenging the harm done to them by federal action during their

initial trial period.") (emphasis in original). "It would be anomalous indeed to permit

probationary employees . . . to challenge their removal directly in district court under the APA,

while requiring permanent employees . . . to exhaust their CRSA remedies first." *Sagar*, 211 F. Supp. 3d at 269.

The Court is also not persuaded that Plaintiffs would succeed on the merits of their "constitutional" claims in Counts I and II. For Count I, they have not pointed to any case where a court found a constitutional due process violation for defamatory speech where defendants were not the speakers. *Cf. O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (finding no "reputation-plus" harm where plaintiff pointed only to "isolated defamatory statements and to a demotion" without "demontrat[ing] that the two occurred together"). Plaintiffs' own articulation of defamation requires "that the *defendant* made a false and defamatory statement concerning the plaintiff." Pls.' Mot. at 21 (quoting *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023)) (internal quotation omitted and emphasis added). As the Court discussed at oral argument, there is no evidence that any individual Plaintiff has applied for a job and been rejected because of Defendants' allegedly stigmatizing speech. *See Langeman v. Garland*, 88 F. 4th 289, 297 (D.C. Cir. 2023) (requiring "some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability"). Conclusory statements of harm at a high level of generality, like those in Plaintiffs' declarations, are not enough to establish a qualifying injury for a constitutional defamation claim. *Id.*; *see also* Defs.' Opp'n at 14–15.

And Count II effectively constitutes a claim that Defendants violated federal regulations, not the Constitution. There Plaintiffs allege that Defendants violated the provisions of 5 C.F.R. §§ 315.803 and 752.401. *See* Am. Compl. ¶ 96 ("Defendant violated Plaintiffs' due process rights by violating the provisions of 5 C.F.R. § 315.805 and 5 C.F.R. §752.401."). That type of claim must, as discussed *supra*, be brought pursuant to the CSRA, if at all.

Plaintiffs do not come close to showing entitlement to mandamus, a "drastic" remedy "available only in extraordinary situations" where the government owes the plaintiff a "clear and compelling" duty. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (cleaned up). Their motion for a preliminary injunction presents no argument why mandamus is appropriate. *See generally* Pls.' Mot.

Plaintiffs emphasize that two other district courts have found the mass terminations unlawful and, as a result, issued nationwide preliminary injunctions. *See, e.g.*, Pls.' Mot. at 2 ("[T]wo federal court cases were also decided on preliminary injunction motions . . . .  In both cases, the District judges concluded that the mass terminations were illegal (although for different reasons) . . . ."); Pls.' Reply at 1–2 ("The other two courts had no problem in issuing injunctive relief on a nation-wide basis after finding that the employees were likely to succeed on the merits of proving their terminations were illegal."). Those cases are distinguishable because they were brought by different types of plaintiffs asserting different claims. Plaintiffs conceded as much at oral argument.

The plaintiffs in the California case are private organizations, public-sector labor unions, and the State of Washington—not individual employees—who challenge OPM's role in the mass terminations. *See Am. Fed'n of Gov. Empls., AFL-CIO v. U.S. Off. of Personnel Mgmt.*, 2025 WL 1150698 at *14 (N.D. Cal. Apr. 18, 2025) ("The whole point of this lawsuit has been OPM's *ultra vires* act — not terminations made wholly by agencies themselves."). The Maryland case was brought by States and the District of Columbia—again, not individual employees— challenging the government's failure to provide the States with notice of the mass terminations as required by law. *Maryland*, 2025 WL 800216 at *17 ("Agencies are, of course, permitted to terminate probationary employees.  That is not what this case is about."); *see* 5 C.F.R. § 351.803

(requiring agencies to give notice to States when a reduction in force involves at least 50 employees within a competitive area). That those courts found cause to issue preliminary injunctions has no effect on this Court's evaluation of Plaintiffs' likelihood to succeed on the merits of *their* claims. And neither preliminary injunction is currently in effect.

A party seeking a preliminary injunction "must demonstrate" a likelihood of success on the merits. *See Munaf v. Green*, 553 U.S. 674, 690 (2008). Because Plaintiffs have not done so, the Court will deny their motion without evaluating the other preliminary injunction factors. The Court will also reserve Plaintiffs' request to certify the putative class for later proceedings.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  May 8, 2025                                      RUDOLPH CONTRERAS
                                                        United States District Judge