UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JESSICA GOBER, *et al.*,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS A. COLLINS,<br>Secretary of Veterans Affairs, *et al.*,<br><br>    Defendants. | Civil Action No. 25-0714 (RC) |

**DEFENDANTS' MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

# **TABLE OF CONTENTS**

Introduction ................................................................................................................................... 1

Background ................................................................................................................................... 2

Standard Of Review ...................................................................................................................... 3

Argument ....................................................................................................................................... 3

      I.      Treasury and Navy Should Be Dismissed ................................................................ 3

      II.     This Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims ................... 3

      III.    Plaintiffs Have No Property Interest as Probationary Employees ......................... 8

      IV.    Plaintiffs' "Reputation Plus" and "Stigma Plus" Theories Fail. ............................. 9

      V.     Plaintiffs' Mandamus Claim Fails. ....................................................................... 12

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Cases                                                                                                                              Page(s)

*Action All. of Senior Citizens of Greater Phila. v. Sullivan*,
   930 F.2d 77 (D.C. Cir. 1991) .................................................................................................. 5

*Andrad v. Lauer*,
   729 F.2d 1475 (D.C. Cir. 1984) .............................................................................................. 7

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500, (2006) ............................................................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 3

*Bante v. Merit Sys. Prot. Bd.*,
   966 F.2d 647 (Fed. Cir. 1992) ................................................................................................. 9

*Cox v. Sec'y of Lab.*,
   739 F. Supp. 28 (D.D.C. 1990) ............................................................................................. 12

*Dave v. D.C. Metro. Police Dep't.*,
   905 F. Supp. 2d 1 (D.D.C. 2012) ............................................................................................ 9

*Dhiab v. Obama*,
   787 F.3d 563 (D.C. Cir. 2015) .............................................................................................. 12

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ........................................................................................................... 4, 5, 8

*Filebark v. Dep't of Transp.*,
   555 F.3d 1009 (D.C. Cir. 2009) .............................................................................................. 5

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) .................................................................................................. 5

*Graham v. Ashcroft*,
   358 F.3d 931 (D.C. Cir. 2004) ................................................................................................ 4

*Grosdidier v. Broad. Bd. of Govs,*
   560 F.3d 495 (D.C. Cir. 2009) ............................................................................................ 4, 5

*Hall v. Ford*,
   856 F.2d 255 (D.C. Cir. 1988) ................................................................................................ 9

*Hornsby v. Thompson*,
　Civ. A. No. 22-1472 (RC), 2023 WL 196185 (D.D.C. Jan. 17, 2023) ...................................... 7

*Hunt v. Dep't of Agric.*,
　740 F. Supp. 2d 41 (D.D.C. 2010) ........................................................................................... 7

*In re Cheney*,
　406 F.3d 723 (D.C. Cir. 2005) ............................................................................................... 12

*Kartseva v. Dep't of State*,
　37 F.3d 1524 (D.C. Cir. 1994) ............................................................................................... 11

*Ky. Dep't of Corrs. v. Thompson*,
　490 U.S. 454 (1989) ................................................................................................................. 8

*Langeman v. Garland*,
　88 F.4th 289 (D.C. Cir. 2023) ..................................................................................... 9, 10, 11

*Martin v. United States*,
　271 F. Supp. 2d 38 (D.D.C. 2002) ........................................................................................... 8

*Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*,
　848 F.2d 1273 (D.C. Cir. 1988) ............................................................................................... 9

*Nurriddin v. Acosta*,
　327 F. Supp. 3d 147 (D.D.C. 2018) ......................................................................................... 8

*Nyunt v. Broad. Bd. of,*
　*Gov*., 589 F.3d 445 (D.C. Cir. 2009) ....................................................................................... 4

*Orange v. District of Columbia*,
　59 F.3d 1267 (D.C. Cir. 1995) ............................................................................................... 11

*Payne v. Biden*,
　62 F.4th 598 (D.C. Cir. 2023) .................................................................................................. 5

*Payne v. Biden*,
　144 S. Ct. 480 (2023) ................................................................................................................ 5

*Piroglu v. Coleman*,
　25 F.3d 1098 (D.C. Cir. 1994) ................................................................................................. 9

