# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SEAN MCCLARY, *et al.*,                          )
                                                 )
    *Plaintiffs*,                           )    Civil Action No.: 1:25-CV-00714 (RC)
                                                 )
v.                                               )
                                                 )
ROBERT F. KENNEDY, JR.                           )
Secretary of Health and                          )
Human Services, et al.,                          )
                                                 )
    *Defendants*.                           )
                                                 )
_____             )

## PLAINTIFFS' SUPPLEMENTAL BRIEFING

Per the Court's Order of May 20, 2026, Plaintiffs hereby submit their supplemental briefing.

## ARGUMENT

1) **Have any of the Plaintiffs who filed complaints with OSC been unable to appeal to MSPB under 5 U.S.C. § 1214(a)(3)(A), or another applicable provision, because there is no quorum in MSPB?**

The question presented by the court asks whether any of the Plaintiffs were unable to appeal to the MSPB because there is no quorum. Plaintiff McClary appealed to the MSPB and has received their initial decision. When the MSPB had no quorum, the administrative judges (AJs) still issued initial decisions (chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.mspb.gov/FAQs%20Absence%20of%20Board%20Quorum%2011-14-25.pdf). The MSPB had no quorum from Jan. 7, 2017, to March 3, 2022, and from April 10, 2025, to October 27, 2025.

1

Importantly, Judge Alsup noted in *AFGE et al v. United States Office of Personnel Management, et al.*, 3:25-CV00178 (WHA) (hereinafter "AFGE I") that the administrative schemes of MSPB and OSC have been thwarted by the government.  All three plaintiffs have filed claims at the MSPB; two plaintiffs' claims were consolidated in a class action, but the class action has not moved in any way, and another plaintiff's claim was dismissed outright.

**2)  If that is the case, can Plaintiffs nonetheless obtain review in the Court of Appeals for the Federal Circuit?**

According to 28 U.S.C.A. § 1295(a)(9), the United States Court of Appeals has jurisdiction over the MSPB final order or final decisions.  Plaintiff McClary has received an Initial Decision from MSPB but not a final order or decision. To exhaust administrative remedies completely, he would have needed to appeal to the MSPB to receive a final order or decision, which then could be brought to the Court of Appeals for the Federal Circuit. But following Judge Alsup's ruling in AFGE I, MSPB has stopped doing any work at all; therefore, the administrative remedies have been exhausted. If MSPB will not give final orders for the class action, then there is no ruling to appeal to in the Court of Appeals for the Federal Circuit.

**3)  If they cannot, does the unavailability of any remedy beyond OSC affect this Court's jurisdiction over the case?**

The unavailability of any remedy beyond OSC does not affect this Court's jurisdiction over this case because the legal argument that causes this case to be filed in district court comes from *Carr v. Saul, 593 U.S. 83 (2021)*. The *Carr* ruling said that as long as petitioners assert purely constitutional claims about which the specific agency adjudications have no special expertise, they can bring this issue to the district court level.  If the administrative agency adjudications have no special expertise, the Supreme Court decided against imposing an issue exhaustion requirement, allowing this case to be filed in District Court.

**4) And does the answer to that question depend on whether the claims allege violations of rights guaranteed by the United States Constitution? Cf. Webster v. Doe, 486 U.S. 592, 602 (1988).**

Yes, in *Webster,* a CIA officer was fired because of his sexuality, and he sued the CIA. There was confusion in the Court of Appeals because the constitutional issues were not clearly stated. *See Webster v. Doe*, 486 U.S. 592, 602 (1988).  The case at bar is different because there is a clear statement of the constitutional issues.  *See id.* at 605.  *Carr* stands for the proposition that Plaintiffs do not need to exhaust administrative remedies with respect to constitutional claims.  Moreover, according to *Carr*, claims alleging violation of rights guaranteed by the United States Constitution can be brought in the Federal District Court.