*Runkle v. Gonzales*,
　391 F. Supp. 2d 210 (D.D.C. 2005) ......................................................................................... 8

*Steadman v. Governor, U.S. Soldiers' and Airmen's Home*,
  918 F.2d 963 (D.C. Cir. 1990) .................................................................................. 7

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ................................................................................................. 5

*United States v. Adewani*,
  467 F.3d 1340 (D.C. Cir. 2006) ............................................................................... 5

*United States v. Fausto*,
  484 U.S. 439 (1988) ......................................................................................... 3, 4, 5

*Weaver v. United States Info. Agency*,
  87 F. 3d 1429 (D.C. Cir. 1996) ................................................................................ 7

*Wright v. Eugene & Agnes E. Meyer Found.*,
  68 F.4th 612 (D.C. Cir. 2023) ................................................................................ 11

Statutes

5 U.S.C. § 7511(a)(1) .......................................................................................................... 6
5 U.S.C. § 7701(a) .............................................................................................................. 4
5 U.S.C. §§ 1211- 1219 ...................................................................................................... 6
5 U.S.C. §§ 7702(a)(1)(B) .................................................................................................. 4
28 U.S.C. § 1361 .............................................................................................................. 12

Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1, 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Douglas A. Collins, in his official capacity as Secretary of the Department Veterans Affairs, Robert F. Kennedy, Jr., in his official capacity as Secretary of the Department of Health and Human Services, Scott Bessent, in his official capacity as Secretary of the Department of the Treasury, Howard W. Lutnick, in his official capacity as Secretary of the Department of Commerce, Stephen Ehikian, in his official capacity as Acting Administrator of the General Services Administration, Charles Ezell, in his official capacity as Acting Director of the Office of Personnel Management, and John Phelan, in his official capacity as Secretary of the Navy ("Defendants"), by and through undersigned counsel, respectfully move to dismiss, for the reasons discussed herein, the Amended Complaint filed by Plaintiffs Tiffany Ho, Sean McClary, Andrea Sassard, and Deven Tines.

## INTRODUCTION

Plaintiffs are four individuals who, at the time they were terminated[1] from their federal employment, were probationary employees. They claim their terminations violated the Administrative Procedure Act ("APA") and their due process rights under the Fifth Amendment. Specifically, they bring (1) a due process claim for false light and *per se* defamation; (2) a procedural due process claim; (3) an APA claim contending that their removals were arbitrary and capricious; and (4) a mandamus claim. Plaintiffs' Amended Complaint fails, however, for four reasons. First, judicial review of Plaintiffs' statutory claims is foreclosed by the comprehensive

---

[1] As explained in Defendants' opposition to Plaintiffs' preliminary injunction motion, at least two of the four Plaintiffs have had their terminations rescinded. *See* ECF No. 17 at 2 ("As of the date of this filing, many of the named Plaintiffs have since been reinstated to their position and are receiving full pay and benefits. *See* Matt Mrnak Decl. ¶ 6 (explaining that Plaintiff Tiffany Ho was reinstated to her position at the Department of Veterans Affairs and is on "full time, on-duty status"); *See* Sherrie Watford Decl. ¶¶ 5, 7 (explaining that Plaintiff Sean McClary had his termination from the General Services Administration rescinded and he "remains on administrative leave and continues to receive full pay and benefits.").

administrative review scheme set forth in the Civil Service Reform Act and they have failed to exhaust their constitutional claims. Second, Plaintiffs had no property interest in the employment at issue when they were terminated. Third, Plaintiffs fail to state a claim for relief under the "reputation plus" and "stigma plus" theories. Fourth, Plaintiffs mandamus claim fails.

## BACKGROUND

Plaintiffs are employees of the Department of Veterans Affairs, the Department of Health and Human Services, the Department of Commerce, and the Government Services Administration ("Defendant Agencies"). *See* Am. Compl. (ECF No. 4) ¶¶ 2-10. Plaintiffs allege they were all terminated from their respective positions "under the auspices of their performance being poor" between February 13, 2025, and March 10, 2025, at which time they were probationary employees. *Id.* ¶¶ 2-10, 30, 83. No Plaintiff had "any documented negative feedback or allegation of poor performance or poor conduct made about them by their supervisors or upper management" and "their termination letters did not identify any specific performance deficiency or example of poor conduct." *Id.* ¶¶ 32-33.