**5) Are the parties in this case the same as the parties in AFGE?**

Yes.  Even if the Plaintiffs were not named parties to the case before judge Alsup, they were in sufficient privity with the union plaintiffs to be bound by the ruling in Alsup.  The Plaintiffs in this case were employees of federal agencies that were all directed by OPM to terminate probationary employees.  Plaintiff McClary was employed by the Government Services Agency.  Plaintiff Sassard was employed by the NOAA under the Department of Commerce.  Plaintiff Tines was employed by the Department of Health and Human Services.  They were also all represented by the AFGE.

In filing suit, AFGE brought action on behalf of all of its members and also on behalf of the union itself.  *See* Alsup Decision, p. 16.  The Alsup decision specifically excluded the following agencies:  1) the Department of Justice; 2) the National Transportation Safety Bureau; the Department of State; NASA and the Office of Management and Budget.  *See id.* pp. 16-18.  All other federal agencies that received the directive from OPM to terminate probationary employees were parties to, and subject to the decision by Judge Alsup.  *See id.*

It is well established that court orders that bind a union, bind the members of that union. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 823 (1994) (holding that trial injunction prohibited the members of the union from, among other things, obstructing ingress and egress to company facilities, throwing objects at and physically threatening company, not just union leaders); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 169 (5th Cir. 1980). If union members are bound by the orders that constrain their union, it stands to reason that they benefit from the orders that provide relief to their union as well. The question rises and falls on the extent to which the union member was in privity with the union that represented them.

The test of privity for *res judicata purposes* was explained in *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). In that case, the court held:

> [p]rivity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit.

The court in *Meza* went on to hold:

> Under the rubric of adequate representation, federal courts have consistently held that a non-party is bound if he authorized a party in the prior suit to represent his interests, or if he was represented as a member of a class or association in the original litigation.

*Id.* at 1266–67. Both of those circumstances are at play here. Plaintiffs authorized the union to act on their behalf as AFGE members, and AFGE litigated on behalf of a class that clearly included the Plaintiffs when it challenged the legality of the OPM directives to the Plaintiffs' employer agencies.

Courts in this jurisdiction have repeatedly held that union members are considered to be in privity with their union. *See Proctor v. D.C.*, 74 F. Supp. 3d 436, 452 (D.D.C. 2014) ("Union members are considered to be in privity with their union for purposes of res judicata.") (citing *Adams v. Pension Ben. Guar. Corp.,* 332 F.Supp.2d 231, 239 n. 8 (D.D.C.2004) ("Courts have recognized that unions are in privity with their membership for the purposes of res judicata."); *Heade v. Washington Metro. Area Transit Auth.,* No. 09–02460, 2010 WL 938462, at *2 n. 2 (D.D.C. Mar. 12, 2010) ("Plaintiff's contention that the arbitration's findings do not bar her claim because she was not a party to that proceeding is also without merit ....[since] she was in privity with her union."); *see also Hitchens v. County of Montgomery,* 98 Fed.Appx. 106, 114 (3d Cir.2004) ("[C]ourts have held union members to be in privity with the union and have held that a decision against a union can bind union members in a subsequent action." (citing *Handley v. Phillips,* 715 F. Supp. 657, 666–67 (M.D.Pa.1989); *Stokes v. Bd. of Tr. of Temple Univ.,* 683 F. Supp. 498, 502 (E.D.Pa.1988)); *Monahan v. Dep't. of Corr.,* 214 F.3d 275, 285–86 (2d Cir.2000) (recognizing that union members' "interests [are] adequately represented" by the union); *Meza v. Gen. Battery Corp.,* 908 F.2d 1262, 1268 (5th Cir.1990) ("Federal courts have long recognized that individual members of labor unions ... can be bound by judgments in suits brought by the union....").