Plaintiffs filed an Amended Complaint on March 21, 2025, bringing claims under the APA and the due process clause of the Fifth Amendment. ECF No. 4. Specifically, Plaintiffs assert that alleged statements by the government painted them in a false light and defamed their character and that as a result they have suffered reputational harm and stigma. *Id.* ¶¶ 87, 92. Plaintiffs also assert that they were denied due process when they were terminated without prior notice of performance deficiencies and without an opportunity to respond to any perceived deficiencies. *Id.* ¶ 95. Additionally, Plaintiffs allege that the characterization of their performance as "poor" and thus worthy of termination was arbitrary and capricious. *Id.* ¶ 102. Pled in the alternative, Plaintiffs seek a writ of mandamus to be reinstated to their positions. *Id.* ¶ 111.

**STANDARD OF REVIEW**

A complaint warrants dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**ARGUMENT**

**I.   Treasury and Navy Should Be Dismissed**

As a threshold matter, the Department of the Treasury ("Treasury") and the Department of the Navy ("Navy") should be dismissed from this matter. On May 5, 2025, Plaintiff Jason Maldonado filed a Notice of Voluntary Dismissal of his claims against Treasury. ECF No. 23. There are no remaining employees of Treasury in this suit, and thus there are no live claims against it. Similarly, on June 3, 2025, Plaintiff Levi Preston filed a Notice of Voluntary Dismissal. ECF No. 27. Mr. Preston is a Navy employee, and the only Navy employee who was a Plaintiff in this matter. Like Treasury, there are no live claims against Navy and it, too, should be dismissed.

**II.  This Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims**

Plaintiffs claim violations of the APA and due process rights under the Fifth Amendment when the Defendants terminated them. *See generally* Am. Compl. However, these claims fail as a matter of law, as the remedial scheme of the Civil Service Reform Act ("CSRA") forecloses judicial review here, even though Plaintiffs characterize their claims as constitutional violations.

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the

3

various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. A "structural element" of "the framework of the CSRA" is "the primacy of the" Merit System Protection Board ("MSPB") "for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." *Fausto*, 484 U.S. at 449. Under this system, an employee challenging an adverse personnel action generally must file an administrative appeal with the MSPB. 5 U.S.C. § 7701(a). The employee may seek judicial review of a final MSPB order or decision in the U.S. Court of Appeals for the Federal Circuit, with limited exceptions not relevant here. *Id.* § 7703(a), (b)(1)(A).

The CSRA's review scheme is both "comprehensive and exclusive." *Grosdidier v. Broad. Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009). It is "comprehensive" in that "[i]t "regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies applicable to adverse personnel actions, including the availability of administrative and judicial review." *Nyunt v. Broad. Bd. of Gov.*, 589 F.3d 445, 448 (D.C. Cir. 2009) (cleaned up). It is "exclusive," meanwhile, in that "[i]t constitutes the remedial regime for federal employment and personnel complaints." *Id.* "When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employees' rights to bring suit under Title VII and other anti-discrimination laws." *Id.*; *see also* 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2). With limited exceptions not relevant here, then, "the CSRA review scheme . . . preclude[s] district court jurisdiction over [federal personnel] claims." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012).

The CSRA's review scheme is exclusive even when "the CSRA provides no relief," and in fact, "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004). In other words, "the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier*, 560 F.3d at 497. "Congress designed the CSRA's remedial

scheme with care, 'intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims.'" *Id.* (quoting *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *see also Fausto*, 484 U.S. at 448-49 ("the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of [this] type"). Simply put, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.).

The CSRA precludes district court jurisdiction even when a plaintiff raises constitutional claims. *See, e.g.*, *Elgin*, 567 U.S. at 12 ("constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's [constitutional] rights, . . . must be brought within the CSRA scheme"). Although the D.C. Circuit once recognized narrow exceptions to the CSRA's exclusivity for constitutional claims, it has since recognized that "such exceptions cannot survive the Supreme Court's subsequent decisions in *Thunder Basin* and *Elgin*—clarifying that a statutory scheme may exclusively preclude jurisdiction when Congress's intent to do so is 'fairly discernible.'" *Payne v. Biden*, 62 F.4th 598, 606 (D.C. Cir. 2023) (citing *Elgin*, 567 U.S. at 12, and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).[2] Accordingly, the CSRA precludes district court jurisdiction even if a plaintiff raises "constitutional challenges." *Id.* at 603.