**6)     Which specific claims in this case do, or do not, arise from the same transaction or involve a common nucleus of operative facts as the claims in AFGE such that claim preclusion may apply—including a description of that transaction or common nucleus of operative facts?**

The Court cites *Brownback v. King*, 592 U.S. 209, 215 n.3 (2021) as providing a definition of "common nucleus of operative facts." The case specifies that "suits involve the same claim or cause of action if the later suit aris[es] from the same transaction or involves a common nucleus of operative facts." The case before Judge Alsup involved the following operative facts:

a. On or about February 14, 2025, OPM issued written directives to all federal agencies to immediately terminate all of their probationary employees, and to allege that the terminations were based on poor performance;

b. As a result of that directive, Plaintiffs, who were probationary employees at that time, we summarily terminated from their employment with the GSA, NOAA and HHS, respectively;

c. All three Plaintiffs received termination letters that contained the same language mandated by the OPM;

d. As a result of temporary injunctive relief issued by Judge Alsup in March of 2025, the Plaintiffs were temporarily returned to work, but they were not given duties.  Instead they were placed in a paid administrative leave status.

e. The Supreme Court voided the injunction issued by Judge Alsup, and as a result of that action, all three Plaintiffs were again terminated;

f. In proceedings before Judge Alsup, AFGE established that the characterization of the terminations of their members as being for poor performance was facially and factually false;

g. AFGE established that OPM acted beyond the scope of its authority and violated the Administrative Procedures Act;

h. AFGE established that the terminations violated Constitutional due process rights;

i. Judge Alsup concluded that OSC had been compromised to the point that it no longer functioned as a check on federal agencies;

j. Judge Alsup concluded that the lack of a quorum at MSBP functionally thwarted its capacity to issue final decisions;

6

k.  Upon consideration of a complete record, and well-crafted arguments made by counsel for AFGE, Judge Alsup determined on summary judgment that the terminations at issue (i.e., the terminations of Plaintiffs) were unlawful;

l.  But Judge Alsup stopped short of mandating reinstatement for all employees who had been wrongfully terminated because such a remedy would be impracticable to execute at scale.

m.  Importantly, Judge Alsup did not state that reinstatement was inappropriate, he held that mass reinstatement was unworkable.  The implication left is that reinstatement may be appropriate on a case-by-case basis.

Given that the actions taken on and against Plaintiffs track and mirror precisely what was ordered and done in the AFGE case, it would be logically untenable to hold that the cases did not have the same nexus of actions and facts.

**7) Can claim preclusion, as distinguished from issue preclusion, apply given the jurisdictional issues that Defendants have raised here? Can claim preclusion apply offensively against the United States?**

A subsequent lawsuit is barred by claim preclusion "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *See Nat. Res. Def. Council v. E.P.A.*, 513 F.3d 257, 260 (D.C. Cir. 2008) (citing *Smalls v. United States,* 471 F.3d 186, 192 (D.C. Cir. 2006)).  Although this case was originally filed contemporaneously with the AFGE case to litigate the same issues, such was before the decision from Judge Alsup was issued.

The decision in *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 79 (D.C. Cir. 1997) provides important guidance.  In that case, the court reasoned:

> Litigation of the validity of one past course of conduct is not the same "claim" as either (1) litigation over the validity of similar conduct occurring after the acts covered by the initial litigation; or (2) litigation challenging a rule in anticipation of its possible application to similar events occurring or expected to occur after the earlier lawsuit.

(internal citations omitted). Thus, a case that seeks to test and enforce a decision, asking for its holdings to be applied to subsequent actions of the same litigants is not subject to claim preclusion. The case at bar is such a case. It is focused on *enforcing* the Alsup decision, which raises a different matter.

Specifically, the Alsup permanent injunction states:

> Where an employee was terminated by a relief defendant agency, rehired pursuant to Court order, then terminated *again* upon a stay of that order, the *second* termination cannot be made retroactive to the date of the first. ___**It must stand on its own.**___

Alsup. Decision p. 37, ¶ 4 (emphasis added). Plaintiffs are precisely the persons to whom Judge Alsup was referring in that paragraph. They were terminated in February of 2025 at the illegal direction of OPM. They were reinstated in accordance with the TRO, were placed in an admin leave status and thus did not provide any new or independent basis to terminate their employment, and were terminated again due the lifting of the injunction.