---

[2]    While the Supreme Court subsequently granted certiorari and vacated *Payne*'s judgment on mootness grounds, *see Payne v. Biden*, 144 S. Ct. 480 (2023) (Mem.), *Payne*'s holding remains binding precedent. "When the Supreme Court vacates a judgment of [the D.C. Circuit] without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight, and in the absence of contrary authority, [the D.C. Circuit] do[es] not disturb it." *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (cleaned up); *accord Action All. of Senior Citizens of Greater Phila. v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991) (same).

5

In contrast to covered employees, probationers generally do not enjoy the same guaranteed right to appeal termination decisions to the MSPB, as Congress excluded them from the definition of "employee[s]" for purposes of the CSRA's Chapter 75. *See* 5 U.S.C. § 7511(a)(1). Instead, probationers are still considered "applicants" under the extended hiring and evaluation period of the CSRA. *Id.* And the CSRA, which sets forth the merit system principles underlying the entire statutory scheme and provides remedies for alleged violations of those principles, generally applies to both "applicants and employees." *See*, *e.g.*, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency").

In appropriate circumstances, terminated probationers may pursue relief resulting in MSPB adjudication, with judicial review thereafter. A terminated probationer may file a complaint alleging one or more statutorily defined "prohibited personnel practices" with the Office of Special Counsel, 5 U.S.C. §§ 1211- 1219, *et seq.*, which is statutorily charged with investigating such complaints and which may in turn pursue administrative relief before the MSPB.

Under the law, Plaintiffs must invoke the remedial scheme of the CSRA by first seeking review from the Office of Special Counsel before bringing their claims in court. Plaintiffs concede that they "could file claims to the Office of Special Counsel alleging that their terminations constitute 'prohibited personnel actions.'" Am. Compl. ¶ 18. They argue, though, that the Office of Special Counsel "has already opined on the matter, and has already determined that terminations identical to the ones at bar were prohibited personnel practices." *Id.* ¶ 19. Plaintiffs assert that they "have attempted to exhaust administrative remedies by filing claims with both the [Office of Special Counsel] and the MSPB, but have been stymied in doing so because they have not received SF 50s and have not received the proper documentation of their terminations, which is required by

the MSPB to process a complaint." *Id.* ¶ 23. Plaintiffs also contend that they are "not obligated to administratively exhaust constitutional claims." *Id.* ¶ 29.

To the contrary, Plaintiffs are required to seek relief from the Office of Special Counsel or the MSPB under the CSRA prior to bringing suit in federal court. First, simply alleging "constitutional violations does not take [] claims beyond the remedial provisions of the CSRA." *Hunt v. Dep't of Agric.*, 740 F. Supp. 2d 41, 48 (D.D.C. 2010); *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (federal employees may not circumvent CSRA even when they raise constitutional claims). A federal employee may maintain constitutional claims in district court "[o]nly in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." *Steadman*, 918 F.2d at 967 (dismissing federal employee's claim for lack of jurisdiction where plaintiff brought Due Process claim challenging adverse employment action covered by CSRA); *cf. Weaver v. United States Info. Agency*, 87 F. 3d 1429, 1432-35 (D.C. Cir. 1996) (exhaustion of CSRA remedies not required, as the Court would have jurisdiction over plaintiff's claim that regulation at issue violated her First Amendment rights if asserted outside context of the agency's personnel action against her); *Andrad v. Lauer*, 729 F.2d 1475, 1490-93 (D.C. Cir. 1984) (exhaustion under CSRA not required where plaintiffs challenged defendants' constitutional authority to issue regulations). Plaintiffs do not allege that their instant constitutional challenge falls within this narrow exception.