Plaintiffs therefore allege that their terminations did not "stand on [their] own." There was no new or separate reason to terminate their employment, and their terminations did revert back to the original termination, in exact contravention of the ORDER from Judge Alsup. Put simply, the "claim" here is not asking is not asking the Court to relitigate whether Plaintiff's terminations in February of 2025 were legal. They were not. The "claim" before this Court is whether or not Defendants had an independent lawful basis to terminate their employment, and if they did not, Plaintiffs seek redress for that injury from this Court. The "claim" before the Court is a fact

8

specific examination of any independent basis to justify Plaintiffs' termination, which is a claim that stands on its own.

**8) Does claim preclusion apply offensively to prevent Defendants from relitigating claims they lost in AFGE, or does it apply defensively to extinguish Plaintiffs' claims in this action because Plaintiffs already prevailed in the Northern District of California?**

For obvious reasons, Defendants want to foreclose such an examination by this Court, and want to force Plaintiffs into administrative schemes that are no longer functional or viable. The reason Defendants are so adamant that the Court lacks jurisdiction to hear these claims is because Defendants know that there has never been an independent -- not patently illegal -- basis for the termination of Plaintiffs. Which brings the Court back to the question of whether or not OSC or MSPB can actually hear these claims. Judge Alsup carefully considered the viability of filing claims at OSC or MSPB and concluded that those pathways are not viable options. A federal judge was presented evidence and legal arguments from the representative of Plaintiffs and attorneys for Defendants, and concluded that he had jurisdiction to hear and conclude that the actions of Defendants were illegal. *See* Alsup. Decision pp. 18-24. Judge Alsup not only concluded that he had jurisdiction to hear the Constitutional challenges to the actions of the OPM, but also that the administrative scheme of the CSMRA has been sufficiently eroded to provide a basis for the Court to step in.

The Court asks if Plaintiffs seek to preclude Defendants from relitigating that issue, and cites *Watts v. Veneman*, 476 F.2d 529, 532 (D.C. Cir. 1973) as an example of defensive claim preclusion being granted because the plaintiffs had already prevailed. Plaintiffs instead rely on the holding in *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 416 (D.D.C. 2008), which focuses on issue preclusion. In that case the court held:

9

"a plaintiff may, when appropriate, preclude a defendant from relitigating issues that the defendant litigated and lost against another plaintiff," *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.,* 740 F.2d 1011, 1014 n. 2 (D.C.Cir.1984). "This practice ... is called offensive collateral estoppel." *Id.* However, a successful plaintiff in one proceeding cannot impose its victory on a second defendant not involved in the first proceeding without violating the second defendant's due process rights.

Defendants in this case have had a full opportunity to litigate the jurisdictional issue, and lost. They had a full opportunity to litigate the propriety of the OPM's actions and lost. They had a full opportunity to establish that the terminations were not "ordered" by OPM and lost. They had a full opportunity to establish that they did not violate the Administrative Procedures Act, and did not violate the due process rights of probationary employees and lost.

In a situation where a previous case already established the rights of a certain class to recover, members of that class cannot seek *the same recovery* in an additional lawsuit, but Plaintiffs are not seeking the same recovery. They are seeking applicability of the recovery that was contemplated by Judge Alsup *to them*. The Plaintiffs in AFGE asked the Court for a ruling that the mass terminations were unlawful. The Plaintiffs here are not seeking to retread that turf. They are asking the Court, based on that reality, to find that *their terminations* violated Judge Alsup's order, and that subsequent actions by Defendants were illegal because there was no lawful or independent basis for the re-termination of Plaintiffs. So Plaintiffs are not seeking the same recovery here. They are seeking enforcement of a recovery contemplated by the Alsup Decision.