Second, an employee subject to the CSRA is still required to exhaust administrative claims even if they believe doing so would be "futile." Indeed, "[w]ith respect to the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Hornsby v. Thompson*, Civ. A. No. 22-1472 (RC), 2023 WL 196185, at *3 (D.D.C. Jan. 17, 2023) (citing *Weaver*, 87 F.3d at 1433); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[S]ubject-matter jurisdiction,

7

because it involves the court's power to hear a case, can never be forfeited or waived." (internal quotation marks and citation omitted)). Even if Plaintiffs believe that pursuing their complaints in the Office of Special Counsel or MSPB "to their fullest extent would be futile," they are "still required to exhaust that remedy." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005) (citing *Martin v. United States*, 271 F. Supp. 2d 38, 46 (D.D.C. 2002)). This Court found as much in denying Plaintiffs' motion for a preliminary injunction. *See* Mem. Op., ECF No. 25 at 10-13.

At base, the "CSRA bars any judicial review of adverse personnel actions by federal employees that are subject to its exclusive review mechanism." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 161 (D.D.C. 2018). This "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action." *Elgin*, 567 U.S. at 15. Here, Plaintiffs did not exhaust administrative remedies before filing suit in this Court and, accordingly, the Court lacks jurisdiction over their claims.

### III. Plaintiffs Have No Property Interest as Probationary Employees

As noted above, Plaintiffs' claims fail because the CSRA provides an exclusive remedial scheme to review federal personnel actions, and Plaintiffs have failed to exhaust their claims. But even if the CSRA did not preclude Plaintiffs' claims, they would also fail on the merits. For a due process claim, the Court must first consider whether a liberty or property interest is implicated. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (plaintiffs must show the Government deprived them of a "liberty or property interest" to which they had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient"). Here, Plaintiffs' claim that their property interests were violated fails, for they were probationary employees at the time of their terminations and are not afforded the same due process protections as tenured, covered (non-probationary) federal employees.

As this Court has stated, "an employee's status as a probationary employee poses a large hurdle to clear in order to establish a property interest." *Dave v. D.C. Metro. Police Dep't.*, 905 F. Supp. 2d 1, 9 (D.D.C. 2012) (citing *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994)). This is due to the lack of protections afforded non-permanent employees, as "probationary employment is ordinarily considered employment at will." *Piroglu*, 25 F.3d at 1104. And "[t]hose who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). Further, limiting the rights afforded to probationary employees "was a conscious decision by Congress to afford federal managers great latitude in removing probationary employees before they became vested with the rights afforded tenured employees." *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992). In drafting the CSRA, "Congress affirmatively intended agencies to retain the power to summarily terminate probationary employees." *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 848 F.2d 1273, 1275 (D.C. Cir. 1988). Congress "had been aware of the pre-existing system permitting summary firing, but had done nothing to alter it in the CSRA." *Id*. Therefore, as probationary employees, Plaintiffs plainly have no property interest and, correspondingly, no due process claim based on their employment.

IV.     **Plaintiffs' "Reputation Plus" and "Stigma Plus" Theories Fail.**

Invoking the Fifth Amendment, Plaintiffs also attempt to bring a claim for false light and *per se* defamation, invoking the "reputation plus" and "stigma plus" theories. Am. Compl. at 18-20. As stated above, Plaintiffs are required to exhaust their claims prior to bringing their lawsuit. However, even if these claims were to fall outside the CSRA's exclusive scheme, they fail for the same reasons they failed in *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023).

In *Langeman*, 88 F.4th at 292, the FBI summarily terminated the employment of an FBI agent for "mishandling of charges of sexual abuse against [Larry] Nassar, who molested young

9

gymnasts placed in [Nassar's] care." The plaintiff there invoked the "reputation-plus" and "stigma or disability" theories to assert a Fifth Amendment claim. *Id.* at 296. The D.C. Circuit rejected both theories. The D.C. Circuit rejected the plaintiff's reputation plus theory because "he does not assert facts demonstrating that the FBI actually revealed his identity in any defamatory public statement." *Id.* The Court pointed out that the government "never referred to [the plaintiff] by name in the [Office of Inspector General] Report or otherwise disclosed his identity." *Id.*

Here, Plaintiffs allege that "Defendants via the OPM spokesperson, published a statement to Journalist Jory Heckman that the employees that were being fired were poor performers" and that "Defendants, via spokespersons for the White House, Congress and the OPM, made public statements that painted Plaintiffs in a false light, and that defamed their character." Am. Compl. ¶¶ 84, 87. Plaintiffs assert that "the culmination of the OPM spokesperson's statement to Journalist Jory Heckman, the leaked letters to major media outlets, the comments from White House spokespersons, and the statement by Ms. Taylor Greene, and the declaration of Mr. Ezell created a context in which Plaintiffs would be assumed to be poor performers simply because they were part of the cadre of employees who were terminated at that time." *Id.* ¶ 57. Finally, Plaintiffs assert that "Defendant Agencies benefited from the false premise their words and actions created about Plaintiffs by obtaining some sort of political and legal cover for what would otherwise be patently illegal actions." *Id.* ¶ 59.