Specifically, Judge Alsup decided that reinstatement was the proper remedy, and the remedy he would have ordered in other circumstances, but that given the Supreme Court's hostility to nation-wide injunctions, he was not going to order mass reinstatement:

> In the ordinary course, this order would, as required by the APA, set aside OPM's unlawful directive and unwind its consequences, returning the parties to the *ex ante* status quo, and as a consequence, probationers to their posts. But the Supreme Court has made clear enough by way of its emergency docket that it will overrule

10

judicially granted relief respecting hirings and firings within the executive, not just in this case but in others.  And, too much water has now passed under the bridge since the Supreme Court stayed this Court's preliminary injunction reinstating probationary employees.  The terminated probationary employees have moved on with their lives and found new jobs.  Many would no longer be willing or able to return to their posts.  The agencies in question have also transformed in the intervening months by new executive priorities and sweeping reorganization.  Many probationers would have no post to return to.

Alsup Decision, p. 36.  Judge Alsup did order that Defendants' correct the records of previously terminated employees and further ordered that termination of employees after the lifting of the TRO would have to stand on their own merits, and could not revert back to the initial unlawful termination ordered by OPM.  *See id.* p. 37.  The only way that this provision of the order could be enforced would be for employees to sue for enforcement.  That is what Plaintiffs here are attempting to do.  The fact that Plaintiffs, via their union, won in the AFGE case, means nothing if Defendants simply ignore and abrogate Judge Alsup's ruling with impunity.

The Court cites *Bedgood v. Cleland*, 554 F. Supp. 513, 517–18 (D. Minn. 1982), which specifies that offensive claim preclusion is appropriate "where there is no unfairness to the defendant, and the policy in favor of judicial economy would not be frustrated." So the question contemplated by the Court is whether or not Defendants were given a "full and fair opportunity to litigate the issues" previously.  Clearly, they were.

The Court compares *Presidential Bank, FSB v. 1733 27ᵗʰ St. SE LLC*, 318 F. Supp. 3d 61, 71 n.2 (D.D.C. 2018) that specifies that two suits involve the same "cause of action" "if the evidence necessary to support a verdict for the plaintiff in [the second suit] would have been sufficient to sustain a judgment for him in the first suit" or if the claims or theories are based on the same set of facts.

*Yamaha Corp. of America v. U.S.*, 961 F.2d 245 (D.C. Cir. 1992) defines the scope of an issue as applied to issue preclusion. According to this case, an issue is "an issue of fact or law

necessary to its judgment." *See id.* at 254. The court also notes that "in issue preclusion it is the prior *judgment* that matters, not the court's opinion explicating the judgment." *See id.* at 257- 58. In addition, "it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." Lastly, "the fact that the substantive law may be different in the two jurisdictions does not affect the application of issue preclusion." *See id.* at 258.

Defense preclusion must satisfy the elements of claim preclusion, which "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 & n.2 (2022). In analyzing whether claim preclusion can apply to defenses, courts "assum[e] that the defendant may raise defenses in the second action that were not raised in the first, even though they were equally available and relevant in both actions" because various considerations other than merits (such as amount in controversy, difficulty in obtaining evidence, expense of litigation, or the party's own situation) may be relevant in the decision to bring a defense. Two suits involve the same "cause of action" "if the evidence necessary to support a verdict for the plaintiff in [the second suit] would have been sufficient to sustain a judgment for him in the first suit" or if the claims or theories are based on the same set of facts. *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 318 F. Supp. 3d 61, 71 n.2 (D.D.C. 2018). *Thermal Surgical, LLC v. Brown*, 150 F.4th 115, 122 (2d Cir. 2025), highlights the same issues mentioned in *Lucky Brand Dungarees, Inc.* in granting claim preclusion for defenses.