Plaintiffs wrongly seek to impute the words of non-Defendants to the Defendant Agencies in this action. As the Court noted, Plaintiffs have not sufficiently alleged that the Defendant Agencies were actually the ones who allegedly painted Plaintiffs in a false light. *See* Mem. Op., ECF No. 25 at 13. Plaintiffs do not allege "that the *defendant* made a false and defamatory

10

statement concerning" them. *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023)) (internal quotation marks omitted and emphasis added).

Moreover, as in *Langeman*, Plaintiffs' allegations fall short of demonstrating that the Defendant Agencies actually revealed Plaintiffs' identities in a defamatory public statement. Indeed, if Plaintiffs had not brought this lawsuit, it would be entirely possible that no one would know that they had been terminated for the stated reasons.

Relatedly, the D.C. Circuit in *Langeman* rejected the plaintiff's "stigma or disability" claim, which was premised on the concept that the combination of an adverse employment action and the resulting "stigma" or other disability either "formally or automatically exclude[d] [plaintiff] from work on some category of future [agency] contracts or from other government employment opportunities" or had the effect of broadly "precluding [plaintiff] from pursuing her chosen career." *Langeman*, 88 F.4th at 297 (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524 (D.C. Cir. 1994)). The Court required "some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Id.* (citing *Orange v. District of Columbia*, 59 F.3d 1267, 1275 (D.C. Cir. 1995) (dismissing stigma claim where plaintiffs had yet to apply for jobs in their chosen careers)). Like *Langeman*, Plaintiffs here "fail to demonstrate the automatic exclusion or broad preclusion outlined in *Kartseva*." *Id.* Plaintiffs have not asserted that they are excluded from working with their respective Agencies or that they would be unable indefinitely to find employment with any other federal agency. Similarly, the Amended Complaint fails to identify how Plaintiffs are broadly precluded from pursuing their chosen careers or foreclosed from public and private employment in their fields. Finally, Plaintiffs do not allege that they attempted to obtain employment elsewhere and were rejected because of the government's alleged conduct.

The above identified defects were fatal in *Langeman*, and they likewise are fatal here. Plaintiffs' stigma-plus claim plainly fails and should be dismissed.

## V.     Plaintiffs' Mandamus Claim Fails.

Plaintiffs also bring, in the alternative, a mandamus claim. Am. Compl. ¶¶ 107-112. The Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To qualify for a writ of mandamus, three conditions must be satisfied: (1) the mandamus petitioner must have no other adequate means to attain the relief he desires, (2) the mandamus petitioner must show that his right to the issuance of the writ is clear and indisputable, and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Dhiab v. Obama*, 787 F.3d 563, 568 (D.C. Cir. 2015) (cleaned up). Mandamus is a "drastic" remedy, "hardly ever granted," and "is available only in extraordinary situations." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Even assuming Plaintiffs have no other adequate remedy, they do not even attempt to identify any mandatory duty owed to them under law. That duty "must be narrowly defined, and [] a plaintiff's legal grounds supporting the government's duty to [them] must be clear and compelling." *Id.* "It is well-settled that a writ of mandamus is not available to compel discretionary acts." *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citing cases). Plaintiffs do not identify any statute that creates a mandatory duty that Defendants owe to them that can be vindicated through mandamus. With the absence of a "clear and compelling duty under [a] statute [] [], the district court must dismiss the action." *Cheney*, 406 F.3d at 729. So it is here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint.

Dated: June 26, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Kaitlin K. Eckrote*
    KAITLIN K. ECKROTE
    D.C. Bar #1670899
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2485

*Attorneys for the United States of America*