Importantly, Plaintiffs are not seeking to preclude Defendants from arguing issues relevant to the claims in <u>this case</u>. However, the only issue at play in this case is whether or not Defendants had an independent lawful basis to terminate Plaintiffs after Judge Alsup's injunction was lifted.

In this case, Defendants will have a full and fair opportunity to present evidence that they did. Plaintiffs are not seeking to preclude Defendants from developing or presenting a defense. Defendants in this case will have a full and fair opportunity to litigate the reasons why Defendants terminated the Plaintiffs when the injunction was lifted based on performance, or to present some other rational and lawful basis for their termination. What Plaintiffs seek to preclude is retreading the issue of whether the initial terminations in February of 2025 were lawful. Judge Alsup's decision makes clear that they were not, and relitigating that question would cause the exact waste of judicial resources and potential conflict of holdings that the *res judicata* principles were developed to avoid.

9) **What specific issues do the parties contend that issue preclusion applies to?**

Plaintiffs aver that the following issues were litigated and decided in the AFGE case, and should not need to be revisited:

a. Whether or not the federal district court has jurisdiction over Plaintiffs' claims: It does.

b. Whether or not Defendant agencies received an order from the OPM in February of 2025 to terminate probationary employees: They did.

c. Whether or not the communication from OPM was an "order," or a suggestion or guidance: It was an order.

d. Whether or not the order from OPM was lawful: It was not.

e. Whether or not there was any lawful basis to terminate the probationary employees: There was not.

f. Whether or not the employees who had been fired were actually terminated due to performance deficiencies: They were not.

13

g.       Whether or not the mass termination of probationary employees violated

the Administrative Procedures Act:  It did.

h.       Whether or not the actions of the Defendant Agencies violated due process

rights:  They did.

i.       Whether or not the employees terminated suffered a reputational injury:

They did.

With respect to each of these issues, Defendant had a full and fair opportunity to present

evidence and argument to Judge Alsup, and did not prevail.

What remains for this Court is as follows:

a.       Were Plaintiffs terminated as part of the unlawful mass termination event

of February 2025?

b.       Whether, with respect to each Plaintiff, Defendant had a lawful and

legitimate basis to terminate their employment.

c.       Whether or not Plaintiffs were harmed by a termination that was not

justified and did not "stand on its own."

d.       And if so, whether reinstatement would be an appropriate remedy.

**10)    Were the issues actually litigated and their resolution necessary to the judgment in AFGE?**

*Norfolk & Western Ry. Co. v. U.S.*, 768 F.2d 373, 378 (D.C. Cir. 1985), gives us the

standard: "issue preclusion applies only to issues that were actually litigated, as well as decided."

The issue off the legality of OPM's actions was clearly litigated in AFGE I, as the Defendant was

ordered to not use the same format of letter that they had used to notify the employees, with the

problem being the lack of information. *See Compl.* at 9.; Alsup Decision, p. 37.  The due process

14

issue was also litigated, as it was the core of the reason why Judge Alsup was ruled that the terminations violated due process. *See Compl.* at 11.; Alsup Decision p. 36. The fact that the Judge ordered the Defendants to correct their false statements in the order is evidence of this fact. *See id.* The question of the arbitrary and capricious nature of the terminations was also litigated since arbitrariness was a key factor for why this firing process was seen as unlawful. *See Opposition to Mot. to Dismiss* at 2; Alsup Decision p. 36. The question of whether employees were harmed was litigated, since the judge implied that it was possible to reinstate the employees although it was impracticable at the time, and the records were ordered to be corrected. *See id.* The question of whether or not there was a violation of the APA was also litigated and was a core part of the proceedings. *See Opposition to Mot. to Dismiss* at 10; Alsup Decision pp. 36-38.

**11) Would there be unfairness to either party if issue preclusion was applied**

*Otherson v. Dep't of Just., Immigr. & Naturalization Serv.*, 711 F.2d 267, 273 (D.C. Cir. 1983), defines unfairness in this context.  Firstly, it quotes the Supreme Court, saying "a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time.  Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." The court in *Otherson* expounds on this stating, "Preclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial." *See id.*

In this case, the issue preclusion is not unfair because the parties in AFGE I are either the same, or are in strong privity with one another. *See Compl.* at 3-4; Alsup Decision p. 1; *Opposition to Mot. to Dismiss* at 5.  Moreover, AFGE I litigated the entire scheme to terminate probationary

15

employees *en masse*.  AFGE was represented by experienced legal counsel, and the DOJ was strongly motivated to present the best case it could to justify the terminations.  Both parties put on witnesses, presented documents, and Judge Alsup was able to ask questions of the parties to fill any evidentiary gaps.  The AFGE I case was one of the highest-profile early cases of the Trump Administration, and DOJ expended substantial resources in litigating it.  Therefore, Defendants did not lack incentive to litigate initially, since they either already did, or were in privity with those that did. *See id.* In this sense, *the instant* case is exactly the situation for which issue preclusion was designed.

**12)    Is there mutuality between parties for purposes of issue preclusion and if not can issue preclusion apply against the US?**

In *United States v. Mendoza*, 464 U.S. 154, 159 (1984), the Supreme Court explored the question of when an issue decided by a court serves to preclude relitigation of the same issue by others.  There is mutuality of parties if "both parties were bound by the judgment." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).  In that case, the Court established that issue preclusion can extend to parties who were not part of the original case to avoid vexatious or repetitive litigation:

> Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *Montana v. United States,* 440 U.S. 147, 153 (1979). Collateral estoppel, like the related doctrine of res judicata, serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." In furtherance of those policies, this Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law limits. It has done so by abandoning the requirement of mutuality of parties, and by conditionally approving the "offensive" use of collateral estoppel by a non-party to a prior lawsuit.

16

*Id.* Importantly, the Supreme Court established that preclusion does not apply to government defendants *unless* there is mutuality of the parties such that the government had an opportunity to fully litigate the underling issues. *See id.* 162. (An issue cannot be precluded if there is no mutuality: "nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues,").

So issue preclusion would not apply in this case *if* there was no mutuality with respect to the parties. In this case, however, there was clearly mutuality between the parties because the Plaintiffs were in privity with their union, and the Defendants clearly were full participants in the AFGE case, and were covered by the ORDER from Judge Alsup, as the agencies were not excluded therefrom. *See Compl.* at 3-4; Alsup Decision p. 1; *Opposition to Mot. to Dismiss* at 5.

Moreover, the most obvious evidence of mutuality in the AFGE I case is the extent to which the parties acted in accordance with Judge Alsup's interim orders. Defendants complied with all interim orders, and Plaintiffs received notices in accordance with those orders. Both parties acted as if they were subject to Judge Alsup's orders, which clearly undermines any claim that they were not mutually obligated to those orders in this case.

## CONCLUSION

For the reasons discussed herein, the decision of Judge Alsup in the AFGE I case are preclusive and serve as res judicata in this matter. Plaintiffs' claims are not foreclosed because they are not seeking to relitigate the merits that were settled by Judge Alsup's ORDER. They seek application and enforcement of the order to their individual cases because Defendants did not have a legitimate independent reason to terminate their employment. For these reasons, and those developed in Plaintiff's other briefing, Defendants' Motion to Dismiss lacks merit and should be DENIED in its entirety.

Respectfully submitted,

/s/*Pamela M. Keith*
Pamela Keith
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing Plaintiff's Supplemental Brief in Support of their Opposition to Defendant's Motion to Dismiss was sent by electronic filing on this 17th day of June 2026 to:

Kaitlin Eckrote
Assistant United States Attorney
DEPARTMENT OF JUSTICE
601 D St. NW
Washington, DC 20530
(202) 252-2485
Kaitline.Eckrote@usdoj.gov
*Counsel for Defendant*

/s/*Pamela M. Keith*
Pamela M. Keith

18